IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MICRON TECHNOLOGY, INC.,       )
                               )
        Plaintiff and          )
        Counterclaim Defendant, )
                               )          Civil Action No. 00-792-KAJ
    v.                          )
                               )          CONTAINS HIGHLY
                               )          CONFIDENTIAL INFORMATION
RAMBUS INC.,                    )          SUBJECT TO A PROTECTIVE
                               )          ORDER
        Defendant and          )
        Counterclaim Plaintiff. )
_____)          REDACTED

RECEIVED
MAR 2 4 2005

PLAINTIFF MICRON TECHNOLOGY'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO COMPEL DEFENDANT RAMBUS TO PRODUCE DOCUMENTS,
TESTIMONY, AND PLEADINGS UNDER THE CRIME/FRAUD EXCEPTION
TO THE ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT DOCTRINE

*Of Counsel*

BARTLIT BECK HERMAN
PALENCHAR & SCOTT, LLP
Fred H. Bartlit, Jr.
1899 Wynkoop Street, 8th Floor
Denver, CO 80202
(303) 592-3100

WEIL, GOTSHAL & MANGES LLP
Matthew D. Powers
Jared Bobrow
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1175
(650) 802-3000

Dated: March 22, 2005

Frederick L. Cottrell, III (#2555)
Matthew W. King (#4566)
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
cottrell@rlf.com
king@rlf.com
Attorneys for Plaintiff Micron Technology, Inc.

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................... iii

I       NATURE AND STAGE OF PROCEEDINGS ................................ 1

II      SUMMARY OF ARGUMENT ............................................. 3

III     STATEMENT OF FACTS ............................................... 6

IV      RAMBUS SHOULD BE COMPELLED TO PRODUCE THE DOCUMENTS,
        TESTIMONY, AND PLEADINGS RELATED TO ITS SPOLIATION OF
        EVIDENCE UNDER THE CRIME/FRAUD EXCEPTION OR,
        ALTERNATIVELY, THE WAIVER DOCTRINE ............................... 6

        A       Two District Courts Have Pierced Rambus' Attorney-Client Privilege And
                Work Product Claims Based On A Prima Facie Showing That Rambus
                Spoliated Evidence ....................................... 7

        B       The Evidence Overwhelmingly Supports Piercing The Attorney-Client
                Privilege And Work Product Doctrine Under The Crime/Fraud Exception ... 10

                1       A Prima Facie Showing of Spoliation Is Sufficient to Pierce the
                        Attorney-Client Privilege and Work Product Doctrine Under the
                        Crime/Fraud Exception ................................ 10

                2.      Rambus Spoliated Evidence with the Assistance of its Legal
                        Counsel ............................................ 11

                        a       Beginning no later than February 1998, Rambus anticipated
                                and planned for patent litigation against SDRAM and DDR
                                SDRAM manufacturers ............................ 12

                        b       Rambus destroyed highly relevant documents on a massive
                                scale as part of its patent litigation plan to prevent the
                                documents from being used in litigation ............... 15

                        c.      From the beginning, Rambus' in-house and outside counsel
                                were involved in Rambus' document destruction plan ..... 20

        C       As An Independent Basis To Compel Production Of The Crime/Fraud
                Documents, Rambus Has Waived Protection For Attorney-Client
                Communications And Non-Opinion Work Product ................. 22

V.      RAMBUS SHOULD BE COMPELLED TO PRODUCE ALL DOCUMENTS
        RESPONSIVE TO JUDGE MCKELVIE'S MAY 16, 2001 ORDER ............. 24

        A.      Rambus Is In Violation Of Judge McKelvie's Order By Refusing To
                Produce Documents To Micron ................................ 25

        B       Rambus' Apparent Excuse For Refusing To Produce The Documents To
                Micron Is Unfounded ....................................... 25

TABLE OF CONTENTS
(continued)

Page

VI   RAMBUS SHOULD BE COMPELLED TO PRODUCE DOCUMENTS AND
     TESTIMONY RESPONSIVE TO JUDGE PAYNE'S MARCH 7, 2001 ORDER
     THAT ARE DATED AFTER JUNE 1996 AND ITS COMMUNICATIONS
     WITH FOREIGN PATENT ATTORNEYS AND AGENTS (D I 500) . . . . . . . 27

     A    Documents Generated After June 1996 Should Be Produced Because
          Rambus' Fraudulent Scheme Did Not End When It Withdrew From
          JEDEC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

          1    After June 1996, Rambus Continued to Secretly Tailor Patents to
               Cover Those Very Aspects of JEDEC Standards Developed While
               Rambus Was a Member . . . . . . . . . . . . . . . . . . . . . 28

          2    After June 1996, Rambus Took Steps to Conceal Its Fraud . . . . . 29

          3    After June 1996, Rambus Filed Patent Infringement Lawsuits In
               Furtherance Of Its Attempted Fraud . . . . . . . . . . . . . . . 30

     B    Rambus' Communications With Foreign Patent Attorneys And Agents
          Should Be Produced Because They Were In Furtherance Of Rambus'
          Fraudulent Scheme . . . . . . . . . . . . . . . . . . . . . . . . . 31

VII  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

# TABLE OF AUTHORITIES

Page(s)

## CASES

Finley Associates v. Sea and Pines,
714 F. Supp 110 (D Del 1989) . . . . . . . . . . . . . . . . . . . . . . . . 10

GAF Corp. v. U.S.,
19 Cl Ct 490 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Hyde Constr. Co. v. Koehring Co.,
455 F 2d 337 (5th Cir 1972) . . . . . . . . . . . . . . . . . . . . . . . . 28

In re Grand Jury Proceeding Impounded,
241 F 3d 308 (3d Cir 2001) . . . . . . . . . . . . . . . . . . . . . . . 10, 22

In re Grand Jury Proceedings,
604 F 2d 798 (3d Cir 1979) . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Grand Jury Subpoena,
731 F 2d 1032 (2d Cir 1984) . . . . . . . . . . . . . . . . . . . . . . 10, 26

In re Sealed Case,
754 F 2d 395 (D C Cir 1985) . . . . . . . . . . . . . . . . . . . . . . . 11

International Tel. & Tel. Corp. v. United Tel. Co. of Fla.,
60 F R D 177 (M.D. Fla 1973) . . . . . . . . . . . . . . . . . . . . . . . 11

Maertin v. Armstrong World Indus.,
172 F R D 143 (D N J 1997) . . . . . . . . . . . . . . . . . . . . . . . . 13

Nordberg v. Lord, Day & Lord,
107 F R D 692 (S D N Y 1985) . . . . . . . . . . . . . . . . . . . . . . . 7

Rambus Inc. v. Infineon Techs. AG,
164 F Supp 2d 743 (E D Va 2001) . . . . . . . . . . . . . . . . . . . . . 30

Rambus Inc. v. Infineon Techs. AG,
220 F R D 264 (E D Va 2004) . . . . . . . . . . . . . . . . . . . . . . 25, 26

Rambus Inc. v. Infineon Techs. AG,
222 F R D 280 (E D Va 2004) . . . . . . . . . . . . . . . . . . . 7, 8, 11, 22

TABLE OF AUTHORITIES
(continued)

Page(s)

Rambus Inc. v. Infineon Techs. AG,
    318 F.3d 1081 (Fed. Cir. 2003) .................................................. 26

Union Carbide Corp. v. Dow Chemical Co.,
    619 F. Supp. 1036, 1052 (D. Del. 1985) .................................... 28

United States v. Bilzerian,
    916 F.2d 1285, 1292 (2d Cir. 1991) ......................................... 23

United States v. Zolin,
    491 U.S. 554 (1989) ................................................................. 10

Westinghouse Elec. Corp. v. Republic of Philippines,
    951 F.2d 1414 (3d Cir. 1991) ..................................... 23, 24, 25

## STATUTES

Cal. Penal Code § 135 (2005) ....................................................... 10, 20

11 Del. C. §1269 (2005) ............................................................... 10, 20

Micron Technology, Inc ("Micron") submits this Memorandum in Support of its Motion to Compel Rambus Inc ("Rambus") to: (1) produce documents, testimony, and pleadings relating to Rambus' document destruction and spoliation, including the materials subject to Judge Payne's orders in Rambus Inc. v. Infineon Techs. AG, Case No 3:00CV524 (E.D Va ) ("Infineon"), and Judge Whyte's orders in Hynix Semiconductor Inc. v. Rambus Inc., Case No 00CV20905 (N D Cal ) ("Hynix"); (2) produce documents, testimony, and pleadings within the scope of Judge McKelvie's May 16, 2001 Order, including those materials that Rambus already has produced in the Infineon case, the Hynix case, and In the Matter of Rambus, Inc., FTC Docket No 9302 ("FTC"); and (3) produce documents, testimony, and pleadings as set forth in Micron's November 13, 2001 Motion to Compel (D I 500)

I.

