IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICRON TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 00-792-KAJ |
| | ) | |
| RAMBUS INC., | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| RAMBUS INC., | ) | |
| | ) | |
| Counterclaim Plaintiff, | ) | **REDACTED** |
| v. | ) | **PUBLIC VERSION** |
| | ) | |
| MICRON TECHNOLOGY, INC., MICRON | ) | |
| ELECTRONICS, INC., and MICRON | ) | |
| SEMICONDUCTOR PRODUCTS, INC. | ) | |
| | ) | |
| Defendant | ) | |

**APPENDIX TO ANSWERING BRIEF OF DEFENDANT RAMBUS, INC. IN
OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
DEFENDANT RAMBUS TO PRODUCE DOCUMENTS, TESTIMONY,
AND PLEADINGS UNDER THE CRIME/FRAUD EXCEPTION TO THE
ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT DOCTRINE**

OF COUNSEL:

V. Bryan Medlock, Jr.
Marc Raven
SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois  60603
(312) 853-7000

Gregory P. Stone
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
35th Floor
Los Angeles, CA  90071
(213) 683-9100

MORRIS, NICHOLS, ARSHT & TUNNELL
Mary B. Graham (#2256)
Rodger D. Smith (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

*Attorneys for Defendant/Counterclaim Plaintiff
Rambus Inc.*

Dated:  April 15, 2005
Public Version Filed:  April 20, 2005

1

```
 1

 2

 3              IN THE UNITED STATES DISTRICT COURT

 4                    RICHMOND DIVISION

 5   - - - - - - - - - - - - - - - - -

 6   RAMBUS, INC.,                    :

 7                    Plaintiff   :

 8      -vs-                        : CIVIL ACTION

 9   INFINEON TECHNOLOGIES AG, et al., :

10                    Defendants   : April 6, 2001- - - - - - - - -

11         TRANSCRIPT OF TELEPHONE CONFERFENCE

12         BEFORE THE HONORABLE ROBERT E. PAYNE

13   APPEARANCES:

14   CHRISTIAN & BARTON

15   Richmond, VirginiaBY:  R. BRAXTON HILL, IV ESQ.

16   GRAY, CARY, WARE & FREIDENRICH

17   San Diego, CaliforniaBY:  JOHN ALLCOCK, ESQ.

18       DAVID B. PENDARVIS, ESQ.    JOHN M. GUARAGNA, ESQ.

19            Counsel on behalf of the Plaintiff

20   McGUIRE WOODS

21   Richmond, VirginiaBY:  BRIAN C. RIOPELLE, ESQ.

22   KIRKLAND & ELLIS

23   New York, New YorkBY:  JOHN M. DESMARAIS,ESQ.

24      MICHAEL STADNICK, ESQ.

25            Counsel on behalf of the Defendants
```

**4/6/2001 Telephone Conference**

1              But what is your position on the time

2    period, Mr. Desmarais?

3              MR. DESMARAIS:  Your Honor, it's our view

4    the time period should be 1991, when Rambus joined

5    JEDEC, through the end of June of '96, because while

6    it is true that they stopped attending in December of

7    '96, the withdrawal letter that they sent wasn't

8    until June of '96.

9              And it's part of our allegations of fraud

10   that the closing withdrawal letter from June of '96

11   was part of the fraud, and that's when they officially

12   withdrew.  So we would be content with documents from

13   1991 through the end of June of 1996.

14             THE COURT:  Mr. Allcock.

15             MR. ALLCOCK:  I believe that's the period

16   that we were looking at, Your Honor.

17             THE COURT:  All right.  I think that's

18   right.  You better get those documents to them so they

19   can use those at deposition right away.  When are the

20   depositions, gentlemen?

21             MR. DESMARAIS:  The first one starts Monday

22   morning at 9:00, Your Honor.

23             THE COURT:  That's here?

24             MR. DESMARAIS:  In Richmond, yes.

25             THE COURT:  All right.  I'm going to be

2



UNITED STATES OF AMERICA
BEFORE THE FEDERAL TRADE COMMISSION

|  |  |  |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| RAMBUS INC., | ) | Docket No. 9302 |
| | ) | |
| a corporation. | ) | |
| | ) | |

## ORDER ON RECONSIDERATION OF COMPLAINT COUNSEL'S MOTION TO COMPEL DISCOVERY RELATING TO SUBJECT MATTERS FOR WHICH RESPONDENT ASSERTS PRIVILEGE

## I.    INTRODUCTION

Before the Court, following the granting of a Motion for Reconsideration, is Complaint

Counsel's Motion to Compel Discovery Relating to Subject Matters for which Respondent

