## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MICRON TECHNOLOGY, INC ,                )
                                        )
     Plaintiff and                    )
     Counterclaim Defendant,          )
                                        )   Civil Action No. 00-792-KAJ
   v.                                  )
                                        )
                                        )
RAMBUS INC.,                            )
                                        )
     Defendant and                    )
     Counterclaim Plaintiff.          )

---

## PLAINTIFF MICRON TECHNOLOGY'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL DEFENDANT RAMBUS TO PRODUCE DOCUMENTS UNDER THE CRIME/FRAUD EXCEPTION TO THE ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT DOCTRINE (D.I. 637)

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE  19899
(302) 651-7700
*Attorneys for Plaintiff Micron Technology, Inc.*

*Of Counsel:*

BARTLIT BECK HERMAN
PALENCHAR & SCOTT, LLP
Fred H. Bartlit, Jr.
1899 Wynkoop Street, 8th Floor
Denver, CO  80202
(303) 592-3100

WEIL, GOTSHAL & MANGES LLP
Matthew D. Powers
Jared Bobrow
201 Redwood Shores Parkway
Redwood Shores, CA  94065-1175
(650) 802-3000

Dated: May 6, 2005

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES .................................................................. ii

I  INTRODUCTION ......................................................................... 1

II  THE COURT SHOULD NOT DELAY RULING ON THIS MOTION
UNTIL AFTER THE <u>HYNIX</u> UNCLEAN HANDS TRIAL.................... 2

III  RAMBUS'S ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT
CLAIMS SHOULD BE PIERCED BECAUSE MICRON HAS SHOWN
<u>PRIMA FACIE</u> THAT RAMBUS OBTAINED LEGAL ADVICE IN
FURTHERANCE OF A CRIME OR FRAUD ..................................... 5

IV  RAMBUS HAS WAIVED ATTORNEY-CLIENT PRIVILEGE AND
NON-OPINION WORK PRODUCT RELATING TO ITS SPOLIATION ....... 10

V  RAMBUS MUST COMPLY WITH JUDGE MCKELVIE'S MAY 16,
2001 ORDER ............................................................................. 14

VI  RAMBUS SHOULD PRODUCE DOCUMENTS AND TESTIMONY
COVERED BY JUDGE MCKELVIE'S ORDER BEYOND JUNE 1996 ....... 17

VII  CONCLUSION ......................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Finley Associates, Inc. v. Sea & Pines Consolidated Corp.*,
  714 F. Supp. 110 (D. Del. 1989) ............................................................ 15, 16

*Glenmede Trust Co. v. Thompson*,
  56 F.3d 476 (3d Cir. 1995) ............................................................ 12

*In re Grand Jury Subpoena Duces Tecum*,
  731 F.2d 1032 (2d Cir. 1984) ............................................................ 15

*McGrath v. Nassau County Health Care Corp.*,
  204 F.R.D. 240 (E.D.N.Y. 2001) ............................................................ 12

*Murray v. Gemplus International, S.A.*,
  217 F.R.D. 362 (E.D. Pa. 2003) ............................................................ 13

*In re Papst Licensing, GmbH Patent Litigation*,
  2001 U.S. Dist. LEXIS 15667 (E.D. La. 2001) ............................................................ 12

*People v. Prysock*,
  127 Cal. App. 3d 972 (1982) ............................................................ 6

*Rambus, Inc. v. Infineon Techs. AG*,
  220 F.R.D. 264 (E.D. Va. 2004) ............................................................ 15

*Rambus, Inc. v. Infineon Techs. AG*,
  222 F.R.D. 280 (E.D. Va. 2004) ............................................................ 9

*Rambus Inc. v. Infineon Techs. AG*,
  318 F.3d 1081 (Fed. Cir. 2003) ............................................................ 16

*Smith v. Alyeska Pipeline Service Co.*,
  538 F. Supp. 977 (D. Del. 1982) ............................................................ 13

*In re Sutton*,
  1996 Del. Super. LEXIS 532 (Del. Super. Ct. 1996) ............................................................ 16

*United States v. Lundwall*,
  1 F. Supp. 2d 249 (S.D.N.Y. 1998) ............................................................ 8

*United States v. Zolin*,
  491 U.S. 554 (1989) ............................................................ 10

*Valenti v. Allstate Insurance Co.*,
  243 F. Supp. 2d 200 (M.D. Pa. 2003) ............................................................ 9

RLF1-2872983-1

*Westinghouse Electric Corp. v. Republic of Philippines,*
   951 F 2d 1414 (3d Cir  1991) ........................................................................ 12

