# EXHIBIT 1

# United States Court of Appeals for the Federal Circuit

2006-1579

SAMSUNG ELECTRONICS CO., LTD.,

Plaintiff-Appellee,

v.

RAMBUS, INC.,

Defendant-Appellant.

David J. Healey, Weil, Gotshal & Manges LLP, of Houston, Texas, argued for plaintiff-appellee.  With him on the brief were Carmen E. Bremer, of Dallas, Texas; Amber H. Rovner and Melanie P. Sarwal, of Austin, Texas; and Edward R. Reines and Sonal N. Mehta, of Redwood Shores, California.  Of counsel on the brief was Richard L. Rainey, Covington & Burling LLP, of Washington, DC.  Of counsel were Gregory S. Coleman, Weil, Gotshal & Manges LLP, of Austin, Texas, and Brian C. Riopelle, McGuireWoods LLP, of Richmond, Virginia.

Richard G. Taranto, Farr & Taranto, of Washington, DC, argued for defendant-appellant.  On the brief was Michael J. Schaengold, Patton Boggs LLP, of Washington, DC.  Of counsel were Daniel L. Geyser, Gregory P. Stone, and Paul J. Watford, Munger Tolles & Olson LLP, of Los Angeles, California, and Paul R.Q. Wolfson, Wilmer Cutler Pickering Hale & Dorr LLP, of Washington, DC.

Appealed from: United States District Court for the Eastern District of Virginia

Senior Judge Robert E. Payne

# United States Court of Appeals for the Federal Circuit

2006-1579

SAMSUNG ELECTRONICS CO., LTD.,

Plaintiff-Appellee,

v.

RAMBUS, INC.,

Defendant-Appellant.

———————————————

DECIDED:  April 29, 2008

———————————————

Appeal from the United States District Court for the Eastern District of Virginia in case no. 3:05-CV-406, Judge Robert E. Payne.

Before RADER, SCHALL, <u>Circuit Judges</u>, and FARNAN,* <u>District Judge</u>.

RADER, <u>Circuit Judge</u>.

The United States District Court for the Eastern District of Virginia denied Samsung Electronics Co., Ltd.'s (Samsung) motion for attorney fees and issued a lengthy opinion addressing issues relating to the alleged spoliation of evidence by Rambus, Inc. (Rambus), but not relevant to the basis for judgment in favor of Samsung. When Rambus offered to pay Samsung's requested attorney fees in full, the case before the district court became moot. <u>Samsung Elecs. Co. Ltd. v. Rambus, Inc.</u>, 439 F. Supp. 2d 524 (E.D. Va. 2006). This court therefore vacates the order of the district court and remands the case to the district court with the instruction that it dismiss Samsung's complaint.

*      Honorable Joseph J. Farnan, Jr., District Judge, United States District Court for the District of Delaware, sitting by designation.

I

Rambus filed a complaint against Samsung alleging infringement of four of its patents in the United States District Court for the Northern District of California on June 6, 2005. The next day, Samsung filed a declaratory judgment action in the Eastern District of Virginia seeking a declaration that the patents at issue were invalid, unenforceable, and not infringed. The Eastern District of Virginia accepted jurisdiction to hear the case as related to a previously concluded litigation involving the same patents. Rambus Inc. v. Infineon Techs. AG, 164 F. Supp. 2d 743 (E.D. Va. 2001) (Infineon litigation). The patents at issue in that litigation were: U.S. Patent Nos. 5,953,263; 5,954,804; 6,032,214; and 6,034,918, all directed to various dynamic random access memory devices (DRAMs). In that previous litigation, this court, on appeal, had disagreed with the trial court's claim construction and fraud determination. Rambus Inc. v. Infineon Techs. AG, 318 F.3d 1081 (Fed. Cir. 2003). Accordingly, this court remanded. Id. On remand, the district court immediately entertained arguments regarding the spoliation of evidence. From the bench, the district court in Virginia ruled that Rambus had unclean hands due to spoliation of evidence. To avoid issuance of an adverse finding, Rambus quickly settled with Infineon. Accordingly, the trial court properly dismissed that original case against Infineon before entry of any findings or judgment against Rambus.