## NATURE AND STAGE OF PROCEEDINGS

Micron filed this action in August 2000 In its amended complaint, Micron alleges that Rambus has engaged in acts of attempted monopolization, fraud, and unfair competition arising from Rambus' efforts to subvert a standards-setting organization known as JEDEC for its own anticompetitive ends. Furthermore, Micron seeks a declaratory judgment that its SDRAM and DDR SDRAM products and methods do not infringe eight Rambus patents, and that the patents are invalid and unenforceable Rambus counterclaimed and accused certain Micron memory products of infringing certain claims of the patents-in-suit

The parties commenced formal discovery in December 2000 Fact discovery closed on August 10, 2001. The parties commenced expert discovery and filed summary judgment motions in August, September, and October 2001 On February 27, 2002, Judge McKelvie entered an order delaying the trial until the Federal Circuit Court of Appeals decided the appeal in the Infineon case

Following the Infineon appeal, this Court conducted a scheduling conference on October 12, 2004 and re-set the case for trial See Exh 1 (Nov 23, 2004 Scheduling Order Re-

Setting Case for Trial, D I 598)  The Scheduling Order sets May 27, 2005 as the cut-off for all remaining supplemental fact discovery, July 22, 2005 as the cut-off for all remaining supplemental expert discovery, September 9, 2005 as the hearing date on claim construction and summary judgment, January 20, 2006 as the date for the final pretrial conference, and February 21, 2006 as the first day of trial

Following the scheduling conference, Micron wrote to Rambus on October 19, 2004 to request (among other things) that Rambus supplement its document production and produce the following category of documents sought by this motion:

> Documents and testimony that Rambus has produced to Infineon, Hynix, or FTC pursuant to the crime-fraud exception to the attorney-client privilege or determinations of privilege waiver or non-applicability  This would include, for example, the documents that Rambus recently produced to Infineon in response to Judge Payne's May 2004 rulings and the depositions that are being taken concerning those documents and Rambus's destruction of documents

See Exh 2 (Oct 19, 2004 letter from J. Bobrow to G Stone) at 2  Notwithstanding Judge Payne's ruling that pierced the attorney-client privilege and work product doctrine in the Infineon case, Rambus refused to produce the documents to Micron in this case  On January 6, 2005, Micron revisited its request for these documents in a teleconference with Rambus' counsel  Rambus again refused to produce the documents  See Exh 3 (Jan 20, 2005 letter from J Bobrow to M Raven) at 1

On February 23, 2005, in anticipation of the telephonic conference conducted with the Court on March 1, 2005, Micron submitted a letter brief requesting this discovery  Micron also renewed its previously filed Motion to Compel Production of Documents and Deposition Testimony under the Crime/Fraud Exception (D I 500), filed on November 13, 2001, which Judge McKelvie did not rule on before he delayed the proceedings in 2002

Micron's letter motion was discussed during a telephonic conference with the Court on March 1, 2005  See Exh 62 (Mar 1, 2005 Hearing Tr )  During the teleconference, the Court set a briefing schedule on Micron's motion  The Court also ordered Rambus to

provide for *in camera* inspection the documents that Judge Payne and Judge Whyte ordered Rambus to produce in the Infineon and Hynix cases, and made the following remarks regarding the Court's consideration of the spoliation issues.

> We're going to go ahead and we're going to have full briefing but we're not taking this in two steps  I'm not going to pretend that you haven't been down this road a few times before because you folks at Rambus have  You've got two separate federal district courts, after lengthy proceedings and *in camera* review, determining that there was reasonable cause to believe that Rambus had spoliated evidence relevant to what was then anticipated litigation and that there was some relationship between attorney-client communications and that apparently unlawful spoliation

See Exh. 62 (Mar 1, 2005 Hearing Tr ) at 12-13  The Court also stated that it viewed Judge Payne's "findings on this matter to be significant" and clarified.

> It's not that you [Rambus] are estopped from making your argument  I'm going to let you make it, but I'm not pretending that you haven't had a chance to make it on fully developed record previously

Id.

## II.

## SUMMARY OF ARGUMENT

Through this motion, Micron requests that the Court compel Rambus to produce three categories of documents, testimony, and pleadings that Rambus is withholding from production based on the attorney-client privilege and work product doctrine

1      Under the crime/fraud exception to the attorney-client privilege and work product doctrine, and consistent with rulings in the Infineon and Hynix cases, Rambus should be compelled to produce documents, testimony, and pleadings relating to Rambus' destruction of documents and spoliation of evidence  The crime/fraud exception applies when a prima facie case is made that an attorney's services were used in planning, or in furtherance of, spoliation of evidence  Here, the evidence clearly shows that Rambus spoliated evidence  At the same time that Rambus anticipated bringing patent infringement suits against the manufacturers of SDRAM and DDR SDRAM, Rambus systematically destroyed hundreds of thousands of pages of documents during company wide events that Rambus called "Shred Days "  Rambus even held a

3

Shred Day in December 2000, months after this lawsuit had been filed, taking no precautions to preserve relevant documents   Rambus destroyed these documents in consultation with its outside and in-house legal counsel to avoid production of the documents in litigation   Based on their *in camera* review of the evidence, and after extensive briefing and argument, both Judge Payne and Judge Whyte have held that Rambus, prima facie, spoliated evidence and accordingly pierced the attorney-client privilege and work product doctrine   Moreover, based on what Judge Payne described as clear and convincing evidence of Rambus' spoliation, Judge Payne has dismissed Rambus' patent infringement claims against Infineon   These decisions, which at a minimum are persuasive authority, themselves establish a prima facie case of spoliation sufficient to invoke the crime/fraud exception

  As an independent basis to compel production of Rambus' attorney-client and non-opinion attorney work product relating to its document destruction campaign, Rambus has waived those protections by selectively disclosing otherwise privileged communications about its document destruction efforts in this case and in the FTC matter   In Infineon, Judge Payne held that these selective disclosures, which revealed ostensibly favorable aspects of Rambus' spoliation while concealing its dark side, constituted a subject matter waiver – a decision that was upheld when the Federal Circuit Court of Appeals denied Rambus' petition for a writ of mandamus   This holding applies with equal force here

  2 Rambus should be compelled to produce documents, testimony, and pleadings that fall within the scope of Judge McKelvie's May 16, 2001 Order   This Order adopted Judge Payne's March 7, 2001 Order in the Infineon case, which compelled Rambus to produce documents and testimony under the crime/fraud exception that relate to Rambus' disclosure of patents and patent applications to JEDEC, the JEDEC disclosure policy, Rambus' withdrawal from JEDEC, and Rambus' efforts to broaden its patent applications to cover JEDEC standards   In 2004, Judge Payne ruled that Rambus must produce to Infineon under his March 7, 2001 Order some forty-six documents identified in Rambus' updated privilege log and

documents that Rambus voluntarily had produced to Hynix and the FTC  There is no dispute that these documents are responsive to Judge Payne's March 7, 2001 Order and, therefore, no dispute that the documents are responsive to Judge McKelvie's ruling  Rambus did not attempt to challenge Judge McKelvie's ruling, did not move for reconsideration, and did not move for a protective order  As such, there is no excuse for Rambus to withhold these responsive documents

    3  Based on the rationale underlying Judge Payne's March 7, 2001 Order and Judge McKelvie's May 16, 2001 Order, Rambus should be compelled to produce documents and testimony responsive to the March 7, 2001 Order that post-date Rambus' withdrawal from JEDEC  Micron previously filed a motion to compel (D I  500) that addresses these issues, which was not decided before the case was delayed in 2002  Rambus has limited the discovery it has provided to documents generated, and events that occurred, in and before June 1996 – the month in which Rambus withdrew from JEDEC  However, Rambus' fraudulent scheme to obtain patent claims that cover JEDEC-compliant SDRAMs and DDR SDRAMs continued long after Rambus' withdrawal from JEDEC  After it left JEDEC, Rambus continued to tailor patent claims to cover SDRAMs and DDR SDRAM; it took affirmative steps to conceal its efforts from JEDEC members; and it brought patent infringement lawsuits against DRAM manufacturers after believing that the industry was locked-in to the JEDEC standards  As the pursuit of a fraudulent scheme was the basis for Judge Payne's March 7, 2001 Order, the temporal scope of this Order should continue until Rambus revealed its fraudulent scheme in January 2000, when it sued Hitachi for patent infringement arising from the manufacture and sale of JEDEC compliant SDRAMs and DDR SDRAMs  Moreover, because SDRAMs and DDR SDRAMs are manufactured to JEDEC standards overseas, and because Rambus attempted to tailor its overseas patent applications to cover the JEDEC standards, Rambus' production of documents and testimony should not be limited to communications with its U S. attorneys  The evidence shows that Rambus attempted to tailor its foreign patent applications to cover JEDEC standards at the

same time it was tailoring its U S patent applications  Thus, Rambus should be compelled to produce communications with its foreign patent attorneys and agents regarding its efforts to amend claims to cover JEDEC standards

## III.

## STATEMENT OF FACTS

The facts relevant to this motion are set forth in Sections IV, V, and VI below

## IV.

## RAMBUS SHOULD BE COMPELLED TO PRODUCE THE DOCUMENTS, TESTIMONY, AND PLEADINGS RELATED TO ITS SPOLIATION OF EVIDENCE UNDER THE CRIME/FRAUD EXCEPTION OR, ALTERNATIVELY, THE WAIVER DOCTRINE