Asserts Privilege.[1]  Complaint Counsel, through its original, reply and supplemental memos, puts

forward three theories in support of its motion.  The first theory is waiver.  Complaint Counsel

asserts that Rambus waived any privileges it may have had over the sought materials through its

---

[1] On March 26, 2003, the Court granted Respondent's Motion for Reconsideration, finding that Judge Timony's February 28, 2003 Order Granting Complaint Counsel's Motion to Compel Discovery was manifestly unjust.  The unjustness derived from the fact that Complaint Counsel's Motion to Compel was based on a waiver theory, the Order was based on a crime-fraud exception theory advanced *sua sponte* by Judge Timony.  Respondent, therefore, never had the opportunity to respond to the substantive aspects of the crime-fraud exception theory that underlay Judge Timony's Order.  Both Complaint Counsel, in its April 7, 2003 memo, and Respondent, in its April 17, 2003 memo, addressed the substantive merits of the crime-fraud exception theory initially advanced by Judge Timony and subsequently adopted as its own by Complaint Counsel.

voluntary production of information in the *Hynix* litigation.[2]  The second theory is the crime-

fraud exception.  Complaint Counsel asserts that Respondent's attempt to monopolize the

SDRAM and DDRAM markets by expanding the scope of its patents and patent applications to

attempt to cover JEDEC's SDRAM and DDRAM standards amounts to an ongoing fraudulent

scheme that vitiates the attorney-client and attorney work product privileges.  Finally, Complaint

Counsel puts forth that Respondent is collaterally estopped from asserting privilege based on

prior rulings in the *Infineon*[3] and *Micron*[4] matters.

In its Opposition, Respondent narrows the issues to be resolved by conceding that

Complaint Counsel is entitled to receive the materials and to conduct discovery consistent with

what occurred in the *Infineon, Micron* and *Hynix* matters.  The primary issue to be resolved

therefore, is limited to whether Complaint Counsel may take additional discovery for the post-

June 1996 time period (*i.e.* after Respondent dropped out of JEDEC).  On the merits, Respondent

argues that no waiver of privilege ever occurred and that the discovery conducted in *Hynix* was

*de facto* compelled in light of the previous discovery orders in *Infineon* and *Micron*.  As to the

crime fraud exception theory, Respondent asserts that it owed no duty to disclose its patents or

patent applications to JEDEC and that, moreover, it had no patents or patent applications relating

to the JEDEC SDRAM or DDRAM standards issued or pending until after it dropped out of

---

[2] *Hynix Semiconductor Inc. v. Rambus, Inc.*, Civ. 00-20905-RMW (N.D. Cal. Complaint filed on Aug. 29, 2000).

[3] *Rambus Inc. v. Infineon Technologies AG*, No. 3:00cv524 (E.D. Va. Complaint filed on Aug. 8, 2000).

[4] *Micron Technology, Inc. v. Rambus, Inc.*, No. Civ 00-792-RRM (D. Del. Complaint filed on Aug. 28, 2000).

JEDEC in June 1996. As to the collateral estoppel issue, Respondent asserts that the Federal

Circuit in *Infineon II*[5] established that Respondent did not engage in fraudulent conduct, as

Infineon alleged in its complaint and the jury found at trial.

For the reasons that follow, the Court finds that Respondent: (1) waived the attorney-

client privilege without temporal limitation; and (2) does not have a basis for asserting the

attorney work product privilege for materials that came into existence on or before December 31,

1999.

## II.    ANALYSIS AND DISCUSSION

### A.    WAIVER

As indicated *supra*, in two cases (*Infineon* and *Micron*) the Respondent has already been

ordered, based on the crime-fraud exception, to produce for discovery materials otherwise

protected by the attorney-client and attorney work product privileges. In both instances, the

materials ordered to be produced were limited in scope to materials created and communications

that occurred prior to June 1996, when Respondent dropped out of JEDEC. In a third case

(*Hynix*), there was no judicial order compelling discovery. Respondent asserts that rather than

litigating the privilege issue a third time and facing a likely adverse ruling, it simply permitted

discovery that tracked the judicially compelled discovery in *Infineon* and *Micron*. Respondent

contends that *Hynix* was, therefore, a *de facto* compelled production and not a truly voluntary

production that would amount to any type of waiver of either the attorney-client or that attorney

work product privileges.

---

[5] *Rambus Inc. v. Infineon Technologies AG*, 318 F.3d 1081 (Fed. Cir. Jan. 29, 2003)(*Infineon II*).