## STATUTES AND OTHER AUTHORITIES

18 U S C  § 1503 ........................................................................................... 8

11 Del  C  § 531 ........................................................................................... 16

Modern Fed  Jury Instructions-Criminal § 46 01 (2004) ............................................. 8

iii

# I.

## INTRODUCTION

Micron's motion to pierce Rambus's attorney-client privilege and work product claims based on Rambus's spoliation of evidence is ripe for immediate decision The <u>Infineon</u> and <u>Hynix</u> courts both found a <u>prima facie</u> case of spoliation sufficient to pierce the privileges, and the <u>Infineon</u> court found "clear and convincing evidence" of spoliation after a five-day evidentiary hearing  Rambus's opposition largely is based on the same arguments that were made to, and rejected by, the <u>Infineon</u> and <u>Hynix</u> courts Rambus's arguments have no more force here than they did in those cases  Delaying resolution of this motion, as Rambus urges, will do nothing except disrupt Micron's discovery efforts and increase cost and expense

Micron's motion to compel documents covered by Judge McKelvie's and Judge Payne's 2001 crime/fraud orders also stands unrebutted  Rambus does not dispute that those orders pierced Rambus's claims of privilege through June 1996 and that Rambus has withheld documents covered by those orders  Yet Rambus's opposition presents no justification for its unilateral refusal to comply with a standing order of this Court  Rambus's contention that the Federal Circuit's decision undermined the basis for Judge McKelvie's and Judge Payne's 2001 orders was considered and rejected by Judge Payne in 2004  The evidence – which Rambus does not dispute – shows that Rambus intended to defraud JEDEC members and received legal advice in furtherance of its scheme  Nothing more is required to pierce the privilege, and nothing in the Federal Circuit's decision suggests that Rambus lacked the requisite intent to defraud

Finally, Rambus has failed to rebut Micron's showing that Rambus's

1

privilege claims should be pierced through January 2000 based on Rambus's continuing

efforts to defraud JEDEC members following its withdrawal from JEDEC in June 1996

Rambus's main argument – that its withdrawal from JEDEC ended its duty to disclose

patent rights and thereby ended its fraudulent scheme – is both unsupported and illogical

Indeed, the argument ignores the fact that essential elements of Rambus's attempted

fraud, including reliance and injury, arose from Rambus conduct that was not completed

until Rambus filed a patent infringement suit against JEDEC standard SDRAMs and

DDR SDRAMs in January 2000

       Micron's motion is well-grounded and should be granted in full

## II.

### THE COURT SHOULD NOT DELAY RULING ON THIS MOTION UNTIL AFTER THE <u>HYNIX</u> UNCLEAN HANDS TRIAL

       Even though two federal courts already have pierced Rambus's attorney-

client privilege and the work product doctrine based on a <u>prima facie</u> showing under the

crime/fraud doctrine, and even though one federal court already has found clear and

convincing evidence that Rambus spoliated evidence after a five-day evidentiary hearing,

Rambus urges this Court to defer action on Micron's motion to pierce these privileges

until after the <u>Hynix</u> Court conducts an "unclean hands" trial  Rambus Opp at 3-4  This

request, which is based on speculation and which will result in inefficiency and undue

delay, should be rejected

       First, delaying resolution of this motion to compel will impede Micron's

ability to pursue discovery in this case  As Rambus readily admits, an unclean hands trial

is not even scheduled in the <u>Hynix</u> case  Judge Whyte has vacated the date previously set

for Hynix's unclean hands trial and has not set a new date. <u>See</u> Exh. 66 (<u>Hynix</u> (Proposed) Order No. 2 Re: Newly Discovered Evidence). It is conceivable that Judge Whyte will not set a trial date on unclean hands this year. If granted, Rambus's request could mean that Micron's motion to compel discovery into Rambus's spoliation will not be resolved for many, many months. This, in turn, would impair Micron's ability to conduct discovery generally, not just on spoliation issues. Many of the witnesses that Micron may wish to depose on spoliation issues (<u>e.g.</u>, Messrs. Tate, Mooring, Roberts, Vincent, Diepenbrock, Steinberg, Horowitz, Kramer) also have knowledge concerning other issues relevant to the lawsuit (<u>e.g.</u>, licensing, JEDEC, patent prosecution). If the Court delays in ruling on this motion, then Micron may be forced to depose these witnesses once on non-spoliation issues, then suspend the depositions, and then depose the same witnesses again on spoliation issues after the Court rules on this motion. Such a discovery process would be costly and inefficient for Micron, and many of the witnesses could be expected to object to such an approach. Put simply, delaying resolution of Micron's motion to compel discovery would be inconsistent with the Court's directive at the April 21, 2005 status conference that productive discovery is to continue even though the schedule has been vacated. <u>See</u> Exh. 67 (Tr. of Status Conf., Apr. 21, 2005) at 26.