Five months after settlement of the Infineon litigation, and one day after Rambus filed suit in the Northern District of California, Samsung filed a declaratory judgment action against Rambus in the Eastern District of Virginia. On July 12, 2005, Rambus unsuccessfully moved to transfer the case to the Northern District of California-the

2

venue of Rambus' pending infringement action against Samsung, and the location of other ongoing lawsuits regarding the same patents.   Rambus Inc. v. Hynix Semiconductor Inc., No  C05-00334 RMW (N.D  Cal.); Hynix Semiconductor Inc. v. Rambus Inc., No  C00-20905 RMW (N.D  Cal.).   Samsung, however, aware of the previous adverse findings against Rambus in the Infineon litigation, sought to keep this case in the Eastern District of Virginia due to the possibility of invoking collateral estoppel on the basis of the earlier unpublished spoliation findings.

In the ongoing related litigation against Hynix in the Northern District of California, the district court, after an extensive inquiry into the same spoliation allegations, refused Hynix's analogous effort to invoke collateral estoppel based on the pre-settlement oral findings in Infineon.   Hynix v. Rambus, Order Denying Hynix's Motion to Dismiss Patent Claims for Unclean Hands on the Basis of Collateral Estoppel, C00-20905 RMW, (N.D. Cal. 2005).  In September of 2005, Rambus filed covenants not to sue Samsung on the four patents at issue and voluntarily dismissed its infringement counterclaims.  Accordingly, the district court in Virginia dismissed the case as moot on November 8, 2005.   The Virginia district court, however, retained jurisdiction to adjudicate Samsung's claim for attorney fees under 35 U.S.C. § 285.

On October 3, 2005, Rambus made a written offer to compensate Samsung for the full amount of its requested attorney fees.  On November 30, 2005, as suggested by the court, Rambus followed up with a formal offer of judgment under Fed. R. Civ. P. 68. Samsung did not accept the offer for full relief and persisted with its motion for attorney fees.  On July 18, 2006 the district court issued an order denying attorney fees because Rambus terminated its claims at a sufficiently early stage in the litigation and because

3

the record was insufficient to establish a causal nexus between the spoliation of evidence and the attorney fees sought by Samsung. Samsung Elecs. Co. Ltd. v. Rambus Inc., 439 F. Supp. 2d at 571-72. This opinion also held that the case was exceptional under 35 U.S.C. § 285, and issued the unpublished spoliation findings from the previously concluded Infineon litigation. Although it denied Samsung the only relief sought, the Virginia district court nonetheless issued a separate opinion on the same day holding that Samsung was the prevailing party. Samsung Elecs. Co. Ltd. v. Rambus Inc., 440 F. Supp. 2d 495 (E.D. Va. 2006).

II

Rambus timely appealed the district court's order denying Samsung's attorney fees application but entering findings adverse to Rambus with respect to the spoliation of evidence.

Having appealed the order of the district court, Rambus nevertheless asks this court to dismiss its appeal for lack of jurisdiction. According to Rambus, because it was the prevailing party on the issue of attorney fees, it lacks standing to challenge the findings that are adverse to it in the district court's order. Under these circumstances, Rambus argues, this court does not have before it an Article III case or controversy. Hence, it is without jurisdiction. Rambus argues in the alternative that, if this court does decide to exercise jurisdiction, it should hold that the district court lacked jurisdiction to rule on Samsung's application for attorney fees because the issue had become moot in view of Rambus' offer to pay the full amount of attorney fees claimed by Samsung. Rambus urges this court to vacate the order of the district court and to remand the case to the court with the instruction that it dismiss Samsung's complaint.

4

Article III, § 2 of the Constitution confines federal courts to the decision of "cases" or "controversies." Standing to sue or defend is an aspect of the case-or-controversy requirement. Ne. Fla. Chapter, Associated Gen. Contractors of Am. v. Jacksonville, 508 U.S. 656, 663-64 (1993). In the absence of Article III standing, a court lacks jurisdiction. See Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990) ("Article III, of course, gives the federal courts jurisdiction only over 'cases and controversies,' and the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process."). Finally, the Article III standing requirement "must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance." Arizonans for Official English v. Arizona, 520 U.S. 43, 64 (1997) (citing Diamond v. Charles, 476 U.S. 54, 62 (1986)).

Rambus's argument that this court should dismiss its appeal because it lacks standing to challenge the district court's order raises a legitimate question as to our jurisdiction. It is not necessary for us to decide the standing issue, however. The reason is that this court may adopt the approach of assuming, arguendo, that Rambus has standing to bring this appeal. See Arizonans for Official English, 520 U.S. at 66-67. ("We may resolve the question whether there remains a live case or controversy with respect to Yniguez's claim without first determining whether AOE or Park has standing to appeal because the former question, like the latter, goes to the Article III jurisdiction of this Court and the courts below, not to the merits of the case.") (citations omitted). Accordingly, this court turns now to the issue of whether Rambus' offer to pay the full amount of Samsung's attorney fees rendered the case moot so that the district court was without jurisdiction to enter the order that Rambus challenges.