Under the crime-fraud exception, the Infineon and Hynix courts have pierced Rambus' attorney-client and work product claims and allowed discovery into Rambus' far-reaching campaign to destroy millions of documents, both while Rambus anticipated patent infringement litigation from 1998 to 2000 and after Rambus commenced patent litigation in 2000  This Court should do so as well

The evidence – some of which is included in documents and testimony that are publicly available from the Eastern District of Virginia[1] – shows clearly and convincingly that Rambus destroyed documents as an integral part of its plan to sue SDRAM and DDR SDRAM manufacturers. Rambus' destruction occurred with the knowledge and advice of its outside and in-house counsel and with the intention of avoiding the production of damaging documents in litigation  Rambus planned to spoliate, and did spoliate, vast quantities of evidence  Rambus, therefore, should be compelled to produce documents, testimony, and other materials relating to its destruction of documents

---

[1]  The exhibits bearing "MEDVA" numbers were obtained from the public files of the Eastern District of Virginia  They were publicly available following the five-day, public, unclean hands evidentiary hearing in the Infineon case that began on February, 21, 2005.  The transcript of the Infineon evidentiary hearing also is publicly available  Based on this Court's prior ruling in this case, these publicly available materials cannot be privileged, even though Rambus had claimed that they were privileged.  See Exh  63 (Judge McKelvie May 14, 2001 Hearing Tr ) at  19, 24 ("the privilege is lost on" documents disclosed in open court in the Eastern District of Virginia in 2001 following Judge Payne's March 7, 2001 Order piercing the attorney-client privilege under the crime/fraud exception)

A.     **Two District Courts Have Pierced Rambus' Attorney-Client Privilege And Work Product Claims Based On A _Prima Facie_ Showing That Rambus Spoliated Evidence**

Two Article III judges have considered the issues before the Court in this motion and have conducted an *in camera* review of the allegedly privileged documents related to Rambus' document destruction  Both of these judges have held that there is sufficient evidence to pierce the attorney-client privilege and work product doctrine under the crime/fraud exception  The orders of these two district court judges provide, at a minimum, persuasive authority for this Court to invoke the crime/fraud exception as well  See, e.g., GAF Corp. v. U.S., 19 Cl. Ct. 490, 493 (1990) (opinion of federal district court that considered identical claim is persuasive authority to be reckoned with); Nordberg v. Lord, Day & Lord, 107 F.R.D. 692, 703 n.9 (S.D.N.Y. 1985) (opinion of state court judge who considered identical issue and facts is persuasive authority to federal district court)

In the Infineon case, Infineon filed a motion on January 5, 2004 to compel Rambus' production of documents and testimony relating to Rambus' document retention, collection, and production  This motion accused Rambus of spoliation of evidence, and asserted that the application of the crime/fraud exception to the attorney-client privilege and work product doctrine compels the disclosure of documents related to the development and implementation of Rambus' document destruction policies  See Rambus Inc. v. Infineon Techs. AG, 222 F.R.D. 280, 285 (E.D. Va. 2004)  After consideration of the parties' arguments on the motion, Judge Payne found that Infineon had "presented evidence sufficient to support a reasonable belief that a review of the at-issue documents themselves might yield evidence to establish the applicability of the crime/fraud exception" and stated that he would conduct an *in camera* review of the documents in question  Id. at 292

After personally conducting an *in camera* review of the 4,673 documents on Rambus' privilege log, Judge Payne found strong evidence of Rambus wrongdoing:

> In sum, the record to date shows that, from early 1998 through 2000, Rambus had in effect a document retention program that was conceived and implemented as an integral part of its licensing and litigation strategy

7

> That strategy, including the document retention program portion thereof, was devised and implemented with the aid and advice of lawyers, both in-house and outside   The company's plan was to destroy discoverable documents as part of its litigation strategy and the allegedly privileged documents evince that plan   Other evidence shows that the document destruction plan continued to be implemented throughout 1999 and 2000 while the litigation strategy of which it was a constituent element was also in final preparation and implementation

Infineon Techs. AG, 222 F R D  at 298   Judge Payne continued: "By any measure, on the record, Infineon has made a prima facie showing that Rambus intentionally has engaged in spoliation of evidence and that the crime/fraud exception should operate to pierce Rambus' asserted privileges " Id.  On this basis, Judge Payne compelled production of documents and permitted discovery into Rambus' spoliation  Specifically, Rambus was ordered to produce the documents reflected in twenty-seven specific entries on its privilege log, along with:

> [A]ll other documents from January 1, 1998 through December 31, 2001 that:  (1) disclose or discuss the conception and implementation of its document retention program;  (2) disclose or discuss the relationship between the document retention program and Rambus' patent licensing and litigation strategy;  (3) disclose or discuss the kinds and numbers of documents destroyed after the document retention program was instituted;  (4) disclose or discuss Rambus' collection and production of documents in this action  Further, Infineon shall be permitted to take depositions on the foregoing subjects

Id. at 298-99   Rambus sought review of Judge Payne's order by writ of mandamus to the Federal Circuit Court of Appeals  The Federal Circuit denied the writ on August 18, 2004  See Exh  4 (In re Rambus Inc., Misc  Docket No  772, Order dated Aug  18, 2004)

More recently, Judge Payne considered Rambus' spoliation of evidence in a five-day, public, evidentiary hearing on Infineon's defense of unclean hands  At the close of the hearing on March 1, 2005, Judge Payne dismissed Rambus' patent infringement claims because there was "clear and convincing evidence" of "a spoliation that warrants dismissal of this action as the only appropriate sanction " See Exh  5 (Infineon Mar  1, 2005 Trial Tr ) at 1138-39  Moreover, Judge Payne found that Rambus is "guilty of and liable for unclean hands that bar its access to this court " Id. at 1138  That is, Judge Payne found the evidence of Rambus' spoliation

to be so compelling that he ordered the ultimate sanction – that Rambus' patent infringement case be dismissed [2]

In the <u>Hynix</u> case, Hynix filed a motion on October 1, 2004 to compel production of the materials that were covered by Judge Payne's order on spoliation. After conducting an *in camera* review of the contested documents, Judge Whyte requested additional briefing on whether the crime/fraud exception to the attorney-client privilege applies. After oral argument, Judge Whyte held that there was sufficient cause to believe that Rambus had engaged in spoliation to justify production. Exh. 6 (<u>Hynix</u> Jan. 31, 2005 Order) at 2, 13. On this basis, Judge Whyte pierced the attorney-client privilege under the crime/fraud exception and ordered Rambus to produce to Hynix all discovery and deposition transcripts that Judge Payne had ordered Rambus to produce in the <u>Infineon</u> litigation concerning Rambus' document retention plan. Rambus did not seek mandamus review of Judge Whyte's determination.

These decisions, at a minimum, provide persuasive authority to compel the production of these materials to Micron. In two cases, a DRAM manufacturer has moved to compel the production of otherwise privileged information about Rambus' document destruction. In both cases, Rambus submitted extensive briefing. In both cases, the courts reviewed the evidence *in camera*. And in both cases, the courts rejected Rambus' arguments and held that there was a <u>prima facie</u> showing of spoliation sufficient to pierce Rambus' claims of privilege. In one case, after a multi-day evidentiary hearing, the court found "clear and convincing evidence" that Rambus had spoliated evidence. These decisions, by themselves, establish a <u>prima facie</u> case that Rambus spoliated evidence and should not be allowed to shield its spoliation from discovery in this case.

---

2 Following this adverse decision, we understand that Rambus apparently decided to settle its case against Infineon in the Eastern District of Virginia along with other lawsuits between the parties in other jurisdictions.

B.   **The Evidence Overwhelmingly Supports Piercing The Attorney-Client Privilege And Work Product Doctrine Under The Crime/Fraud Exception**

The evidence of record in this case, along with Rambus' documents that were publicly disclosed in the recent unclean hands evidentiary hearing in the Infineon case, provide a compelling case to pierce the attorney-client privilege and work product doctrine under the crime/fraud exception.