3

While the Court appreciates the judicial economy that resulted from Respondent's decision to produce materials and persons for discovery in *Hynix*, its decision to produce the materials (even subject to a confidentiality agreement with counsel for *Hynix*)[6] still remains a voluntary production.  Any disclosure to an adversary absent direct judicial compulsion is a voluntary disclosure.  *Chubb Integrated Sys. Ltd v. Nat'l Bank of Washington*, 103 F.R.D. 52, 63 n.2, 67 (D.D.C. 1984)("[v]oluntary disclosure means the documents were not judicially compelled"); *see also In re Chrysler Motors Corp. Overnight Evaluation Program Litigation*, 860 F.2d 844, 846–47 (8th Cir. 1988)(finding that once privileged materials are turned over to an adversary, the confidential nature of the materials and the privilege as to third parties is waived even if the initial disclosure was subject to a confidentiality agreement).  Distinctions between various degrees of "voluntariness" in waivers of the attorney-client privilege do not exist.  *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989)("if a [party] wishes to preserve the privilege, it must treat the confidentiality of attorney-client communications like jewels – if not crown jewels"); *In re Subpoena Duces Tecum*, 738 F.2d 1367, 1370 (D.C. Cir. 1984).[7]  By voluntarily producing the materials in *Hynix*, Respondent forfeited some of the traditional protections of the adversary system, but avoided some of the burden of litigating the privilege issue and potentially facing a more adverse result than in *Infineon* and *Micron*.  *See In re Sealed Case*, 676 F.2d 793, 822–23 (D.C. Cir. 1982).

---

[6] Counsel for Respondent and Hynix entered into a letter agreement forbidding Hynix from disseminating the "privileged" materials that Respondent agreed to produce absent a court order and that the production was not a waiver of privilege as between those parties.

[7] By disclosing this information in *Hynix*, Respondent failed to "zealously protect" the very privileged material that it now asks this Court to protect.  *Cf. Haines v. Liggett Group, Inc.*, 975 F.2d 81, 90 (3d Cir. 1992).

4

The voluntary nature of Respondent's production in *Hynix* is underscored by the decision

of the Court not to require production of the documents based on the crime-fraud exception. *See*

§ II.B., *infra*. This suggests that a judicially compelled production in *Hynix* was not nearly as

inevitable as Respondent represents. Having voluntarily and consciously made the strategic

decision in *Hynix* not to litigate the crime-fraud issue and instead to produce a selected set of

materials voluntarily, Respondent now must live with the consequences of this decision

including the waiver of privilege. A party cannot be permitted, after making a partial disclosure,

to withhold the remainder of related information on the same subject matter. *Weill v. Investment*

*/Indicators, Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1981), *citing* VIII

Wigmore, *Evidence* § 2291 at 636 (McNaughton rev. 1961).[8]  Similarly, as a matter of fairness

and consistency, Respondent cannot be permitted to gain an advantage by voluntarily disclosing

materials to one adversary (Hynix) while protecting the same materials from another adversary.

*Subpoena Duces Tecum, 738 F.2d at 1372, citing In re Sealed Case*, 676 F.2d at 818.

Finding that *Hynix* was a voluntary disclosure, the Court next must address the question

of whether a voluntary disclosure of pre-1996 information in *Hynix* opens the door to the

discovery of post-1996 information in the instant case. The answer is yes, at least to the extent it

involves attorney-client privileged materials involving the same subject matter. The basis for

this conclusion is the well-established proposition that a waiver of privilege covers all

information relating to the subject matter for which information is waived voluntarily. *In re*

*Sealed Case*, 29 F.3d 715, 719 (D.C. Cir. 1994); *In re Sealed Case*, 877 F.2d at 980-81; *Weill*,

---

[8]  In addition to the Respondent voluntary producing the documents in *Hynix*, several of
these documents were also introduced in open court in the *Infineon* trial (Respondent's Initial
Opposition at 8). This creates an additional basis for the finding of waiver.

647 F.2d at 24 ("voluntary disclosure of the content of privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject").[9]

Complaint Counsel argues that Respondent's disclosures of privileged information in *Hynix* opened the door to discovery concerning six topics of communication between attorney and client:

(1)      Disclosures of patents and patent applications to JEDEC by Rambus;

(2)      The disclosure policy of JEDEC;

(3)      The efforts by Rambus to broaden its patents to cover matters pertaining to the JEDEC standards;

(4)      The September 2000 presentation made to stockholders, financial analysts and members of the public;

(5)      The preparation of withdrawal letters to JEDEC; and

(6)      The drafting of letters relating to patent disclosures to JEDEC and IEEE, the information and documents relied upon in drafting those letters, patent disclosures to JEDEC and IEEE and the efforts by Rambus to broaden its patent claims to the extent that any of those conversations took place within the context of the drafting of the withdrawal letters.

Complaint Counsel's Initial Memo at 3-4.