Second, Rambus's contention that this Court will benefit from Judge Whyte's resolution of Hynix's unclean hands defense is entirely speculative. There is no guarantee that a <u>Hynix</u> unclean hands trial will occur at all or, if it does, that it will result in *any* findings of fact. Rambus could very well settle the <u>Hynix</u> case to prevent Judge Whyte from issuing findings of fact, just as Rambus did in the <u>Infineon</u> case.

Finally, this motion does not depend on the outcome of the <u>Hynix</u> unclean

3

hands trial   If the <u>Hynix</u> Court finds that Rambus has unclean hands based on its spoliation of evidence, then that will be at least the fifth judicial decision finding or upholding a <u>prima facie</u> case of spoliation or actual spoliation   Micron submits that three district court decisions, one Federal Circuit decision, and the evidence of record on this motion provide ample authority for this Court to find that Micron has made out a <u>prima facie</u> case of spoliation [1]  If, however, the <u>Hynix</u> Court rejects Hynix's unclean hands defense, such a decision would not provide a basis for denying Micron's motion to compel   To prevail on this motion, Micron need only make a <u>prima facie</u> showing that Rambus planned to commit a crime or fraud, and communicated with its lawyers in furtherance of this pursuit   By contrast, the <u>Hynix</u> Court will be asked to determine whether there is clear and convincing evidence that Rambus, as a matter of equity, cannot enforce its patent rights based on "unclean hands"   Because the burden of proof is different, and because Micron is not a party to the <u>Hynix</u> case, a finding that Rambus did not have unclean hands in <u>Hynix</u> does not negate or undermine Micron's <u>prima facie</u> showing that Rambus intended to commit a crime or fraud

Rambus seems to suggest that this Court, unlike the <u>Infineon</u> and <u>Hynix</u> Courts, will not find a <u>prima facie</u> case of spoliation because the Administrative Law Judge's ("ALJ's") February 2004 initial decision in the FTC matter found no indication

---

[1] Rambus's assertion that the unscheduled <u>Hynix</u> unclean hands trial will produce a "fuller and more accurate record" on spoliation is unfounded   Rambus Opp at 3   The evidentiary hearing in <u>Infineon</u> lasted five days   The hearing generated a transcript that is over 1100 pages long and the Court admitted over 200 exhibits   The three witnesses identified by Rambus who live within the subpoena power of the <u>Hynix</u> Court all were deposed in the <u>Infineon</u> case and their depositions were introduced during the unclean hands trial   Any unclean hands trial in <u>Hynix</u> is likely to produce a record that is substantially identical to the record generated in the <u>Infineon</u> case

4

that any materials relevant to the FTC proceeding were destroyed  Rambus Opp  at 10-

11  In making this argument, Rambus ignores the fact that Judge Payne in Virginia and

Judge Whyte in California pierced the privilege based on evidence of spoliation that

Rambus did not produce until <u>after</u> the ALJ issued his initial decision  Much of the

evidence on which Micron's motion is based, including evidence that Rambus destroyed

tens of thousands of documents in 1999 and 2000, simply was not before the ALJ.[2]

### III.

### RAMBUS'S ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT CLAIMS SHOULD BE PIERCED BECAUSE MICRON HAS SHOWN <u>PRIMA FACIE</u> THAT RAMBUS OBTAINED LEGAL ADVICE IN FURTHERANCE OF A CRIME OR FRAUD

In its opposition, Rambus does not dispute Micron's evidence that

Rambus's document destruction policy was developed, planned, and implemented as part

of its litigation strategy  Micron Mem  at 19-20.  Rambus does not dispute that it

anticipated litigation with DRAM manufacturers in 1998, 1999, and 2000  <u>Id.</u> at 12-15

Nor does Rambus dispute Micron's evidence that Rambus destroyed documents in order

to improve its position in litigation and avoid discovery of the destroyed information  <u>Id.</u>

at 19  Moreover, Rambus does not dispute Micron's showing that the tens of thousands

of pages of documents that Rambus destroyed from 1998 through 2000 included

materials highly relevant to this case  <u>Id.</u> at 17-19  Instead, Rambus tries to avoid

application of the crime/fraud doctrine by arguing that it did not commit a crime under

---

[2] On March 30, 2005, Complaint Counsel in the FTC matter filed a supplemental memorandum that seeks to reopen the FTC record to admit evidence of Rambus's spoliation that was not available during the administrative hearing  A public version of the supplemental memorandum is attached hereto as Exh  68

5

California Penal Code § 135 because it did not destroy documents that would be produced in "imminent" litigation. Rambus Opp. at 6-10. This argument, which ignores extensive evidence in the record and which is based on a mischaracterization of California law, should be rejected.