Under Article III of the United States Constitution, federal courts may adjudicate only actual, ongoing cases and controversies. Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990) (citing Preiser v. Newkirk, 422 U.S. 395, 401 (1975)). This court examines cases for an actual Article III controversy as a question of law without deference. Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1058 (Fed. Cir. 1995) (citing BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993)).

An offer for full relief moots a claim for attorney fees. See, e.g., Greisz v. Household Bank, 176 F.3d 1012, 1015 (7th Cir. 1999) (holding that an offer of the full amount of attorney fees eliminates a dispute upon which federal jurisdiction can be based and stating "[y]ou can't persist in suing when you have actually won."). See also Rand v. Monsanto Co., 926 F.2d 596, 598 (7th Cir. 1991) ("Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate.").

The district court discounted these authorities because they did not involve the "imposition of sanctions." Samsung Elecs. Co. Ltd., v. Rambus Inc., 440 F. Supp. 2d 512, 522 (E.D. Va. 2006). Instead, the district court relied on three cases for the proposition that a trial court retains subject matter jurisdiction to impose sanctions even after the case becomes moot. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395-96 (1990) ("It is well established that that a federal court may consider collateral issues after an action is no longer pending. . . . [An] imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and if so, what sanction would be appropriate. Such a determination may be made after the principle suit has

6

been terminated."), Willy v. Coastal Corp., 503 U.S. 131, 138 (1992) (quoting the same language from Cooter and holding that even when a court no longer has subject matter jurisdiction it retains jurisdiction to sanction under Rule 11); Perkins v. Gen. Motors Corp., 965 F.2d 597, 602 (8th Cir. 1992) (upholding the district court's decision to impose sanctions under Rule 11 after it lost subject matter jurisdiction due to party settlement).

As these authorities show, a federal trial court enjoys discretion to postpone collateral issues until completion of the principal action. Those collateral issues include costs, fees, and contempt proceedings. Cooter, 496 U.S. at 395-96. Fed. R. Civ. P. 11 sanctions fit into this category of collateral issues. The issue before this court, however, does not involve collateral issues springing from a principal suit. In this instance, the fees are the main issue. In fact the only issue pending before the court was Samsung's motion for attorney fees under 35 U.S.C. § 285. Moreover, 35 U.S.C. § 285 is not a separate "sanctions statute." The only sanction for which section 285 provides is attorneys fees. Because the issue at bar is not a collateral issue and the statute is not a separate sanctions statute in and of itself, the district court lacks jurisdiction beyond full settlement of the fees dispute. The authorities cited by the trial court to retain jurisdiction do not apply in this instance.

In its entirety, 35 U.S.C. § 285 provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." This section of Title 35 provides attorney fees in exceptional cases. The statute requires the trial court to find a case "exceptional" before proceeding to consideration of attorney fees. Thus, exceptionality is an element or precondition for the imposition of attorney fees. The

7

statute does not make a finding of exceptionality a separate sanction. Thus, a trial court does not retain jurisdiction to make an "exceptional case" finding.

The district court harbored the misimpression that 35 U.S.C. § 285 authorizes the imposition of two separate sanctions: the finding of exceptionality and the award of attorneys fees. To the contrary, 35 U.S.C. § 285 authorizes the award of attorney fees in exceptional cases. Exceptionality is only an element for the award, not a separate sanction. In other words, the trial court did not have independent jurisdiction to assess exceptionality after full completion of the attorney fees litigation.

After Rambus offered the entire amount of attorney fees in dispute, the case became moot. The district court had no case or controversy to continue to consider. Thus, the trial court lacked subject matter jurisdiction to perpetuate an attorney fees dispute that was complete. As the Seventh Circuit explained:

> [I]f the defendant has thus thrown in the towel there is nothing left for the district court to do except enter judgment. The absence of a controversy (in the constitutional sense) precludes the court from issuing an opinion on whether the defendant has actually violated the law. Such an opinion would be merely an advisory opinion, having no tangible, demonstrable consequence, and is prohibited.

Chathas v. Local 134 IBEW, 233 F. 3d 508, 512 (7th Cir. 2000).

Accordingly, the district court in this case lacked jurisdiction to issue any further opinions in conjunction with an attorney fees dispute that has ceased to exist. Because the district court's writing is an impermissible advisory opinion, this court vacates that advisory opinion as issued without jurisdiction.

8

2006-1579

III

Courts possess inherent powers to sanction litigation misconduct. A court may use its inherent power to assess attorney fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991) (quoting F.D. Rich Co. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116 (1974)).