1.   **A Prima Facie Showing of Spoliation Is Sufficient to Pierce the Attorney-Client Privilege and Work Product Doctrine Under the Crime/Fraud Exception**

The crime/fraud exception provides that otherwise protected attorney-client communications and work product are not protected from discovery if they were made in furtherance of a crime or fraud. See United States v. Zolin, 491 U S 554, 563 (1989); In re Grand Jury Proceedings, 604 F 2d 798, 802 (3d Cir 1979) The party seeking discovery need not prove that an actual crime or fraud was committed for the crime/fraud exception to apply. Rather, the exception applies if a prima facie showing is made that the party was planning to commit a crime or fraud. See Finley Associates v. Sea and Pines, 714 F Supp 110, 118 (D Del 1989) (citing In re Grand Jury Subpoena, 731 F 2d 1032, 1039 (2d Cir 1984) ("The crime or fraud need not have occurred for the exception to be applicable; it need only have been the objective of the client's communication")); In re Grand Jury Proceeding Impounded, 241 F 3d 308, 317 (3d Cir 2001)

Under California law, destroying physical evidence (spoliation) is a misdemeanor crime. See Cal Penal Code § 135 (2005) A person is guilty of spoliation in California when:

> [K]nowing that any book, paper, record, instrument in writing or other matter or thing, is about to be produced in evidence upon any trial, inquiry or investigation whatever, authorized by law, willfully destroys or conceals the same, with intent thereby to prevent it from being produced, is guilty of a misdemeanor

Cal Penal Code § 135. In Delaware, spoliation is a felony A person is guilty of tampering with physical evidence in Delaware when:

> Believing that certain physical evidence is about to be produced or used in an official proceeding or a prospective official proceeding, and intending

10

> to prevent its production or use, the person suppresses it by any act of concealment, alteration or destruction, or by employing force, intimidation or deception against any person

See 11 Del C §1269 (2005)  Because spoliation is a crime in California (where Rambus is headquartered and where the spoliation occurred) and Delaware (where Rambus is incorporated and where this lawsuit is pending), a prima facie showing that Rambus and its lawyers communicated with the objective of committing spoliation pierces the attorney-client privilege and the work product doctrine

Moreover, even when a crime or fraud was not intended or committed, the crime/fraud exception applies when the otherwise privileged communications or work are "fundamentally inconsistent with the asserted principles behind the recognition of the attorney-client privilege, namely, observance of law and the administration of justice." Infineon Techs. AG, 222 F R D at 288-89 (citations omitted); see also International Tel. & Tel. Corp. v. United Tel. Co. of Fla., 60 F R D 177, 180-81 (M D Fla 1973) (prima facie case that defendant brought "sham" proceeding in other action was sufficient to invoke crime/fraud exception) Under this rationale, courts have applied the crime/fraud exception to communications and work created in furtherance of a plan to spoliate evidence in jurisdictions where spoliation is not a crime  See Infineon Techs. AG, 222 F R D at 288-89; In re Sealed Case, 754 F 2d 395, 400 (D C Cir 1985)

### 2.   Rambus Spoliated Evidence with the Assistance of its Legal Counsel

The evidence shows that Rambus planned and instituted a comprehensive strategy for filing patent infringement suits against SDRAM and DDR SDRAM manufacturers  As part of this plan, and even after its implementation, Rambus systematically destroyed millions of documents that it believed would be discoverable in those litigations   Moreover, Rambus' outside and in-house counsel developed and advised on this document destruction plan as an integral part of Rambus' litigation strategy  This evidence of spoliation is sufficient to invoke the crime/fraud exception

11

a. Beginning no later than February 1998, Rambus anticipated and planned for patent litigation against SDRAM and DDR SDRAM manufacturers

In October 1997, Rambus hired Joel Karp as its Vice President of Intellectual Property One of Mr. Karp's key functions at Rambus was "determining when chips infringe our patent portfolio " See Exh. 7 (Oct 21, 1997 e-mail from CEO G Tate to staff announcing Karp's role) Rambus' strategy for dealing with manufacturers of SDRAM was clear As stated in Rambus' business objectives for the upcoming year of 1998 – "Get all infringers to license our IP with royalties > RDRAM (if it is a broad license) *OR sue* " See Exh. 8 (outline of "Top Level Key Results for 1998") (emphasis added) at MEDVA 5453

In February 1998, Rambus clearly anticipated that it would file patent infringement litigation against SDRAM manufacturers In early 1998, Rambus retained the Cooley Godward law firm for the purpose of obtaining advice for its impending licensing and litigation campaign On February 12, 1998, Mr Karp, Rambus' Vice President of Intellectual Property, met with a number of attorneys from the Cooley Godward law firm, including Dan Johnson, a trial attorney who specializes in patent litigation See Exh. 9 (J Karp meeting notes with Cooley Godward attorneys on Feb 12, 1998) The purpose of the meeting was to develop Rambus' "Licensing/Litigation Strategy " Id. Mr Karp's contemporaneous notes of this strategy meeting show that Rambus fully expected that the royalty rates it was seeking on SDRAM "will *probably push us into litigation quickly* " Id. (emphasis added) Mr Karp also noted that Rambus would "[n]eed to litigate against someone to establish royalty rate and have court declare patent valid" and that the Cooley Godward law firm "will review Micron, Fujitsu, and Samsung and Hyundai contracts and formulate litigation strategy driven by results of the analysis – breach-scope of license, NDA or patent infringement " Id. A key takeaway from the February 12, 1998 meeting was that Rambus should "[m]ake ourselves battle ready " Id. Eight days after this meeting, attorney Dan Johnson of the Cooley Godward law firm followed-up on the litigation strategy action item from the meeting and billed time to the task of "Prepare

Litigation Strategy Memorandum" for Rambus   See Exh  10 (Jan – Feb  1998 Cooley Godward billing records) at MEDVA 583.

Rambus' privilege log in this case confirms that Rambus anticipated bringing patent infringement litigation against DRAM manufacturers no later than February 1998  Three entries on Rambus' privilege log from this timeframe claim that documents are shielded from discovery based on the work product ("WP") doctrine:

| No. | DATE | AUTHOR | RECIPIENT(S) | DESCRIPTION | PRIVILEGE |
|-----|------|--------|--------------|-------------|-----------|
| 317 | 03/02/98 | Joel Karp<br>Dan Johnson, Esq | Rambus Board Members and Executives | Rambus Strategic Patent Litigation | AC<br>WP |
| 320 | 02/12/98 | Joel Karp<br>Dan Johnson, Esq | Joel Karp | Confidential attorney-client communications regarding legal strategy and reflecting work in anticipation of litigation | AC<br>WP |
| 321 | 02/11/98 | Joel Karp<br>Dan Johnson, Esq | Joel Karp | Confidential attorney-client communications regarding legal strategy and reflecting work in anticipation of litigation | AC<br>WP |

See Exh  11 (Rambus' Privilege Log at 23)  To claim work product protection, Rambus must have anticipated litigation  See Maertin v. Armstrong World Indus., 172 F R D  143, 148 (D N J  1997) (to invoke work  product doctrine, "there must be an identifiable specific claim or impending litigation when the materials are prepared")  Moreover, Entry Nos  320 and 321 are explicitly described as "work *in anticipation of litigation*." Id.

In June 1998, Rambus continued to prepare for litigation and began working with an additional outside attorney, Neil Steinberg   Mr  Steinberg's responsibilities from the beginning included preparing Rambus for litigation relating to SDRAM and DDR SDRAM  See Exh  12 (Infineon Dep  Tr  of N  Steinberg, Jan  16, 2001) at MEDVA 6583-84 ("preparation for litigation" involving SDRAM and DDR SDRAM was one of his duties) [3]

Rambus continued to anticipate patent infringement litigation at the end of 1998  At that time, Mr  Karp prepared a comprehensive guidance document that outlined Rambus' patent enforcement scenario for 1999  See Exh  13 (e-mail from J  Karp to Rambus employees

---

[3] It is Micron's SDRAM and DDR SDRAM products that Rambus accuses of infringing in this litigation

with "Patent Enforcement 1999" attachment)    The document is entitled "Nuclear Winter Scenario." Id. Rambus had three issued patents that it "will enforce    against the DRAM companies very aggressively for all flavors of synchronous memory," including "DDR" and "PC100" (which is another name for SDRAM). Id. at MEDVA 605  The document states that Rambus already had prepared "claim charts" relative to Micron's SDRAM devices   Id. at MEDVA 605-06    It presents a detailed analysis of what claims to file against DRAM companies, discusses "preparation for litigation," discusses "picking litigation targets," and summarizes the "potential litigation forums" for such actions  Id. at MEDVA 605-09  Under the heading "Patent infringement," the document states, "[a]ssert against all synchronous memory devices "  Id. at MEDVA 607.  It identifies Fujitsu (or Mitsubishi), Hitachi, Hyundai, NEC, and Siemens (the predecessor to Infineon) as "litigation targets "  Id. at MEDVA 608   The potential forums identified are the Northern District of California, the Eastern District of Virginia, and this Court  Id. at MEDVA 606, 609.