---

[9] The Court does not find convincing Respondent's argument that the district court judge in *Infineon* knowingly limited the subject matter scope with a temporal limit of June 1996, when Respondent left JEDEC. (Respondent's Initial Opposition at 9-11). A review of the hearing transcript excerpt provided by Respondent indicates that counsel for Infineon simply chose not to seek documents later than this date, which only makes sense in a private contract action that was based solely on Respondent's conduct while a member of JEDEC. Infineon's counsel specifically put forth that he was content with documents from 1991 through the end of June 1996. The Court does not read the transcript to establish that the *Infineon* court would not have permitted post-1996 discovery had counsel so requested. Moreover, in contrast to the controversy in *Infineon*, the instant matter (both in time and substance) is based on issues well beyond the purely contractual obligations of Respondent while a member of JEDEC.

Of the six topics of disclosures apparently made in *Hynix*, only two contain subject matters that appear on their face to relate to post-June 1996 matters: (3) the efforts by Rambus to broaden its patents to cover matters pertaining to the JEDEC standards; and (4) the September 2000 presentation made to stockholders, financial analysts and members of the public. Complaint Counsel claims that Respondent's alleged monopolistic conduct is a unitary scheme that began while Respondent was a member of JEDEC and continued thereafter through a continuing effort to expand its patents to cover JEDEC's SDRAM and DDRAM standards. As a result, both of these topics appear to involve the same subject matters as the voluntary disclosures made by Respondent for the pre-June 1996 time period and are relevant to the issues presently being tried. Respondent, therefore, is directed to permit discovery and produce materials that are subject to this waiver, as set out in the Conclusion section of this Order.

The other four topics involve subject matters that on their face relate only to pre-June 1996 issues. Based on the representation of Respondent in its Initial Opposition, all materials relating to these four topics were produced to Complaint Counsel by Respondent as part of the *Infineon, Micron* and *Hynix* discovery materials collection. It also appears that Respondent permitted Complaint Counsel to ask questions about these topics in depositions. As a result, scope of discovery disputes concerning these topics should have been resolved prior to the consideration of the instant Motion for Reconsideration. The Court hopes, based on Respondent's representation, that no judicially compelled relief concerning these four topics is necessary. However, because the portion of the Motion to Compel addressing the applicable topics has not been withdrawn, the Court rules that these four topics are within the scope of its Order, solely out of an abundance of caution.

7

Respondent's final argument is that even if the Court finds that its actions in *Hynix*
waived the attorney-client privilege for post-1996 documents, these actions do not amount to a
waiver of the attorney work product privilege.

The Supreme Court created the attorney work product privilege in *Hickman v. Taylor*,
329 U.S. 495 (1947). The privilege came to be codified in Fed. R. Civ. P. 26(b)(3), which
creates a conditional privilege for materials prepared by or at the direction of an attorney "in
anticipation of litigation or for trial." *Id.* Stated another way, the privilege "promote[s] the
adversary system by safeguarding the fruits of an attorney's *trial preparations* from discovery
attempts of the opponent." *In re United Mine Workers of America*, 159 F.R.D. 307, 312 (D.D.C.
1994), *quoting United States v. AT&T*, 642 F.2d 1285, 1298 (D.C. Cir. 1980)(emphasis added).
Therefore, it is a prerequisite that any materials, sought to be protected by the attorney work
product privilege, must have been prepared for or in anticipation of litigation.

Respondent's filings in the instant motion pointedly do *not* address when Respondent
first anticipated litigation concerning its patents that may cover JEDEC's SDRAM and DDRAM
standards. Rather, Respondent broadly asserts that any materials prepared by or at the direction
of its attorneys post-June 1996 are subject to the attorney work product privilege. This assertion
necessarily implies that Respondent anticipated litigation at least as early as July 1996, though
Respondent provides no support for this position.

In marked contrast, Respondent directly addressed the issue of when it could anticipate
litigation in its Opposition to Complaint Counsel's Motion for Default Judgment. In that
document, Respondent took a position in direct conflict with its implicit position in the present
motion. The thrust of the Default Judgment Opposition was that, as of at least as late as July

1998, when Respondent implemented its document retention program, it was not anticipating any

particular litigation; therefore, Respondent had no obligation to preserve documents potentially

relevant to specific litigation. Respondent asserted that it had, at most, an abstract concern that it

could be subject to the expense and inconvenience of discovery as a non-party through a

subpoena under Fed. R. Civ. P. 45, as some other technology companies had been. Having taken

the position in its Opposition to the Default Judgment that at least as of July 1998 it was not

anticipating any specific litigation, the Court does not now accept Respondent's current

contradictory position that it actually was anticipating litigation at least as early as July 1996.