First, "imminent" litigation is not a requirement of criminal spoliation under § 135 of the California Penal Code. Instead, litigation need only be anticipated. Rambus made this very same "imminent litigation" argument to Judge Whyte in the Hynix case, and Judge Whyte roundly rejected it:

> Requiring litigation to be imminent as well as anticipated for a finding of spoliation would permit companies to destroy documents while intending to commence litigation without encountering spoliation liability, so long as the company waited long enough after destroying evidence to file suit.

Exh. 6 (Hynix Jan. 31, 2005 Order) at 5-6. Judge Whyte explained that Rambus's proffered interpretation "would not 'effect the object' of Penal Code Section 135, nor would it promote justice." Id. at 6 (citing Silvestri v. General Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001)). This is because an "imminence" requirement of the type Rambus seeks to read into California law "would permit companies to destroy documents while intending to commence litigation without encountering spoliation liability, so long as the company waited long enough after destroying evidence to file suit." Id. at 5-6.[3]

---

[3] The case on which Rambus relies to read an "imminent litigation" requirement into California law – People v. Prysock, 127 Cal. App. 3d 972 (1982) – is inapposite. There, two boys murdered a woman and then burned the clothes they wore at the time of the killing. The Court found that the boys were not guilty of destroying evidence under California Penal Code § 135 because there was insufficient evidence that the boys knew that the clothing was about to be produced in evidence. Id. at 1001. The Court added that there was no evidence that "law enforcement was or would be looking for the

Second, even if "imminent litigation" were a requirement of California law, which it is not, Micron has made a <u>prima facie</u> showing that Rambus did destroy documents that were about to be produced in imminent and pending litigation. On June 23, 2000, at the same time that Rambus notified Infineon of its alleged infringement of Rambus's patents, Lester Vincent began destroying documents in patent prosecution files. Exh. 28 (Rambus "Issued Patent File Clean-up" summary indicating L. Vincent cleaned out patent files as late as June 23, 2000); Exh. 48 (<u>Infineon</u> Dep. Tr. of L. Vincent, Apr. 12, 2001) at 417-19. On July 17, 2000, just a few weeks before it sued Infineon in the Eastern District of Virginia, Neil Steinberg of Rambus sent an e-mail to Rambus executives instructing them that they and their team "are to destroy or systematically discard" draft license agreements and negotiation materials. Exh. 34 (July 17, 2000 e-mail from N. Steinberg to Rambus executives) at MEDVA 5089. In addition, Rambus shredded nearly 500 bags of documents on December 28, 2000 – after this lawsuit was filed, after Micron had served Rambus with its first set of requests for documents on December 1, 2000, and just a few days before Rambus's responses to Micron's document requests were due under Rule 34 of the Federal Rules of Civil Procedure. Exh. 24 (Dec. 28, 2000 Sure Shred invoice showing destruction of 460 shred bags of Rambus documents) at MEDVA 5497. This evidence, which Rambus ignores,

---

particular item" – clothes. <u>Id.</u> <u>Prysock</u> is inapposite to the circumstances here because the party that destroyed the documents – Rambus – is the same party that controlled the timing of the litigation that it anticipated. Rambus knew that the documents it destroyed were about to be produced in litigation because it is undisputed that Rambus actively was planning litigation against DRAM manufacturers when it destroyed documents in 1998, 1999, and 2000. In contrast, the boys in <u>Prysock</u> were not planning litigation and did not know whether they would ever be prosecuted or investigated.

7

strongly shows that Rambus destroyed evidence relevant to "imminent" and pending litigation.

Micron's evidence on this motion also provides a prima facie showing that Rambus committed or attempted to commit the federal crime of obstruction of justice in violation of 18 U.S.C. § 1503. Section 1503, which broadly applies to any corrupt activity that impedes the administration of justice, has three elements: (1) a pending judicial action, (2) knowledge by the defendant of that pending action, and (3) defendant corruptly obstructs or impedes, or endeavors to obstruct or impede the proceeding. See Modern Fed. Jury Instructions-Criminal § 46.01 (2004). The corrupt destruction of evidence in a federal civil case following receipt of a document request may give rise to criminal liability under § 1503. See, e.g., United States v. Lundwall, 1 F. Supp. 2d 249, 254 (S.D.N.Y. 1998) (refusing to dismiss indictment of defendants under § 1503 because statute applies to corrupt destruction of documents sought in, and highly relevant to, pending civil proceeding, even though documents were not subject to subpoena or court order).