> In Chambers the Supreme Court explained:

> If a court finds that fraud has been practiced upon it or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party, as it may when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order. The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy.

Id. at 46 (internal citations omitted).

> Chambers went on to say that federal courts are not

> forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules. A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees. Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.

Id. at 48-49. (internal citations omitted).

This court has followed this Supreme Court rule for inherent powers.

9

> When there is bad faith conduct in the course of litigation that could be adequately sanctioned under the [statutes or] rules, the court ordinarily should rely on the [statutes or] rules rather than the inherent power. The court should resort to its inherent power only where the rules or statutes do not reach the "acts which degrade the judicial system."

Amsted Indus. Inc. v. Buckeye Steel Castings Co., 23 F.3d 374, 379 (Fed. Cir. 1994) (quoting Chambers, 501 U.S. at 41-42).

In this case, the district court recognized the availability of its inherent power to sanction, but expressly declined to invoke it to sanction Rambus. Samsung Elecs. Co. Ltd. v. Rambus Inc., 439 F. Supp. 2d at 573-74. In any event, the district court's power to use its inherent power, which it declined to do, cannot exceed its jurisdiction over the case itself. Once the underlying attorney fees were offered, the case was moot and the trial court lacked jurisdiction.

IV

In sum, the offer of the full amount in dispute brought an end to the case and controversy between Rambus and Samsung. At that point the district court also lacked subject matter jurisdiction to rule on the attorney fees motion. The case became moot. Accordingly, this court vacates the order of the district court denying Samsung's application for attorney fees and entering findings with respect to the spoliation of evidence as issued without jurisdiction. The case is remanded to the district court with the instruction that the court dismiss Samsung's complaint.

VACATED AND REMANDED

NO COSTS

10

2006-1579

# EXHIBIT 2

                    UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

                       SAN JOSE DIVISION


HYNIX SEMICONDUCTOR INC.,     ) C-00-20905 RMW
HYNIX SEMICONDUCTOR           )
AMERICA INC., HYNIX           ) FEBRUARY 4, 2008
SEMICONDUCTOR U.K. LTD.,      )
AND HYNIX SEMICONDUCTOR       ) VOLUME 2
DEUTSCHLAND GMBH,             )
                              ) PAGES 140-375
         PLAINTIFFS,          )
                              ) ALSO CASE NOS.
              VS.             ) C-05-00334
                              ) C-05-02298
RAMBUS, INC.,                 ) C-06-00244
                              )
         DEFENDANT.           )
_____)
                              )
RAMBUS,                       )
                              )
         PLAINTIFF,           )
                              )
              VS.             )
                              )
HYNIX SEMICONDUCTOR, INC.,    )
HYNIX SEMICONDUCTOR AMERICA   )
INC., HYNIX SEMICONDUCTOR     )
MANUFACTURING AMERICA INC.,   )
                              )
SAMSUNG ELECTRONICS CO.,      )
LTD., SAMSUNG ELECTRONICS     )
AMERICA, INC., SAMSUNG        )
SEMICONDUCTOR, INC., SAMSUNG  )
AUSTIN SEMICONDUCTOR, L.P,    )
                              )
NANYA TECHNOLOGY              )
CORPORATION, NANYA            )
TECHNOLOGY CORPORATION USA,   )
                              )
MICRON SEMICONDUCTOR          )
PRODUCTS, INC.,               )
                              )
         DEFENDANTS.          )
_____)

1    THE EVIDENCE WILL BE THEY NEVER TOLD
2  ANYONE THAT WAS THEIR GOAL.  THEIR SECOND GOAL WAS
3  SORT OF A BACK-UP PLAN.

4    WELL, WHAT WE'LL DO IS WHEN TECHNOLOGY IS
5  PROPOSED FOR THE STANDARD, IF SOMEONE SAYS, FOR
6  EXAMPLE, LET'S DO SOMETHING THIS WAY IN A CHIP,
7  THAT RAMBUS WOULD THEN GO TO ITS ATTORNEYS AND SAY,
8  LET'S FILE A CLAIM THAT WE INVENTED THAT.

9    AND THEY DIDN'T TELL THE COMMITTEE THAT
10  THAT'S WHAT THEY WERE DOING.  AND THEY'D SIT THERE
11  WHILE THE COMMITTEE THEN VOTED TO PUT THAT
12  STANDARD, THAT TECHNOLOGY INTO THE STANDARD.  AND
13  THEN THAT STANDARD WOULD BE ADOPTED AND COMPANIES
14  WOULD SPEND MILLIONS AND MILLIONS AND MILLIONS OF
15  DOLLARS, YOU KNOW, PUTTING THEIR FACTORIES TOGETHER
16  SO THEY COULD MAKE THESE CHIPS, MAKING THESE CHIPS,
17  PUTTING THEM IN THE MARKET.