Rambus' preparation for patent infringement litigation continued throughout 1999. In June 1999, Rambus obtained the first of the patents-in-suit, U S  Patent No  5,915,105  In the same month, attorney Neil Steinberg, who had become an in-house attorney at Rambus, delivered a presentation to Rambus executives that discussed "SDRAM Targets" and stated that Rambus would "Prepare [an] Infringement Case for 3 DRAM Targets in Q4 '99 "  See Exh  14 (presentation by N  Steinberg to Rambus executives) at MEDVA 5030  This document identifies an SDRAM manufacturer -- Infineon -- as a potential target.  Id.  Shortly thereafter, in October 1999, Rambus briefed its Board of Directors on the status of its comprehensive litigation strategy and identified Hitachi as a target  See Exh  15 (Oct 14, 1999 presentation to Rambus' Board of Directors discussing litigation strategy, litigation targets, litigation venues, and litigation timing).  On October 22, 1999, Mr  Karp sent Hitachi a letter demanding that Hitachi take a license to Rambus' patent portfolio  See Exh  16 (Oct. 22, 1999 letter from J  Karp)  When Hitachi did not do so, Rambus filed a patent infringement suit against Hitachi on January 18, 2000

14

In early August of 2000, Rambus filed a patent infringement suit against Infineon after Infineon refused to take a license on Rambus' non-negotiable terms  In the same month, Rambus contacted Micron  Micron filed this action against Rambus on August 28, 2000 under a clear apprehension that Rambus would file suit against Micron  By the summer of 2000, Rambus' implementation of its "nuclear winter" strategy was well under way

In summary, Rambus plainly anticipated bringing patent infringement suits against SDRAM manufacturers by February 1998  Its preparations for litigation continued throughout 1998 and 1999  Rambus worked with outside and in-house trial attorneys who specialize in patent litigation to assist with Rambus' litigation strategy  Rambus meticulously prepared for litigation – developing guidance documents, completing claim charts, analyzing forums and claims for the suits, identifying targets, and readying its resources for a litigation ambush on SDRAM manufacturers  Rambus' litigation strategy reached its culmination in 2000 when Rambus filed the very lawsuits that Rambus had been planning all along

> **b.    Rambus destroyed highly relevant documents on a massive scale as part of its patent litigation plan to prevent the documents from being used in litigation**

At the same time that Rambus was anticipating litigation, and indeed while it was actively engaged in litigation, Rambus brazenly destroyed millions of documents that would have been discoverable  As set forth below, Rambus shredded these documents as a central part of its preparation for litigation  Rambus spoliated this evidence so that it would not have to be turned over in discovery

Rambus' document destruction plan included a series of three "Shred Days" (Rambus' own term) in 1998, 1999, and 2000 [4]  During these Shred Days, Rambus passed out burlap bags to its employees, directed them to collect documents in their work space, and to place the documents in the bags  The bags were then collected and the documents were

---

4 ▮▮▮▮▮▮▮▮▮▮▮ See Exh 65 ▮▮▮▮
▮▮▮▮▮▮ The documents that are now publicly available clearly show that this testimony was false

destroyed on-site at Rambus in a shredder truck that Rambus had contracted to use  Rambus kept no log or other record of the nature of the documents that were destroyed during these Shred Days, although it is clear that millions of documents were destroyed  Exh  17 (Infineon Feb 23, 2005 Trial Tr ) at 416-17 (R  Kramer testifying that "there's no log at Rambus about what Rambus destroyed")

During the first Shred Day on September 3, 1998, Rambus collected some 20,000 pounds of documents (approximately two million pages) from its 140 employees and shredded them  See Exh  18 (Sept  2, 1998 e-mail from E  Larsen to staff stating, "Thursday is Shred Day"), Exh  19 at MEDVA 703 (Sept  3, 1998 e-mail from J  Karp to staff stating "[i]t took about 5 hours to completely fill the shredding truck"), Exh  20 (Sept  3, 1998 ProShred invoice)  On October 14, 1998, Mr Karp reported to Rambus' Board of Directors that the "All Day Shredding Party Held on Sept  3" was a success  See Exh  21 (Oct  14, 1998 report from J  Karp to Rambus' Board of Directors) at MEDVA 5112

Rambus' second Shred Day on August 26, 1999 also resulted in the destruction of tens of thousands of documents   Records show that Rambus collected and destroyed approximately 150 burlap sacks (the equivalent of approximately 185 banker boxes of documents)  See Exh  22 at MEDVA 5223 (Aug  25, 1999 e-mail from CEO G  Tate to all staff stating, "by the way, i'm sorry i'll miss the shredder party tomorrow – besides a nice party there will be a fun announcement!"); Exh  23 (Aug  26, 1999 shredding invoice estimating 150 shred bags) at MEDVA 5494

After the 1998 and 1999 Shred Days (which would not be Rambus' last), Rambus filed a patent infringement suit against Hitachi in January 2000  Rambus' shredding had been so thorough that Rambus' outside counsel in the Hitachi litigation was unable to locate entire categories of documents responsive to Hitachi's document requests – including financial documents, JEDEC documents, and correspondence with Hitachi – because the documents had been destroyed  See Exh  29 (Infineon Feb 22, 2005 Trial Tr ) at 120 (C  Gonzalez testifying

that "there were certain documents that did not exist any longer in Rambus' files "), id. at 122 ("In looking for documents that would be responsive to Hitachi documents requests, there were requests for some historical documents that the company simply did not have because of this document retention policy that had been adopted in '98 and which had resulted in the destruction of certain documents ")

After Rambus was involved in the instant litigation, as well as suits with Infineon and Hynix, Rambus held perhaps the largest Shred Day of the three   This third Shred Day occurred four weeks *after* Micron had served its first set of document requests and interrogatories on Rambus in this action   On December 28, 2000, Rambus employees collected over 460 bags of documents (which is approximately 575 banker boxes) and loaded them into a shredder truck to be destroyed   See Exh 24 (Dec 28, 2000 Sure Shred invoice) at MEDVA 5496-97; Exh 25 ██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████ Exh 26 (Infineon Feb 24, 2005 Trial Tr.) at 655:4-10 (quoting Infineon Dep Tr of A. Diepenbrock, Oct. 11, 2004 at 616 (testifying that he was never instructed to "retain documents that might be relevant to the litigations Rambus was planning" as part of Mr Karp's "litigation strategy"))

As a result of these shredding parties and other directives by Rambus (including directives that led to the destruction of millions of electronic documents) to its employees and agents, documents relevant to this litigation were destroyed   For example:

See Exh. 27

Exh. 40 (<u>Infineon</u> Dep Tr of A. Diepenbrock, Apr 11, 2001) at MEDVA 6668 (testifying he cleaned out his e-mails and files and he believed other employees cleaned out their e-mails and files)

2      

5810 (Oct 5, 2000 R Crisp interview notes stating "after Joel [Karp] joined the company all docs were then destroyed ")

3.     Correspondence, meeting presentations with third-parties, and other documents generated during Rambus' licensing negotiations with DRAM manufacturers were destroyed. <u>See</u> Exh 32 at MEDVA 570 (Mar 19, 1998 memo from Cooley Godward to J. Karp stating "the Company should, upon execution of a contract, destroy or systematically discard all internal drafts and any materials used during negotiations that are not part of the final contract     "), Exh. 33



Exh. 34 at MEDVA 5089 (July 17, 2000 e-mail from N Steinberg to Rambus executives stating "'[D]rafts and any materials used during the negotiations that are not part of the final contract' you and your team are to destroy or systematically discard such drafts and materials This pertains to all licenses – whether compatible or non-compatible ")

4      

5.     E-mails and other electronic files were destroyed  <u>See</u> Exh 36 (<u>Infineon</u> Dep Tr of J Karp, Jan 8, 2001) at MEDVA 6659 (testifying that he "went through [his] computer and deleted the filings [he] had relating to Rambus" and that he "deleted most of the e-mails"); Exh 37 at MEDVA 6015 (J Karp's notes stating "Mac tapes – GONE")

6.     Notes, files, and other records from the files of one of the inventors of the patents-in-suit may have been destroyed <u>See</u> Exh 38 (<u>Infineon</u> Dep Tr of M Horowitz, Jan 20, 2001) at MEDVA 6682-83 (testifying that "if they were in my files [the IBM notes] would have been destroyed" and that "because of the document retention policy, people went through, collected what they thought was of value, and shredded the rest")

7.     Board of Directors presentations, business plans, and meeting notes were destroyed  <u>See</u> Exh 39 (<u>Infineon</u> Dep Tr of D Mooring, Nov 16, 2000) at

MEDVA 6678 (testifying that overheads used at a Board presentation were "disposed of" years ago).

These documents were not merely tangential to the issues in this lawsuit; plainly, they were central.

Furthermore, the purpose of Rambus' document destruction policy was to make Rambus "battle ready" for the upcoming litigations. See Exh. 9 (J. Karp's notes from discussion with Cooley Godward attorneys on Feb. 12, 1998). Rambus intentionally purged the company of documents that it believed would be "discoverable" in the litigations that Rambus planned to commence. See Exh. 40 (Infineon Dep. Tr. of A. Diepenbrock, Apr. 11, 2001) at MEDVA 6669 (testifying regarding presentation from J. Karp on Rambus' document retention policy, and that Rambus was concerned that documents would be "discoverable in a lawsuit"); Exh. 41 at MEDVA 691 (J. Karp July 22, 1998 presentation regarding Rambus' Document Retention Policy stating "Email – Throw It Away . . . E-mail is discoverable in litigation or pursuant to a subpoena"), Exh. 42 (Mar. 6, 1998 e-mail from A. Roberts to J. Lau noting that "there is a growing worry about the e-mail backups as being discoverable information" and proposing a regular deletion of e-mail backup tapes so that backups would be deleted after three months).