Due to the obfuscation by Respondent as to when it anticipated litigation involving its

patents that allegedly cover JEDEC's SDRAM and DDRAM standards, the Court must make a

determination as to when, for the purpose of this discovery motion, Respondent reasonably did

anticipate litigation and properly could have asserted the attorney work product privilege. In

making this determination, the Court must construe this privilege narrowly. *In re Sealed Case*,

676 F.2d at 807. In particular, under the specific circumstances of this controversy, the Court

must narrowly construe the temporal nature of the attorney work product privilege, which is only

applicable after a party begins to anticipate litigation. The earliest litigation involving

Respondent and JEDEC standards commenced on August 8, 2000. *See* nn.2-4, *supra*. The Court

will presume that Respondent could have anticipated litigation a reasonable duration of time

prior to the filing of the first complaint. Therefore, the Court finds that Respondent likely

anticipated litigation as early as January 1, 2000 (approximately eight months prior to the

commencement of the first litigation involving the JEDEC-related patents). The Court

consequently holds that Respondent has no basis for asserting the attorney work product

privilege for any materials coming into existence prior to January 1, 2000.

The final question to be resolved, is whether Respondent waived its work product

privilege for materials coming into existence after January 1, 2000. The Court holds that it did

not. At issue in the instant litigation, is whether Respondent monopolized or attempted to

monopolize one or more DRAM markets. What is relevant, therefore, is what actions the

Respondent took directly or what directions it provided to its attorneys towards this alleged end.

Internal drafts, research notes or thought processes by Respondent's attorneys that were never

shared with Respondent would not be probative as to the Respondent's intentions. *Eco Mfg.*

*LLC v. Honeywell Int'l, Inc.*, 2003 WL 1888988 at *6 (S.D. Ind. Apr. 11, 2003); *Vardon Golf*

*Co., Inc. v. Karsten Mfg. Corp.*, 2003 WL 1785803 at *7 (N.D. Ill. Mar. 31, 2003). Moreover,

there is no evidence that Respondent has attempted to affirmatively use any of the post-January

1, 2000 materials for which it may assert the attorney work product privilege. If Respondent had

done so, this could constitute a broader waiver. *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d

1215, 1222-23 (4th Cir. 1976), *In re Martin Marietta Corp.*, 856 F.2d 619, 625 (4th Cir. 1988).

Nor has the Respondent appeared to have made its voluntary disclosures of attorney work

product materials in *Hynix* selectively in an attempt to achieve a strategic or tactical advantage,

which could result in a broadening of the scope of its waiver. *See United Mine Workers of*

*America*, 159 F.R.D. at 310. Rather, it appears that any attorney work product materials

voluntarily produced in *Hynix* were merely co-extensive with the materials produced as a result

of judicial compulsion in *Infineon* and *Micron*.

## B.    CRIME-FRAUD EXCEPTION

The issue of whether JEDEC contractually required its members to disclose the existence of patents and patent applications relating to proposed JEDEC standards is central to this litigation.

As a result of the remedial presumptions that arose in the Court's February 26, 2003 Order denying Complaint Counsel's Motion for Default Judgment, there is a rebuttable presumption that "Rambus knew or should have known from its pre-1996 participation in JEDEC that developing JEDEC standards would require the use of patents held or applied for by Rambus." While Respondent has the burden of overcoming this presumption at trial, the Court believes that a punitive presumption arising from Respondent's misconduct with regard to the handling of its documents cannot, by itself, serve as a factual predicate sufficient to vitiate the attorney-client and attorney work product privileges through the crime-fraud exception.

Particularly, in light of the supplemental memo and materials submitted by Complaint Counsel, the Court confirms the conclusion of the February 26 Order that there is a *prima facie* case that Respondent engaged in fraud-like conduct with regard to its fellow JEDEC members. However, the Court also believes that there is sufficient evidence of record to rebut this presumption and to create a material question of fact on the issue of whether Respondent had a duty to disclose. As a result, the crime-fraud exception sought by Complaint Counsel does not apply to the instant case.

In addition, based on its reading of *Infineon II* and the liability theories enunciated by Complaint Counsel that go beyond Respondent's contractual obligations under JEDEC, the Court has some concern whether Respondent's conduct (even if ultimately found to be illegal and

11

intended to attempt to create a monopoly in one or more DRAM markets), reaches the level of

fraud. As suggested in *Infineon II,* any obligation Respondent had to disclose patents and

applications may have arisen not from JEDEC's written contractual duties, but rather from the

course of conduct of JEDEC members. 318 F.3d at 1098. However, while the Federal Circuit

held that the course of conduct of JEDEC's members (save Respondent) may have created a duty

to disclose, it also held that a solely conduct-based duty would "not provide a firm basis for the

disclosure duty necessary for a fraud verdict." *Id.* at 1102. Put another way, it is not yet clear,

based on the evidence presented in the pleadings, that the Court can conclude that JEDEC

members could reasonably rely that other JEDEC members would fully and accurately disclose

all patents and patent applications relating to proposed JEDEC standards. In the absence of

reasonable reliance, a key element of fraud, *see Bank of Montreal v. Signet Bank,* 193 F.3d 818,

826 (4ᵗʰ Cir. 1999); *Tidewater Beverage Servs., Inc. v. Coca Cola Co., Inc.,* 907 F. Supp. 943,

947 (E.D. Va. 1995), the crime-fraud exception cannot be invoked.