Here, the evidence unquestionably demonstrates that Rambus obstructed justice in violation of § 1503. When Rambus shredded some 460 bags of documents on December 28, 2000, this lawsuit indisputably was pending; Rambus, as a party, indisputably knew this lawsuit was pending; and Rambus indisputably had been served with Micron's first set of document requests. The evidence shows that Rambus destroyed the documents corruptly in order to avoid discovery and make itself "battle ready." Exh. 9 (J. Karp's notes from discussion with Cooley Godward attorneys on Feb. 12, 1998); Exh. 40 (Infineon Dep. Tr. of A. Diepenbrock, Apr. 11, 2001) at MEDVA 6669

8

(testifying regarding presentation from J Karp on Rambus' document retention policy, and that Rambus was concerned that documents would be "discoverable in a lawsuit"); Exh 41 at MEDVA 691 (J Karp July 22, 1998 presentation regarding Rambus' Document Retention Policy stating "Email – Throw It Away .  E-mail is discoverable in litigation or pursuant to a subpoena"), Exh 42 (Mar 16, 1998 e-mail from A Roberts to J Lau noting that "there is a growing worry about the e-mail back-ups as being discoverable information" and proposing a regular deletion of e-mail backup tapes so that backups would be deleted after three months).  This prima facie violation of § 1503 provides a separate and independent basis for piercing the attorney-client privilege beyond § 135 of the California Penal Code

Finally, regardless of whether Rambus committed or attempted to commit a crime under California or federal law, this Court has the power to pierce Rambus's privilege claims on the grounds that Rambus's invocation of the attorney-client privilege undermines the fair administration of justice.  Micron Mem at 11  In Infineon, Judge Payne recognized that although Rambus's spoliation did not fall within the precise letter of the Fourth Circuit's crime/fraud exception, the privilege should be pierced because to do otherwise would frustrate the policy behind the attorney-client privilege.  Rambus, Inc. v. Infineon Techs. AG, 222 F R D 280, 288, 298 (E D Va 2004) (piercing the attorney-client privilege without finding a crime or fraud because Rambus's spoliation was "wrongful and [] fundamentally at odds with the administration of justice ").  Courts in the Third Circuit also carefully examine all claims of privilege where the policy behind the attorney-client privilege is not being advanced  See Valenti v. Allstate Ins. Co., 243 F Supp 2d 200, 217 (M D Pa 2003) ("[A]ny invocation of the attorney-client privilege

9

should not go unexamined 'when it is shown that the interest of the administration of justice can only be frustrated by its exercise '") The policy behind the attorney-client privilege is to "promote  observance of the law and administration of justice" and the privilege "applies only where necessary to achieve its purpose " United States v. Zolin, 491 U.S 554, 562-63 (1989) Based on these authorities, Rambus cannot use the attorney-client privilege to shield its massive spoliation of tens of thousands of documents – which indisputably was undertaken both in anticipation of litigation against DRAM manufacturers and during the pendency of such litigation – from discovery

## IV.

## RAMBUS HAS WAIVED ATTORNEY-CLIENT PRIVILEGE AND NON-OPINION WORK PRODUCT RELATING TO ITS SPOLIATION

Rambus argues that, contrary to Judge Payne's findings in Infineon, it did not waive the attorney-client privilege when it disclosed slides on its document "retention" policy to the FTC because "the uncontroverted evidence" shows that the slides were not privileged Rambus Opp at 11-12 This argument should be rejected on at least two grounds To begin with, the argument is unfair and prejudicial to Micron, because the argument is based on "evidence" that Rambus has withheld from Micron Rambus cites to deposition transcripts that allegedly support its argument without providing those transcripts to Micron [4] Rambus should not be allowed to submit evidence on an issue and argue what the evidence means without giving Micron an opportunity to examine the evidence and rebut Rambus's position

---

[4] As set forth in Micron's letter to the Court dated April 20, 2005 (D I 653), Rambus's offensive use of allegedly privileged information to prove that it did not waive privilege itself constitutes a waiver of the attorney-client privilege

In any event, Rambus's position amounts to nothing more than reargument of a position that it asserted and lost in the <u>Infineon</u> case   There, Rambus argued that the slide presentation it submitted to the FTC "was different than the slide presentation as to which privilege is claimed "  Exh  69 (<u>Infineon</u> May 18, 2004 Memorandum Opinion re: Privilege Waiver) at 7   Judge Payne reviewed the slides over which Rambus claimed privilege and compared them to the slides that Rambus submitted to the FTC   Based on his review, Judge Payne determined that the slides submitted to the FTC were "simply pages taken out of the July 22[, 1998] slide presentation" over which Rambus claimed privilege  <u>Id.</u> at 7   Rambus offers no explanation as to why Judge Payne's side-by-side comparison of the evidence is incorrect