18    AND THEN AT THAT POINT, RAMBUS WOULD COME
19  FORWARD AND SAY, AH-HAH, WE OWN THAT TECHNOLOGY IN
20  THAT STANDARD.

21    AND FOR ANYONE TO MAKE A CHIP CONSISTENT
22  WITH THE INDUSTRY STANDARD, YOU HAVE TO PAY MONEY
23  TO US.  YOU HAVE TO PAY US OR WE CAN JUST STOP YOU
24  FROM MAKING IT ALTOGETHER.

25    THAT ACTIVITY IS CALLED A PATENT TRAP,

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION


HYNIX SEMICONDUCTOR INC.,      )  C-00-20905 RMW
HYNIX SEMICONDUCTOR            )
AMERICA INC., HYNIX            )  FEBRUARY 27, 2008
SEMICONDUCTOR U.K. LTD.,       )
AND HYNIX SEMICONDUCTOR        )  VOLUME 15
DEUTSCHLAND GMBH,              )
                              )  PAGES 2941-3225
          PLAINTIFFS,         )
                              )  ALSO CASE NOS.
          VS.                 )  C-05-00334
                              )  C-05-02298
RAMBUS, INC.,                 )  C-06-00244
                              )
          DEFENDANT.          )
_____)
                              )
RAMBUS,                       )
                              )
          PLAINTIFF,          )
                              )
          VS.                 )
                              )
HYNIX SEMICONDUCTOR, INC.,    )
HYNIX SEMICONDUCTOR AMERICA   )
INC., HYNIX SEMICONDUCTOR     )
MANUFACTURING AMERICA INC.,   )
                              )
SAMSUNG ELECTRONICS CO.,      )
LTD., SAMSUNG ELECTRONICS     )
AMERICA, INC., SAMSUNG        )
SEMICONDUCTOR, INC., SAMSUNG  )
AUSTIN SEMICONDUCTOR, L.P,    )
                              )
NANYA TECHNOLOGY              )
CORPORATION, NANYA            )
TECHNOLOGY CORPORATION USA,   )
                              )
MICRON SEMICONDUCTOR          )
PRODUCTS, INC.,               )
                              )
          DEFENDANTS.         )
_____)

1    EFFECT?

2                MR. PRICE:  THE PREJUDICIAL EFFECT IS

3    MR. STONE, YOU'LL RECALL, WAS SAYING THAT THESE

4    COMPANIES ARE WEALTHY, THEY MAKE BILLIONS AND

5    BILLIONS OF DOLLARS.  HE DIDN'T EVEN WANT US TO BE

6    ABLE TO SAY, FOR EXAMPLE, THAT MICRON LOST MONEY,

7    AND WE STILL CAN'T SAY WHAT THE PERCENTAGE WAS.

8                AND NOW HE WANTS TO SAY, IN ADDITION TO

9    THAT, THEY GOT 500 MILLION IN INTEL.  WE'RE JUST

10   AWASH IN CASH.  WHY DIDN'T WE PAY THEIR PRICE?

11               THAT'S WHAT HE'S TRYING TO GET IT IN FOR,

12   BECAUSE THERE'S NO REASON FOR THE PURPOSE HE

13   SUGGESTS HE'S PUTTING IT IN FOR BECAUSE WE ALL

14   AGREE ON IT, WE ALL AGREE THAT IN '97, AND '98, AND

15   '99 MR. KARP'S PLAN WAS A BACKUP PLAN AND THEY DID

16   NOT WANT TO SNATCH DEFEAT FROM THE JAWS OF VICTORY

17   AND GO AFTER THE MANUFACTURERS FOR INFRINGING ON

18   DDR AT THAT POINT.

19               MR. STONE:  YOUR HONOR, WE WOULD HAVE

20   SAVED AN HOUR OF MR. PRICE'S EXAM OF MR. TATE IF

21   THAT WAS TRUE.

22               THERE'S NO OTHER EXPLANATION FOR THE

23   EXHIBITS THAT HE PUT IN, ONE AFTER THE OTHER AFTER

24   THE OTHER FROM THE '96, '97, '98 TIME FRAME WITH

25   RESPECT TO UNCERTAINTY WITH REGARD TO INTEL, OR THE