Indeed, Rambus' document destruction policy (openly referred to as a "document destruction plan") was developed, planned, and implemented in conjunction with Rambus' litigation strategy. See Exh. 34 (July 17, 2000 e-mail from N. Steinberg to Rambus executives); Exh. 43 at MEDVA 618 (internal Rambus memorandum entitled, "IP Q3'98 Goals (Final)" listing "Implement document retention action plan" with "Done" status under "IP Litigation Activity"), Exh. 44 at MEDVA 775 (March 2, 1998 Rambus presentation entitled "Licensing and Litigation Strategy" listing "Need to create document retention policy" and "Need to organize prosecuting attorney's files for issued patents" under "Near Term Actions"); Exh. 45 at MEDVA 591 (Presentation titled "Document Retention at Rambus 7/22/98", citing "Horror Stories" of "deleted" e-mail messages being used to prove adverse facts in litigation). Moreover,

in a Rambus document entitled "IP Q3 '99 Goals – First Cut 6/27/99," the "to do" list under

"Section 3      *Licensing/Litigation Readiness*" provides:

> E   Prepare litigation strategy against 1 of the 3 manufacturers (re: 3D)
> F   Ready for litigation with 30 days notice
> G   *Organize 1999 shredding party at Rambus*

See Exh. 46 at MEDVA 712 ("IP Q3 '99 Goals – First Cut 6/27/99") (emphasis added).

In total, the evidence shows that Rambus systematically destroyed millions of

pages of highly relevant documents as part and parcel of its litigation strategy, with the intention

of preventing discovery of the documents in litigations that Rambus planned to bring   This

amounts to a prima facie case of a crime under California and Delaware law   See Cal. Penal

Code § 135 (2005); 11 Del. C. §1269 (2005)

### c.      From the beginning, Rambus' in-house and outside counsel were involved in Rambus' document destruction plan

Rambus' spoliation was undertaken in connection with Rambus' attorneys

During the same meeting on February 12, 1998 between Mr. Karp and attorneys from the Cooley

Godward law firm at which "litigation strategy was discussed," Mr. Karp's notes show that

Rambus set the destruction of documents in Rambus' patent prosecution files as a goal following

the meeting   See Exh. 9 (J. Karp notes from meeting with Cooley Godward attorneys on Feb

12, 1998) ("Prosecution files   clean out all attorney notes so that file is same as official file.")

("This document retention policy was developed by Rambus with the assistance of outside counsel ")   When Mr Karp was devising a plan for the disposal of Rambus' electronic documents, he contacted attorney Dan Johnson -- whom he referred to as "Rambus' litigation counsel" – for advice  See Exh 47 (May 14, 1998 e-mail from J Karp)

Indeed, Rambus' efforts to destroy "discoverable" documents and ready itself for battle was fueled by "horror stories" that attorney Dan Johnson told Rambus about hurting your own case with your own e-mails in litigation  See Exh 45 (presentation titled "Document Retention at Rambus 7/22/98") at MEDVA 591

Rambus' outside litigation counsel was not alone, however, in advising on Rambus' document destruction  Rambus' in-house attorney also counseled Rambus to destroy documents at a time when Rambus anticipated litigation  On July 17, 2000, after Rambus had sued Hitachi and shortly before Rambus filed suit against Infineon, Rambus attorney Neil Steinberg sent an e-mail to all Rambus executives reminding them about Rambus' "Document Destruction Policy Re: Contracts "  The attachment to the e-mail instructed Rambus' executives.

> [D]rafts and any materials used during the negotiations that are not part of the final contract you and your team are to destroy or systematically discard such drafts and materials  This pertains to all licenses – whether compatible or non-compatible

See Exh 34 (July 17, 2000 e-mail from N Steinberg to Rambus executives) at MEDVA 5089 There is no other way to interpret this e-mail than as advice to spoliate relevant evidence on the eve of litigation

Furthermore, Rambus' outside patent counsel also was intimately involved in document destruction, even after Rambus' litigation campaign began ███████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████ See Exh 48 ███████████████████████

██████████

In summary, the evidence shows that Rambus' attorneys assisted in Rambus' Herculean efforts to destroy discoverable documents in preparation for litigation. As such, the objective of the attorney communications and work related to the development and implementation of Rambus' document destruction plans was to commit a crime or fraud, and the documents are therefore discoverable under the crime/fraud exception. See, e.g., In re Grand Jury Proceeding Impounded, 241 F 3d at 317; Infineon Techs. AG, 222 F R D at 280

C. **As An Independent Basis To Compel Production Of The Crime/Fraud Documents, Rambus Has Waived Protection For Attorney-Client Communications And Non-Opinion Work Product**

On the same day that Judge Payne issued his opinion that compelled production of Rambus' otherwise privileged documents based on the crime/fraud exception, Judge Payne issued a separate decision which held that Rambus had waived all claims of privilege for these documents because Rambus had selectively disclosed some of the allegedly privileged legal advice it received as part of a tactical decision to defeat charges of spoliation in its cases with Micron, the FTC, and Infineon. See Exh 58 (Infineon May 18, 2004 Memorandum Opinion) at 18. In denying Rambus' petition for a writ of mandamus, the Federal Circuit upheld Judge Payne's "subject matter waiver" determination for Rambus' attorney-client communications and non-opinion work product. See Exh 4 (In re Rambus, Misc Docket No 772) at 3. On the same record, this result has equal force here.

It is well settled that once a party voluntarily discloses an otherwise confidential attorney-client communication, the party waives the attorney-client privilege not only as to the specific communication disclosed, but also as to the subject matter of the disclosure. Westinghouse Elec. Corp. v. Republic of Philippines, 951 F 2d 1414, 1426 n.12 (3d Cir 1991) ("If partial waiver does disadvantage the disclosing party's adversary by, for example, allowing the disclosing party to present a one-sided story to the court, the privilege will be waived as to all communications on the same subject.") A party cannot use favorable protected materials as a sword while simultaneously asserting the attorney-client privilege as a shield to prevent

disclosure of other related materials  See Westinghouse, 951 F 2d at 1426 n 12; United States v. Bilzerian, 926 F 2d 1285, 1292 (2d Cir 1991) ("the attorney-client privilege cannot at once be used as a shield and a sword")

Here, Rambus consistently has claimed that its communications with attorney Dan Johnson concerning its document destruction policy were privileged  Attorney Dan Johnson of the Cooley Godward law firm and Joel Karp of Rambus drafted a slide presentation to summarize Rambus' document destruction policy that was presented to Rambus' Board of Directors on July 22, 1998  See Exh 45 (presentation titled "Document Retention at Rambus 7/22/98")  In the Infineon case, Rambus claimed that this slide presentation was attorney-client privileged and logged it accordingly  See Exh 58 at 15 (Infineon May 18, 2004 Memorandum Opinion (discussing Exh. 45))  Likewise, Rambus logged the slide presentation on the privilege log it provided to Micron in this case as attorney-client privileged  See Exh. 11 (Rambus' Privilege Log at 23, Entry No 327)

Notwithstanding these claims of privilege, Rambus voluntarily disclosed *selective* portions of this otherwise privileged communication in an attempt to prove that Rambus had a legitimate reason for its document retention plan and did not spoliate evidence  In the FTC proceeding, in opposition to a motion for default judgment on the basis of spoliation, Mr Karp submitted a declaration and attached a portion of the very slide presentation that Rambus claimed was privileged  The portion of the slide presentation attached to the affidavit reflects attorney Dan Johnson's advice to Rambus on document retention "horror stories," presumably as the legitimate reason for Rambus' document retention policy  See Exh 59 (In re Rambus Inc., FTC Docket No 9302, Response of Rambus to Motion for Default Judgment, Declaration of Joel Karp) (stating that he was attaching as Exhibit B "a series of overhead transparencies in making these presentations" regarding Rambus document retention policy)   This represents a direct disclosure of an attorney-client privileged communication

Similarly, in responding to discovery in this case, attorney Dan Johnson testified about this advice ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ See Exh. 60 ████████████████████

████████████████████████

Clearly, these selective disclosures of legal advice that Rambus claimed was privileged were made for tactical purpose and belie the actual intent behind Rambus' document destruction  In this way, the partial disclosure of this otherwise protected information effects a subject matter waiver and entitles Micron to discover the full story behind Rambus' document retention plan and its relationship to Rambus' litigation strategy  See Westinghouse, 951 F.2d at 1426 n 12; Exh  4 (In re Rambus, Misc  Docket No  772) at 3

## V.

## RAMBUS SHOULD BE COMPELLED TO PRODUCE ALL DOCUMENTS RESPONSIVE TO JUDGE MCKELVIE'S MAY 16, 2001 ORDER

Judge Payne's March 7, 2001 Order in the Infineon case pierced the attorney-client privilege based on the crime/fraud exception for Rambus documents and testimony related to Rambus' disclosure of patents and patent applications to JEDEC, the JEDEC patent disclosure policy, Rambus' withdrawal from JEDEC, and Rambus' efforts to broaden its patents to cover JEDEC standards for SDRAM and DDR SDRAM  See Exhibit 49 (Judge Payne's Infineon March 7, 2001 Order)  Judge McKelvie's May 16, 2001 Order (D I  269) granted Micron's motion to compel Rambus to produce in this case documents and testimony within the scope of Judge Payne's Infineon March 7, 2001 Order  See Exh  50 (Judge McKelvie May 16, 2001 Hearing Tr ) at 24:3-8