    As a result, the Court concludes that the crime-fraud exception is not an independent

basis for piercing the presumed sanctity of the attorney-client and attorney work product

privileges in this instance.

### C.    COLLATERAL ESTOPPEL

    Finding that Respondent committed fraud with regard to the JEDEC SDRAM and

DDRAM standards, the district court and the Federal Circuit in the *Infineon* trial collectively

reversed the jury verdict through a Judgment as a Matter of Law in favor of Respondent, holding

that there was no substantial evidence to support the jury's verdict. *Infineon II*, 318 F.3d at 1105. As a result, there no longer is any support for Complaint Counsel's collateral estoppel theory.[10]

### D.   A PROCEDURAL NOTE ON THE DISCOVERY PERMITTED BY THIS ORDER

In its Motion for Reconsideration, Respondent argued that permitting discovery of otherwise privileged materials through the crime-fraud exception would mandate an *in camera* review of the materials prior to their production, consistent with *Haines v. Liggett Group, Inc.*, 975 F.2d 81 (3d Cir. 1992), and that a failure to do so would be fraught with Constitutional implications. Here, however, the Court is not creating an exception to pierce the attorney-client privilege and require the production of materials whose confidential nature has been closely guarded by Respondent. Rather, the Court is merely finding that having waived the confidential cloak covering some of the materials disclosed in the *Hynix* matter, the Respondent itself voluntarily waived this privilege for all materials involving the same subject matters for the

---

[10]As discussed at pp. 2-5 of the Court's March 29, 2003 Order addressing various applications by Respondent for collateral estoppel effect and reconsideration of two Orders issued by Judge Timony, the Federal Circuit in *Infineon II* affirmed-in-part, reversed-in-part, vacated-in-part, and ultimately remanded the *Infineon* matter back to the district court. The Federal Circuit reversed the district court's decision to deny Rambus' Motion for Judgment as a Matter of Law, which initially upheld the jury's verdict finding Rambus to have engaged in fraudulent behavior throughout the development of JEDEC's SDRAM standard. 381 F.3d at 1105. Conversely, the Federal Circuit affirmed the district court's decision in granting Rambus' Motion for Judgment as a Matter of Law, which initially struck down the jury's verdict finding Rambus to have engaged in fraudulent behavior throughout the development of JEDEC's DDRAM standard. *Id.* The district court's decision was vacated solely as to the award, pursuant to 35 U.S.C. § 285, of over $7.1 million in attorney fees to Infineon as the prevailing party. The remand mandate was limited to the district court determining whether: (1) in light of the Federal Circuit's decision in *Infineon II*, Infineon remained the prevailing party and; (2) if so, the proper attorney fees award amount based solely on Rambus's unchallenged litigation misconduct and without findings that Rambus also engaged in fraudulent conduct and improper claim construction and patent infringement. *Id.* at 1105-07.

13

present litigation as well. Similarly, the Court is not compelling the production of attorney work product privilege protected materials. Rather, the Court is only requiring the production of materials generated before Respondent, based in part on its own contentions, could have anticipated litigation and, therefore, even had a basis for asserting the attorney work product privilege.

As a consequence, the Court does not believe that any Constitutional issues are implicated or that *Haines*-type procedural safeguards are necessary. In direct contrast to *Haines*, the Court here does not need to perform any type of balancing test between giving a privilege adequate protection and the necessity for creating an exception to a privilege. Rather, the decision by Rambus in *Hynix* to produce these otherwise privileged materials was made consciously and knowingly. The Court, therefore, will not conduct *Haines*-type proceedings and directs that the materials be produced by Respondent directly to Complaint Counsel. However, all materials produced, as result of this Order, shall be granted *in camera* treatment upon motion by Respondent.

## III. CONCLUSION

For the reasons set forth above, Complaint Counsel's Motion to Compel is GRANTED.