Rambus also contends that there was no waiver of the privilege because the legal advice that Rambus disclosed was simply an attorney telling  "horror stories "  Rambus Opp  at 12   This is incorrect, as the disclosures indisputably were much broader   As described by Judge Payne, the legal advice that Rambus disclosed to the FTC included  "certain privileged communications about the purpose, scope, and implementation" of Rambus's "document retention policy "  Exh  69 (<u>Infineon</u> May 18, 2004 Memorandum Opinion re: Privilege Waiver) at 6   Moreover, Rambus's position that the "horror stories" were not privileged is belied by the fact that Rambus claimed privilege over a slide entitled "Horror Stories" that summarized attorney Dan Johnson's communications to Rambus about experiences with "deleted" e-mails being used to prove liability   Exh  45 (Presentation titled "Document Retention at Rambus 7/22/98") at MEDVA 591 (discussing attorney D  Johnson "horror stories")

Rambus then argues that its disclosure of privileged legal advice

concerning the reasons for adopting a document retention policy should not waive privilege over communications concerning the "implementation" of the policy and "its relationship to the patent litigation strategy," because those allegedly are different subjects. Rambus Opp at 12. This argument should be rejected because its premise is unfounded, namely, that the legal advice disclosed was limited to the reasons for the policy's adoption. Judge Payne's decision states clearly that the disclosed communications relate to "the purpose, scope, and implementation" of the policy. Exh. 69 (Infineon May 18, 2004 Memorandum Opinion re: Privilege Waiver) at 6.

Moreover, Rambus cannot parse the subject waiver so finely. When a party makes affirmative use of privileged communications, "the privilege will be waived as to all communications on the same subject." Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1426 (3d Cir. 1991). The scope of the subject matter waiver is to be construed broadly to serve the interests of fairness and justice. See, e.g., Glenmede Trust Co. v. Thompson, 56 F.3d 476, 486-87 (3d Cir. 1995)(when defendant disclosed privileged documents to show why one party was included in a multi-party transaction, defendant triggered a broad subject matter waiver that covered all communications on the entire transaction to serve interests of fairness); In re Papst Licensing, GmbH Patent Litig., 2001 U.S. Dist. LEXIS 15667 at *12-*14 (E.D. La. 2001) (out of fairness, subject matter waiver connected to communications in 1995 must be construed broadly to encompass documents created in 1991 and 1992 relating to the same subject matter) (attached hereto as Exh. 70); McGrath v. Nassau County Health Care Corp., 204 F.R.D. 240, 245 (E.D.N.Y. 2001) (subject matter waiver is to be construed broadly for reasons of fairness, among others).

12

Here, Rambus's own documents show that the "reasons" for Rambus's document retention policy are intertwined with, and are part of the same subject as, the "implementation" of the policy and its "relationship to litigation strategy" These documents include a March 2, 1998 Rambus presentation entitled "Licensing and Litigation Strategy" in which Rambus describes the "Need to create document retention policy" as a "Near Term Action" (Exh 44 at MEDVA 775) and a 1999 Rambus document which lists both "Prepare litigation strategy" and "Organize 1999 shredding party at Rambus" under the heading "Licensing/Litigation Readiness" (Exh 46 at MEDVA 712 ("IP Q3 '99 Goals – First Cut 6/27/99")) Plainly, Rambus viewed the "reasons" for a document retention policy as part of the same subject as its "implementation" and its relationship to "litigation strategy"

Finally, Rambus argues that the waiver should be limited to privileged communications made during the "1998 time frame," which is when Rambus received the privileged advice This argument is contrary to Third Circuit precedent, which holds that a waiver covers communications on the same subject matter regardless of their time frame  Smith v. Alyeska Pipeline Service Co., 538 F Supp 977, 980-82 (D Del 1982) (rejecting argument that waiver due to disclosure of privileged infringement letter would apply only up to date of infringement letter, and compelling production of documents on the same subject matter before and after the date, covering the span of more than two years); Murray v. Gemplus International, S.A., 217 F R D 362, 367 (E D Pa 2003) (rejecting defendant's contention that waiver should only cover portion of the negotiating period because "the existence of a temporal break in communications has no bearing on the subject-matter of those communications")