In 2004, Infineon moved to enforce Judge Payne's March 7, 2001 Order, because Rambus had refused to produce additional documents covered by Judge Payne's March 7, 2001 Order that Rambus had failed to turn over before the first Infineon trial in 2001  Pursuant to that

motion, Judge Payne compelled Rambus to produce at least forty-six documents that were covered by his March 7, 2001 Order [5]   In addition, Judge Payne ordered Rambus to produce to Infineon additional documents covered by his March 7, 2001 Order that Rambus voluntarily had produced to Hynix and the FTC   Rambus Inc. v. Infineon Techs. AG, 220 F R D 264, 290-91 (E D Va 2004)   Although Rambus has now produced these documents to Infineon, Rambus has refused to produce these documents to Micron

This Court, having adopted Judge Payne's March 7, 2001 Order, should now compel Rambus to produce to Micron the forty-six documents, the documents produced in the Hynix and FTC cases, and any other materials that fall within the scope of Judge McKelvie's 2001 Order

### A.   Rambus Is In Violation Of Judge McKelvie's Order By Refusing To Produce Documents To Micron

Rambus has conceded that all the documents in question fall within the scope of Judge Payne's March 7, 2001 Order (and therefore Judge McKelvie's May 16, 2001 Order)   See Infineon Techs. AG, 220 F R D at 270   In 2004, Judge Payne held that all the documents in question were responsive to his March 7, 2001 Order and ordered Rambus to produce them to Infineon   Id. at 275, 278   Rambus did not challenge Judge Payne's ruling   Because Judge McKelvie ordered Rambus to produce all documents within the scope of Judge Payne's March 7, 2001 Order, Rambus is obligated to produce the documents at issue to Micron   By withholding the documents, Rambus is in violation of Judge McKelvie's May 16, 2001 Order [6]

### B.   Rambus' Apparent Excuse For Refusing To Produce The Documents To Micron Is Unfounded

There is no legitimate excuse for Rambus' refusal to produce to Micron documents that fall within the scope of Judge McKelvie's May 16, 2001 Order   Rambus never challenged Judge McKelvie's 2001 Order by appeal or writ or mandamus   Furthermore, Rambus

---

[5]   Judge Payne's April 5, 2004 Order compelled Rambus to produce nineteen documents in addition to the twenty-seven documents that he ordered Rambus to produce in his February 26, 2004 Order

[6]   Moreover, Rambus has voluntarily produced a portion of the documents to Hynix and the FTC   Infineon Techs. AG,   220 F R D   at 270   By doing so, Rambus has waived any claim that the documents are privileged   Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1424 (3d Cir 1991)

did not timely file for a motion for reconsideration or a motion for protective order to shield these documents from discovery. Judge McKelvie's 2001 Order remains a standing order in this case and should be followed.

To justify its violation of Judge McKelvie's order, Rambus may argue here, as it argued to Judge Payne, that the Federal Circuit's decision in Infineon excuses Rambus from producing documents under Judge Payne's March 7, 2001 Order. The Federal Circuit, of course, reversed the jury's fraud verdict based on the limited factual record developed at the first Infineon trial. Rambus appears to argue that this reversal undermines the premise for piercing the attorney-client privilege in the first place. This argument, which is based on a mischaracterization of the crime/fraud exception and Judge Payne's Order, should be rejected.

As Judge Payne explained in rejecting Rambus' argument, the crime/fraud exception does not require the commission of an actual crime or fraud. Rather, the exception applies when a prima facie showing is made that a party had attempted to commit a crime or fraud. See Infineon Techs. AG, 220 F.R.D. at 279; In re Grand Jury Subpoena, 731 F.2d at 1039 ("The crime or fraud need not have occurred for the exception to be applicable; it need only have been the objective of the client's communication.") Moreover, the Federal Circuit decision supports Judge Payne's conclusion that Rambus was pursuing a fraudulent scheme: "Rambus thought it could cover the SDRAM standard and tried to do so while a member of an open standards-setting committee." Rambus Inc. v. Infineon Techs. AG, 318 F.3d 1081, 1104 (Fed. Cir. 2003). The Federal Circuit merely held that, based on the limited factual record developed in the Infineon case in 2001, Rambus did not succeed in committing fraud because it held a "mistaken belief that it had pending claims covering the standard." Id. Moreover, after the jury verdict, Rambus never appealed Judge Payne's March 7, 2001 Order. Plainly, the Federal Circuit's decision does not undermine Judge Payne's determination that Rambus attempted to defraud SDRAM and DDR SDRAM manufacturers.

VI.

## RAMBUS SHOULD BE COMPELLED TO PRODUCE DOCUMENTS AND TESTIMONY RESPONSIVE TO JUDGE PAYNE'S MARCH 7, 2001 ORDER THAT ARE DATED AFTER JUNE 1996 AND ITS COMMUNICATIONS WITH FOREIGN PATENT ATTORNEYS AND AGENTS (D.I. 500)

Pursuant to Judge McKelvie's May 16, 2001 Order (which is based on Judge Payne's March 7, 2001 Order), Rambus was required to produce documents and testimony under the crime/fraud exception to the attorney-client privilege. These orders permitted discovery into Rambus' efforts to broaden its patents to cover JEDEC standards, disclosure of Rambus' patents and patent applications to JEDEC, the JEDEC patent disclosure policy, and Rambus' withdrawal from JEDEC. See Exh. 49 (Infineon March 7, 2001 Order). In the Eastern District of Virginia, Infineon agreed to limit the March 7, 2001 Order to documents generated in and before June 1996, the month that Rambus withdrew from JEDEC.[7] Here, Micron requests that this Court apply the crime/fraud exception to documents dated after June 1996. In addition, Rambus should be compelled to produce communications with its foreign patent attorneys and agents.[8]

In 2001, both Infineon and Micron made a prima facie showing that Rambus attempted to defraud SDRAM and DDR SDRAM manufacturers. Many of the steps that Rambus took to implement its fraudulent scheme occurred after Rambus withdrew from JEDEC. Those steps include secretly tailoring patent claims to cover JEDEC standards, concealing its patent rights (and its decision to enforce those patent rights against JEDEC standards) from

---

[7] Significantly, Infineon agreed to this date limitation during a hearing on April 6, 2001, before the extent of Rambus' deception had been revealed through subsequent discovery. At the time that Infineon agreed to the June 1996 date limitation, Rambus had taken the position that there was no connection between Rambus' patent prosecution efforts and its participation in JEDEC. For example, Richard Crisp, Rambus' JEDEC representative, testified at his November 8, 2000 deposition that he was "[n]ever, ever" involved in discussions involving Rambus' patent prosecution strategy. See Exh. 61 (Infineon Dep. Tr. of R. Crisp, Nov. 8, 2000) at MEDVA 6540. After Judge Payne entered his March 7, 2001 Order that pierced the attorney-client privilege, Rambus produced crime/fraud documents showing that Mr. Crisp, in fact, had been actively involved in Rambus' patent prosecution strategy. See Exh. 64 at MEDVA 4182 (Vincent billing records dated Sept. 1992 - "Conference with Richard Crisp concerning amendment of claims."). ██████████████████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████ See Exh. 30 ████████████████
████████████████████

[8] Micron previously filed a motion to compel (D.I. 500) that addresses these issues, which was not decided before the case was delayed in 2002.

JEDEC until after the industry was locked-in to the JEDEC standards, and then filing patent infringement suits against JEDEC-compliant SDRAM and DDR SDRAM devices   Because Rambus' attempted fraud did not end when it withdrew from JEDEC in June 1996, there is no basis to limit Judge McKelvie's order to documents generated before June 1996   Furthermore, Rambus' fraudulent scheme was not limited to obtaining United States patents that would cover JEDEC SDRAM and DDR SDRAM, but included obtaining foreign patents that covered the standards as well   Thus, Rambus' communications with its foreign patent attorneys and agents were in furtherance of Rambus' fraudulent scheme and should be produced

A.   **Documents Generated After June 1996 Should Be Produced Because Rambus' Fraudulent Scheme Did Not End When It Withdrew From JEDEC**

Under the crime/fraud exception, communications in furtherance of a fraud are not protected from discovery whether they occur before the fraud is committed or during the commission of the fraud   See Union Carbide Corp. v. Dow Chemical Co., 619 F. Supp. 1036, 1052 (D. Del. 1985) ("Communications made before the fact of or during the commission of a fraud are not protected     ") (citations omitted); see also Hyde Constr. Co. v. Koehring Co., 455 F 2d 337, 342 (5th Cir 1972)

Here, although Rambus withdrew from JEDEC in June 1996, its fraudulent scheme did not end in June 1996   Accordingly, Rambus should not be able to shield from discovery its post-June 1996 communications with counsel relating to its efforts to implement its fraudulent scheme

1.   **After June 1996, Rambus Continued to Secretly Tailor Patents to Cover Those Very Aspects of JEDEC Standards Developed While Rambus Was a Member**

While Rambus was a member of JEDEC, JEDEC incorporated, or considered proposals for incorporating, four features – programmable CAS latency, programmable burst length, on chip delay-locked loop ("DLL")/phase-locked loop ("PLL"), and dual edge clocking – into SDRAMs or DDR SDRAMs that are at issue in this lawsuit and that Rambus claims infringe its patents   After its withdrawal from JEDEC, Rambus continued to secretly tailor its patent

applications to cover these aspects of the JEDEC SDRAM and DDR SDRAM standards. This tailoring was an essential element of Rambus' attempt to defraud the DRAM industry.