To the extent it has not already done so, Respondent is ORDERED to produce to Complaint Counsel all non-privileged materials relating to the following subject matters:

(1)   Disclosures of patents and patent applications to JEDEC by Rambus;

(2)   The disclosure policy of JEDEC;

(3)   The efforts by Rambus to broaden its patents to cover matters pertaining to the JEDEC standards;

14

(4)    The September 2000 presentation made to stockholders, financial analysts and members of the public;

(5)    The preparation of withdrawal letters to JEDEC; and

(6)    The drafting of letters relating to patent disclosures to JEDEC and IEEE, the information and documents relied upon in drafting those letters, patent disclosures to JEDEC and IEEE and the efforts by Rambus to broaden its patent claims to the extent that any of those conversations took place within the context of the drafting of the withdrawal letters.

It is further ORDERED that the production of these materials shall include all materials, which would otherwise be protected by the attorney-client privilege, but for which this privilege was waived as a result of Respondent's conduct in *Hynix*.

It is further ORDERED that Respondent may not assert the attorney work product privilege for any materials that concern the subject matters set out above that came into existence on or before December 31, 1999.

It is further ORDERED that Respondent may assert the attorney work product privilege for any materials that concern the subject matters set out above that came into existence on or after January 1, 2000.

ORDERED:

Stephen J. McGuire
Chief Administrative Law Judge

Dated: May 13, 2003

15

3

UNITED STATES OF AMERICA
BEFORE THE FEDERAL TRADE COMMISSION

In the Matter of

RAMBUS INC.,

    a corporation.

)
)
)
)
)
)
)

Docket No. 9302

## ORDER GRANTING REQUEST FOR RECONSIDERATION

### I.

On May 13, 2003, the Court entered an Order on Reconsideration of Complaint's Counsel's Motion to Compel Discovery Relating To Subject Matters For Which Respondent Asserts Privilege ("May 13, 2003 Order"). The May 13, 2003 Order ruled, *inter alia*, that Rambus, by producing in other litigation privileged documents from December 1991 to June 1996, waived its right to continue to assert the attorney client privilege for other, undisclosed attorney client communication, including from June 1996 to present.

On May 19, 2003, Respondent Rambus Inc., ("Rambus") filed its Request for Reconsideration and/or Clarification of the May 13, 2003 Order Regarding Rambus's Privileged Documents. Complaint Counsel filed its Opposition on May 27, 2003. For the reasons and in the manner set forth below, Rambus's motion for reconsideration is **GRANTED**.

### II.

Rambus asks the Court to reconsider the following determinations of the May 13, 2003 Order: (1) whether the production of documents from December 1991 through June 1996 waived the privilege for documents from June 1996 to present; (2) whether the work product doctrine may be asserted with respect to any materials coming into existence prior to January 1, 2001. In addition, Rambus seeks clarification in certain specific respects of what additional privileged documents must be produced if production of privileged materials other than the December 1991 through June 1996 documents is compelled.

Complaint Counsel opposes reconsideration, arguing that Rambus has failed to demonstrate that the May 13, 2003 Order contains any clear error, creates any manifest injustice, or predates any material change in law or discovery of new evidence.

# III.

A motion for reconsideration may be granted only "where: (1) there has been an intervening change in controlling law; (2) new evidence is available; or (3) there is a need to correct clear error or manifest injustice." *In re Rambus*, Docket 9303, 2003 FTC LEXIS 49 (March 26, 2003) (citing *Regency Communications, Inc. v. Cleartel Communications, Inc.*, 212 F. Supp.2d 1, 3 (D.D.C. 2002)). Upon review of Rambus's Request for Reconsideration, the Opposition thereto, and upon further reconsideration of the pertinent case law, it is apparent that the May 13, 2003 Order contains clear error of law regarding subject matter waiver.

In the *Infineon* litigation and the *Micron* litigation, Rambus was ordered, based on the crime-fraud exception, to produce materials otherwise protected by the attorney-client and attorney work product privileges.[1] In both cases, the materials ordered to be produced were limited in scope to materials created and communications that occurred prior to June 1996. In the *Hynix* litigation, there was no judicial order compelling discovery.[2] Respondent asserts in this litigation, that rather than litigating the privilege issue a third time and facing a likely adverse ruling, it permitted discovery in *Hynix* that tracked the judicially compelled discovery in *Infineon* and *Micron*.

In this litigation, Rambus has produced to Complaint Counsel all of the privileged documents that Judge Payne required Rambus to produce to Infineon, that Judge McKelvie ordered Rambus to produce to Micron, and that Rambus produced to Hynix ("the 1991 to June 1996 privileged documents"). The May 13, 2003 Order found that the production of the 1991 to June 1996 privileged documents to Hynix waived the privileges as to all additional documents - from June 1996 to present - that address the same subject matter as the 1991 to June 1996 privileged documents. As set forth below, this finding is clearly erroneous and is reversed.