13

## V.

## RAMBUS MUST COMPLY WITH JUDGE MCKELVIE'S MAY 16, 2001 ORDER

Rambus does not dispute that Judge McKelvie's May 16, 2001 Order (D I
269), which is based on Judge Payne's March 7, 2001 order that pierced the attorney-
client privilege, is a valid standing order that Rambus has never challenged   Micron
Mem  at 25-26   Nor does Rambus dispute that in 2004, following the Federal Circuit's
decision in the Infineon case, Judge Payne confirmed the continuing vitality of his March
7, 2001 order and compelled Rambus to produce additional documents (at least 46 of
them) that were covered by the order and not previously produced   Although Rambus
produced these documents in the Infineon case,[5] and although Rambus did not appeal or
seek a writ of mandamus challenging the 2004 ruling, Rambus refuses to produce the
documents here   In substance, Rambus contends that it need not comply with Judge
McKelvie's order because the Federal Circuit concluded that Rambus did not commit
actual fraud in connection with its efforts to patent the JEDEC standards and that, as a
result, the basis for Judge McKelvie's and Judge Payne's orders has been rejected
Rambus Opp  at 13   This argument, which Judge Payne already has rejected and which
Rambus abandoned in Infineon, should be rejected here as well

First, there simply is no basis for Rambus to disregard a standing order of
this Court   Rambus did not move for reconsideration of the Order, did not seek to modify
the order, and did not seek a protective order   As a result, Rambus has no justification for

---

[5] Rambus does not dispute that it voluntarily produced some of these documents in the
FTC matter and in Hynix or that this voluntary production constitutes a privilege waiver
Micron Mem  at 25 n 6   At the very least, therefore, Rambus should be compelled to
produce these documents to Micron

refusing to comply with the order. Rambus is not free to comply with those orders it likes and to disregard those orders that it does not.

Second, Judge Payne already has considered and rejected Rambus's argument that the Federal Circuit's 2003 decision somehow undermined his March 7, 2001 order. _Rambus, Inc. v. Infineon Techs. AG_, 220 F.R.D. 264, 279 (E.D. Va. 2004) ("[C]ontrary to Rambus' contentions, the Federal Circuit's opinion did not remove the factual underpinnings of the March 7 Order.")

Third, Rambus's argument that a finding of no actual fraud undermines a crime/fraud determination is contrary to law and logic. The crime/fraud exception is triggered where the subjective intent of the client is to gain advice from its attorney to further the commission of a crime or fraud, even where the client's criminal or fraudulent scheme is _never completed_. _See_ _Finley Associates, Inc. v. Sea & Pines Consol. Corp.,_ 714 F. Supp. 110, 118 (D. Del. 1989) (citing _In re Grand Jury Subpoena Duces Tecum,_ 731 F.2d 1032, 1039 (2d Cir. 1984)). That is, failure of the criminal or fraudulent scheme is not a defense to the crime/fraud exception because the exception relies on the intent of the communication, and not the success of the client's wrongdoing. _See_ _In re Grand Jury Subpoena Duces Tecum,_ 731 F.2d 1032, 1039 (2d Cir. 1984) ("If a fraudulent plan were ineffective, the client's communications would not thereby be protected from disclosure."). Thus, the Federal Circuit's finding of no actual fraud on the limited record in _Infineon_ does nothing to undermine Judge Payne's or Judge McKelvie's crime/fraud determinations.

Relying on criminal law attempt theory, Rambus argues that it could not have attempted a fraud on JEDEC, and therefore the privilege cannot be pierced, because

15

what Rambus sought to do was not proscribed by law  Rambus Opp at 14-15  This argument misses the mark on at least two levels

The law of criminal attempt and impossibility are irrelevant to the crime/fraud doctrine  The intent required to satisfy the crime/fraud exception is very different from criminal law attempt, because the crime/fraud exception requires *no* "substantial steps" beyond a communication with the requisite intent to further a fraud  Compare Finley Associates, Inc. v. Sea & Pines Consol. Corp., 714 F Supp 110, 118 (D Del 1989), with 11 Del C § 531 (attempt to commit a crime)  Moreover, because intent is the touchstone of the crime/fraud exception, impossibility is not a defense to the crime fraud/exception  See In re Sutton, 1996 Del Super LEXIS 532, 36-37 (Del Super Ct 1996) (crime/fraud exception still applies in situations where "the crime or fraud was prevented from reaching completion, whether by voluntary abandonment of the plan, by outside intervention from law enforcement officers or others, or by impossibility") (attached hereto as Exh 71)