An internal Rambus planning memorandum provides that a key Rambus objective for 1998 was to "[g]et access time register patent issued that reads on existing SDRAM." See Exh. 8 ("Top Level Key Results for 1998") at MEDVA 5453. Consistent with this plan, Rambus amended numerous patent applications following its withdrawal from JEDEC and, significantly, believed that these patents actually covered JEDEC standards. For example, Rambus amended U.S. Patent Application No. 07/847,692 in an effort to cover DDR SDRAM. After the application issued as U.S. Patent No. 5,657,481 in 1997, Rambus believed that it had successfully tailored the claims to cover JEDEC's DDR SDRAM standard for DLL/PLL circuitry. See Exh. 13 (e-mail from J. Karp to Rambus employees with "Patent Enforcement 1999" attachment) at MEDVA 605 ("'481—covers DDR (PLL circuitry)"). Similarly, Rambus amended U.S. Patent Application No. 08/798,520 in an effort to cover JEDEC's "mode register" standard, which includes a programmable CAS latency feature. After the application issued as U.S. Patent No. 5,841,580 in 1998, Rambus believed that it had successfully tailored the claims to cover the CAS latency feature of JEDEC's SDRAM and DDR SDRAM standards. See id. at MEDVA 605 ("'580—covers DDR and PC100 [SDRAM] (access time register)"). Rambus even went so far as to prepare a claim chart in 1998 that read the '580 patent on Micron's SDRAM. Id. at MEDVA 606.

### 2. After June 1996, Rambus Took Steps to Conceal Its Fraud

Concealment was an essential part of Rambus' continuing fraudulent scheme. Rambus CEO, Geoff Tate, testified at the Infineon trial that Rambus withdrew from JEDEC in 1996 to preserve the secrecy of Rambus' patent strategy.

> THE COURT: Now wait a minute. Now let's go back. We will just ask it until it gets answered, Mr. Tate.
>
> Was one of the reasons, yes or no, and then you can explain, was one of the reasons why Rambus left JEDEC was that it did not want to disclose its pending patent applications to the extent they may relate to or cover

whatever JEDEC was working on; is that -yes or no and then you can explain

THE WITNESS: Well, I think the way you phrased it, the answer would be yes

See Exh 51 (Infineon April 25, 2001 Trial Tr) at 174:11-22   Rambus actively concealed its patent rights after it withdrew from JEDEC so that DRAM manufacturers would unwittingly embrace the JEDEC standards and become "locked in" Rambus' own documents show this clearly



See Exh 57 ▮▮▮▮▮▮▮▮▮▮▮▮ In 1998, Neil Steinberg, who was then Rambus' outside counsel, advised Rambus to "Continue In Stealth Mode During '99 . We should not assert patents against Direct partners until ramp reaches a point of no return . Probably not until Q1 '00 " See Exh 52 (Oct 1998 presentation by N Steinberg) at MEDVA 4996-97

Rambus' campaign of secrecy continued until the eve of litigation. ▮▮▮▮▮

See Exh 53 ▮▮▮

3. **After June 1996, Rambus Filed Patent Infringement Lawsuits in Furtherance of Its Attempted Fraud**

After Rambus withdrew from JEDEC, Rambus also executed the final step of its fraudulent scheme – filing patent infringement suits against DRAM manufacturers for the manufacture and sale of JEDEC standard SDRAMs and DDR SDRAMs  As Judge Payne has pointed out, litigation was "part and parcel of Rambus' fraud – the last step in the fraud " See Rambus Inc. v. Infineon Techs. AG, 164 F Supp 2d 743, 759 (E D Va 2001)  It was not until

Rambus filed its patent infringement lawsuit against Hitachi in January 2000 that Rambus revealed its plot to the world.

     **B.**    **Rambus' Communications With Foreign Patent Attorneys And Agents Should Be Produced Because They Were In Furtherance Of Rambus' Fraudulent Scheme**

     Rambus' fraudulent scheme included tailoring and concealing foreign patent applications in an attempt to cover JEDEC standard SDRAM and DDR SDRAM made and sold outside the United States. Rambus therefore should be compelled to produce communications with its attorneys and agents that were designed to cover JEDEC standard DRAMs overseas.

     JEDEC's SDRAM and DDR SDRAM standards are not limited to DRAMs manufactured in the United States. Rather, manufacturers of DRAMs in Japan, South Korea, Taiwan, Germany, and the rest of the world also make SDRAMs and DDR SDRAMs to meet JEDEC standards. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ See Exh. 54 ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

     Because JEDEC standards also are followed overseas, Rambus attempted to tailor its patent applications in foreign countries to cover JEDEC-compliant SDRAM and DDR SDRAM both before and after it withdrew from JEDEC. For example, on April 25, 1996, Rambus' patent attorney, Lester Vincent, instructed Indian patent counsel to abandon 150 claims and replace them with new claims that targeted JEDEC features at issue in this litigation, such as dual edge clocking and on-chip PLL/DLL. See Exh. 55 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Many of these claims were *identical* to claims that Rambus was prosecuting in the U.S. and that Rambus believed covered JEDEC's DDR SDRAM standard.[9] Similarly, after it withdrew from JEDEC, Rambus filed

---

9 New claims 7-13 targeting dual edge clocking are identical to claims 1-6 of the '327 patent. Claims 18-26 targeting PLL circuitry are identical to claims 151-159 of U.S. Patent Application No. 07/847,692, which issued as

forty-one new claims in its European patent applications in an effort to cover the same features that Rambus was targeting in the U S , including dual edge clocking and on-chip PLL ("phased-locked loop") and DLL ("delay-locked loop")   See Exh  56 (Aug  15, 1997 letter from EPO counsel)   Rambus subsequently canceled all forty-one of these claims and began filing new claims targeting the same features, but using different language

Judge Payne's March 7, 2001 Order requires Rambus to produce communications that relate to Rambus' efforts to broaden its patents to cover JEDEC standards  The Order is not limited to U S  patent applications, but instead applies to all patent applications  Nonetheless, Rambus has refused to produce documents relating to its overseas prosecution efforts and has refused to allow its attorneys to testify about Rambus' efforts to prosecute foreign patents  Because prosecuting foreign patents was part of Rambus' fraudulent scheme, the crime/fraud exception should apply and Rambus should produce its foreign prosecution documents to Micron

## VII.

## CONCLUSION

For the foregoing reasons, Micron respectfully requests that its motion to compel be granted.

Dated: March 22, 2005

_Jr L. Cottell_

Frederick L Cottrell, III (#2555)
Matthew W. King (#4566)
RICHARDS, LAYTON & FINGER
One Rodney Square, P O  Box 551
Wilmington, DE  19899
(302) 651-7700
cottrell@rlf com
king@rlf com
Attorneys for Plaintiff
Micron Technology, Inc

---

the '481 patent  Rambus believed that its '327 patent and its '481 patent covered JEDEC's DDR SDRAM standards for dual edge clocking and on-chip DLL/PLL circuitry  Exh  13 (e-mail from J  Karp to Rambus employees with "Patent Enforcement 1999" attachment) at MEDVA 605

## CERTIFICATE OF CONFERENCE

On this 22nd day of March 2005, I hereby certify that the undersigned counsel for Micron Technology, Inc previously asked counsel for Rambus Inc whether Rambus Inc would consent to the relief requested in this Motion, and counsel for Rambus Inc replied that it would not consent to the relief  Accordingly, this Motion is submitted to the Court for decision

_____

Frederick L. Cottrell, III (#2555)
cottrell@rlf com

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2005, I electronically filed the foregoing

with the Clerk of Court using CM/ECF which will send notification of such filing(s)

to the following and which has also been served as noted:

### BY HAND

Mary B. Graham, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19899-1347

Josy W. Ingersoll, Esquire
Young Conaway Stargatt & Taylor
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, DE  19899-0391

I hereby certify that on March 28, 2005, the foregoing document was sent to

the following non-registered participants in the manner indicated:

### VIA FEDERAL EXPRESS

Marc E. Raven
Sidley Austin Brown & Wood LLP
10 S. Dearborn Street
Chicago, IL  60603

Gregory P. Stone
Munger Tolles & Olson LLP
355 South Grande Avenue, 35th Floor
Los Angeles, CA  90071

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com