Under the controlling legal principles, subject matter waiver is not present in the circumstances presented here. For privilege to be extinguished by subject matter waiver, very specific types of fairness concerns must be demonstrated in the record. Those concerns do not exist here. Complaint Counsel has suffered no prejudice from Rambus's disclosure to Hynix. To the contrary, access to Rambus's attorney-client communications previously disclosed clearly inures to Complaint Counsel's benefit.

---

[1] *Rambus Inc. v. Infineon Technologies AG*, No. 3:00cv524 (E.D. Va. Complaint filed on Aug. 8, 2000); *Micron Technology, Inc. v. Rambus, Inc.*, No. Civ 00-792-RRM (D. Del. Complaint filed on Aug. 28, 2000).

[2] *Hynix Semiconductor Inc. v. Rambus, Inc.*, Civ. 00-20905-RMW (N.D. Cal. Complaint filed on Aug. 29, 2000).

2

The implied subject matter waiver rule is applied in light of its purpose: to prevent parties from gaining tactical advantage by using attorney-client privilege as both a sword and a shield. "When a party reveals part of a privileged communication *in order to gain an advantage in litigation*, it waives the privilege as to all other communications relating to the same subject matter because 'the privilege of secret consultation is intended only as an incidental means of defense and not as an independent means of attack, and to use it in the latter character is to abandon it in the former.'" *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982) (emphasis added). Subject matter waiver is "based on fairness considerations" and "aim[s] to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information." *In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987). A court need not "impose full waiver as to all communications on the same subject matter where the client has merely disclosed a communication to a third party, as opposed to making some use of it." *Sealed Case*, 676 F.2d at 809 n.54; *see also In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 159 F.R.D. 307, 308 (D.D.C. 1994) (noting that under D.C. Circuit case law, judges have discretion to define the subject matter of the disclosed documents narrowly "to prevent the scope of the subject-matter waiver from being unduly broad.").

The pertinent and critical question, then, is whether Rambus's production of the 1991 to June 1996 privileged documents in *Hynix* was made in order to gain a tactical advantage in the litigation. If it was not, then the implied subject matter waiver rule is not applicable. Rambus did not produce the documents at issue to any litigation adversary. Rambus would have preferred to preserve the confidentiality of the documents, but that confidentiality was lost when production of the documents was compelled in the *Infineon* and *Micron* litigations. Rambus obtained no tactical advantage through the production of those documents. Accordingly, Complaint Counsel will incur no prejudice or disadvantage that necessitates the sweeping disclosure of privileged materials sought here.

The concern underlying subject matter waiver is ensuring that a party may not "selectively disclos[e] privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable." *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340-41 (9th Cir. 1996). In *Stratagem Dev. Corp. v. Heron Int'l N.V.*, 153 F.R.D. 535 (S.D.N.Y. 1994), the court rejected subject matter extension of privilege waiver where disclosure was not intended to provide a tactical advantage in litigation.

> This is not a case in which the holder of the privilege affirmatively seeks to use privileged testimony while preventing his adversary from examining the remainder of the communication. . . . [Defendant] has not sought to utilize the [disclosed] [d]ocuments in this litigation, but rather, has merely disclosed them in response to [plaintiff's] broad discovery requests. In fact, it is [plaintiff], not [defendant] that wishes to use this material. "Thus it cannot be said that [defendant] is using the privilege as both a sword and a

3

> shield. Rather, because [defendant] has partially let down its shield,
> [plaintiff] insists that it must be stripped entirely."

*Id.* at 544-45 (citations omitted).

Rambus did not selectively reveal favorable confidential documents while shielding less helpful ones behind the privilege. Thus, there was no intended or actual prejudice to Complaint Counsel, and no proper legal basis for the harsh resort to subject-matter waiver. Accordingly, the determination of subject matter waiver in the May 13, 2003 Order is clearly erroneous.

Because, by this Order, the May 13, 2003 determination of subject matter waiver is reversed, it is no longer necessary to determine the scope of the work product protection that Rambus is entitled to assert during the post June 1996 time period. Accordingly, the portion of the May 13, 2003 Order relating to work product is also reversed. In addition, the further clarification that Rambus seeks at pages 19 through 20 of its Request for Reconsideration and/or Clarification, is not necessary.

## IV.

It is HEREBY ORDERED that the production of documents to Hynix does not constitute subject matter waiver of the attorney client privilege in this case. The scope of discovery to which Complaint Counsel is entitled is HEREBY LIMITED to the documents created between December 1991 and June 1996 and which were previously produced in the *Hynix* litigation.

ORDERED:

Stephen J. McGuire
Chief Administrative Law Judge

May 29, 2003

4