Furthermore, the Federal Circuit did not hold or suggest that it was impossible for Rambus to commit fraud on JEDEC  Rather, the Federal Circuit merely determined that Infineon had not presented substantial evidence that Rambus had breached a duty of disclosure because Rambus's pending patent claims were not sufficiently close to the standard to require disclosure  Rambus Inc. v. Infineon Techs. AG, 318 F 3d 1081, 1087, 1103-05 (Fed Cir 2003)

16

## VI.

## RAMBUS SHOULD PRODUCE DOCUMENTS AND TESTIMONY COVERED BY JUDGE MCKELVIE'S ORDER BEYOND JUNE 1996

In seeking to limit Judge McKelvie's order to privileged documents generated before Rambus left JEDEC in June 1996, Rambus argues that it could not have attempted to defraud JEDEC after June 1996. Without citing any authority, Rambus reasons that its attempt to defraud JEDEC ended "by definition" when it withdrew from JEDEC because it no longer was under a duty to disclose patent rights. Rambus Opp at 16. This is just plain wrong. Again, the touchstone of the crime/fraud exception is intent. Here, as demonstrated in Micron's opening papers, Rambus intentionally and willfully continued to pursue its fraudulent scheme after it left JEDEC. Rambus continued to tailor its patent claims to cover the JEDEC standards; it took affirmative steps to conceal its deceit; and it waited to sue JEDEC members on its concealed patent rights until after they had become "locked-in" to the JEDEC standards. Micron Mem. at 28-31.

Moreover, Micron has not alleged that Rambus had committed fraud or violated the antitrust laws prior to June 1996, when Rambus was a JEDEC member. Many of the elements of Rambus's attempted fraud, including reliance and damage, were not complete at the time Rambus left JEDEC. Indeed, it was Rambus's post-June 1996 conduct – filing patent infringement lawsuits against the JEDEC standard – that completed its fraudulent scheme. There simply is nothing in law or logic to support Rambus's essential premise that once the time period for one element of a fraudulent scheme – duty to disclose – allegedly comes to an end, it is impossible to pursue a fraudulent scheme thereafter.

17

Citing to a hearing transcript, Rambus further argues that post-June 1996 documents are not discoverable because the <u>Infineon</u> court "ruled" that "any fraud at JEDEC necessarily ended when Rambus left JEDEC." Rambus Opp at 16, 17. Judge Payne made no such ruling. In the transcript, Infineon's counsel stated that they would be "content" if they received Rambus' crime/fraud documents from 1991 through June 1996, which Judge Payne then ordered Rambus to produce. Rambus Opp. Exh. 1 at 8. Judge Payne made no finding that Rambus's fraud ended when it withdrew from JEDEC.[6]

In summary, Rambus pursued its fraudulent scheme while it was a member of JEDEC and continued to pursue the fraudulent scheme after withdrawing from JEDEC. The date on which Rambus left JEDEC is immaterial to the applicability of the crime/fraud exception. Because Rambus' fraudulent scheme was not complete until it asserted patent rights against JEDEC SDRAM and DDR SDRAM in January 2000, the Court should pierce the privilege on communications that occurred up to that time.

---

[6] Rambus also cites Judge Payne's judgment as matter of law ("JMOL") opinion on the issue of DDR SDRAM fraud for the proposition that "fraud cannot be committed after the duty of disclosure ends." Rambus Opp. at 17. This is incorrect. Judge Payne's JMOL opinion reasoned that fraud involving DDR SDRAM patents did not take place while Rambus was a JEDEC member because, on the record before him, the DDR SDRAM standard was not under official consideration at that time. See Rambus Opp. Exh. 19 at 75. The JMOL opinion did not address when Rambus's fraud ended, much less hold, as Rambus argues, that any fraud must end when Rambus withdrew from JEDEC.

18

# VII.

## CONCLUSION

For the foregoing reasons, Micron respectfully requests that its motion to compel be granted.

Dated: May 6, 2005

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
*Attorneys for Plaintiff*
*Micron Technology, Inc.*

19

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2005, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted.

### BY HAND

Mary B Graham, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N Market Street
P O Box 1347
Wilmington, DE 19899-1347

Josy W Ingersoll, Esquire
Young Conaway Stargatt & Taylor
1000 West Street, 17th Floor
P O Box 391
Wilmington, DE 19899-0391

I hereby certify that on May 6, 2005, the foregoing document was sent to the following non-registered participants in the manner indicated.

### VIA FEDERAL EXPRESS

Marc E Raven
Sidley Austin Brown & Wood LLP
10 S Dearborn Street
Chicago, IL 60603

Gregory P Stone
Munger Tolles & Olson LLP
355 South Grande Avenue, 35th Floor
Los Angeles, CA 90071

Matthew W King (#4566)
king@rlf com