IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MICRON TECHNOLOGY, INC.,                    )
                                            )
            Plaintiff,                      )
                                            )
      v.                                    )
                                            )
RAMBUS, INC.,                               )
                                            )
            Defendant.                      )
_____    )
                                            )
RAMBUS, INC.,                               )       C.A. No. 00-792 (SLR)
                                            )
            Counterclaim Plaintiff,         )
                                            )
      v.                                    )
                                            )
MICRON TECHNOLOGY, INC., MICRON             )
ELECTRONICS, INC., and MICRON               )
SEMICONDUCTOR PRODUCTS, INC.,               )
                                            )
            Counterclaim Defendants.        )
_____    )

## MICRON'S RESPONSE TO RAMBUS'S OPENING REMAND BRIEF

*Of Counsel:*
William C. Price
Robert J. Becher
QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000

Jared Bobrow
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1175
(650) 802-3000

Dated: December 21, 2011

Frederick L Cottrell, III (#2555)
Cottrell@rlf.com
Anne Shea Gaza *(#4093)*
Gaza@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
*Attorneys for Plaintiff/Counterclaim
Defendant Micron Technology, Inc. and
Counterclaim Defendant Micron
Semiconductor Products, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................... iii

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 2

I.     RAMBUS ACTED IN BAD FAITH.................................................................. 2

     A.    Evidence Demonstrating Rambus's Intent In Adopting and
          Implementing The Policy Is Relevant And Demonstrates An
          Intent To Frustrate Fact Finding Regardless Of When Such
          Evidence Arose ................................................................................... 3

     B.    Rambus Adopted And Selectively Executed Its Policy Contrary
          To Johnson's Advice And Without Informing Johnson Of Its
          True Litigation Strategy ...................................................................... 6

     C.    Rambus Intended To Destroy Documents That Might Be Harmful
          To Rambus And Retain Those It Believed Would Be Helpful ............... 7

II.    MICRON HAS BEEN PREJUDICED .............................................................. 7

     A.    Rambus Ignores Several Of Micron's Defenses That Have Been
          Prejudiced .......................................................................................... 8

     B.    Micron's "JEDEC-Based Claims" Have Been Prejudiced ..................... 11

          1.    Micron's Patent Misuse, Antitrust, and Unfair Competition
               Claims And Defenses Are Not Foreclosed By *Hynix* or
               *Infineon* ..................................................................................... 11

          2.    Rambus Did Not Preserve Its Internal JEDEC Documents ............. 13

        C.    Micron's Inequitable Conduct Claims Have Been Prejudiced.................. 15

          1.    Rambus's Challenge To Micron's Inequitable Conduct
               Claims Is Procedurally Improper .................................................. 16

          2.    Rambus's Challenge To Micron's Inequitable Conduct
               Pleadings Is Irrelevant.................................................................. 17

RLF1 5692647v. 1

3.  Rambus's Challenge To The Merits Of Micron's Inequitable Conduct Claims Also Fails ............................................................18

4.  Rambus's Spoliation Of Evidence Relevant To Scienter Prevented Micron From Pleading Additional Claims Of Inequitable Conduct ........................................................................20

5.  Rambus Cannot Prove That All Relevant Prior Art Was Retained ........................................................................................20

III.  A TERMINATING SANCTION IS APPROPRIATE ...................................22

A.  Rambus Bears A High Degree Of Fault For The Spoliation ..................22

B.  Rambus's Bad Faith Spoliation Prejudiced Micron's Claims And Defenses............................................................................................23

C.  Dismissal Is The Only Adequate Sanction............................................23

CONCLUSION...................................................................................................25

RLF1 5692647v. 1

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992)...........................................................................................10

*Accenture Global Servs. GmbH v. Guidewire Software Inc.*,
  581 F. Supp. 2d 654 (D. Del. 2008).....................................................................................12

*ACORN v. County of Nassau*,
  2009 WL 605859 (E.D.N.Y. Mar. 9, 2009).........................................................................24

*Anderson v. Cryovac, Inc.*,
  862 F.2d 910 (1st Cir. 1988)..................................................................................................7

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..............................................................................................................18

*Broadcom Corp. v. Qualcomm Inc.*,
  501 F.3d 297 (3d Cir. 2007)..................................................................................................12

*C.R. Bard, Inc. v M3 Sys., Inc.*,
  157 F.3d 1340 (Fed. Cir. 1998).............................................................................................12

*Capellupo v. FMC Corp.*,
  126 F.R.D. 545 (D. Minn. 1989)...........................................................................................24

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  973 P.2d 527 (Cal. 1999). ....................................................................................................12

*Eaton Corp. v. Rockwell Int'l Corp.*,
  323 F.3d 1332 (Fed. Cir. 2003).............................................................................................10

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009).............................................................................................17

*Flury v. Daimler Chrysler Corp.*,
  427 F.3d 939 (11th Cir. 2005) ..............................................................................................25

*Gates Rubber Co. v. Bando Chem. Indus. Ltd.*,
  167 F.R.D. 90 (D. Col. 1996) ...............................................................................................25

*Gutman v. Klein*,
  No. 03-CV-1570, 2008 WL 4682208 (E.D.N.Y. Oct. 15, 2008).......................................4, 5

*Hynix Semiconductor Inc. v. Rambus Inc.,*
   645 F.3d 1336 (Fed. Cir. 2011)................................................................ *passim*

*Leon v. IDX Sys. Corp.,*
   464 F.3d 951 (9th Cir. 2006) .........................................................................7, 23

*Micron Tech., Inc. v. Rambus Inc.,*
   645 F.3d (Fed. Cir. 2011)................................................................... *passim*

*Montrose Med. Group Participating Sav. Plan v. Bulger,*
   243 F.3d 773 (3d Cir. 2001).............................................................................25

*Oddzon Prods., Inc. v. Just Toys, Inc.,*
   122 F.3d 1396 (Fed. Cir. 1997)........................................................................10

*PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.,*
   225 F.3d 1315 (Fed. Cir. 2000)..........................................................................9

*Praxair, Inc. v. ATMI, Inc.,*
   543 F.3d 1306 (Fed. Cir. 2008)........................................................................18

*Rambus Inc. v. Infineon Techs. AG,*
   318 F.3d 1081 (Fed. Cir. 2003)..................................................................11, 13

*Silvestri v. Gen. Motors Corp.,*
   271 F.3d 583 (4th Cir. 2001) ...........................................................................21

*Stevenson v. Union Pac. R.R.,*
   354 F.3d 739 (8th Cir. 2004) ...........................................................................25

*Symbol Techs., Inc. v. Lemelson Med., Edu. & Research Found., LP,*
   422 F.3d 1378 (Fed. Cir. 2005).........................................................................9

*Taylor Milk Co. v. Int'l Bhh. of Teamsters,*
   69 Fed. Appx. 71 (3d Cir. 2003) ......................................................................17

*Therasense, Inc. v. Becton, Dickinson & Co.,*
   649 F.3d 1276 (Fed. Cir. 2011).........................................................15, 19, 20

*United States v. Boul,*
   57 Fed. Appx. 35 (3d Cir. 2002).........................................................................3

*In re Wechsler,*
   121 F. Supp. 2d 404 (D. Del. 2000)..................................................................24

**STATUTES & RULES**

6 *Del. C.* § 2532(a)(12)......................................................................................12

Cal. Bus. & Prof. Code § 17200 ................................................................................................12

Fed. R. Civ. P. 56(a) .................................................................................................................18

Fed. R. Evid. 404(b).................................................................................................................3

**OTHER AUTHORITIES**

2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 404.02[2][a]
  (2d ed. 2011) ...........................................................................................................................3

4 Ann. Patent Digest § 27:83 ...................................................................................................19

## INTRODUCTION

Rambus does not challenge that it is within the sound discretion of this Court to again determine whether a sanction is appropriate for Rambus's spoliation and, if so, the most appropriate sanction to impose. Nor does Rambus challenge the Court's prior underlying factual findings. Rather, for each of the three issues remanded for further consideration, Rambus mischaracterizes how the standard set out by the Federal Circuit should be applied.

With respect to bad faith, Rambus misleadingly describes the Federal Circuit's opinion as holding that this Court's factual findings did not meet the "exacting" intent standard required. The Federal Circuit drew no such conclusion, but rather directed the Court to apply an "intent to impair" test. In fact, the Federal Circuit expressly recognized that the Court's prior factual findings "may lead to a determination of bad faith." Despite Rambus's attempts to avoid those findings, the record demonstrates that Rambus's goal in adopting and implementing its document retention policy was to obtain an advantage in litigation by impairing the ability of its opponents to defend themselves—exactly what the test set out by the Federal Circuit requires.

And Rambus's document retention policy accomplished its goal, resulting in prejudice to Micron. Rambus ignores the Federal Circuit's acceptance of this Court's finding that Micron had successfully come forward with "plausible, concrete suggestions" as to what relevant evidence might have been destroyed. Rambus likewise ignores the Federal Circuit's recognition that the question of prejudice therefore turns on whether the Court finds bad faith. Instead, Rambus attempts to meet its "heavy" burden by suggesting that Micron's antitrust and unfair competition claims and inequitable conduct and patent misuse defenses must withstand summary judgment before prejudice can be found. But summary judgment is not the standard for spoliation. Rather, once the burden shifts, it is the spoliator's burden to demonstrate that the

destroyed documents would not have been relevant to Micron's claims and defenses. Evaluating the appropriateness of summary judgment before determining whether the destroyed evidence would have been relevant is putting the cart before the horse.

Finally, with respect to the appropriate sanction, Rambus once again misleadingly describes the Federal Circuit's opinion. The Federal Circuit did not direct this Court simply to "select the least onerous sanction," but rather the least onerous sanction that would protect Micron's interests and remedy the prejudice to Micron, while adequately deterring other patent holders from engaging in similar bad faith conduct in the future. Rambus does not (and cannot) demonstrate how money damages, an adverse instruction, or preclusion of evidence—or any other sanction short of dismissal—could accomplish these requirements given the vast amount of money Rambus is seeking the "extensive" spoliation that "includ[ed] within its scope the destruction of innumerable documents relating to all aspects of Rambus's business," and the fact that, as a result of Rambus's "scorched earth" tactics, there are absolutely no records describing the innumerable documents that were destroyed. D.I. 1088 ¶ 57.

## ARGUMENT

## I. RAMBUS ACTED IN BAD FAITH

The parties agree that a finding of bad faith is appropriate if the Court finds that Rambus had the "intent[] to impair" the ability of Micron or other DRAM manufacturers to defend themselves in litigation. Rambus Br. at 2. As Micron demonstrated in its opening brief, there is overwhelming evidence in the record that Rambus intended to do just that. Rambus does not dispute any of the Court's specific underlying factual findings. Instead, it improperly asserts that, in evaluating bad faith, the Court may only consider actions that took place after the duty to preserve arose and before Rambus instituted a litigation hold. But the law does not limit evidence of intent to a narrow time period surrounding the bad act in question. Rambus then

tries to explain away its adoption and selective implementation of the policy for improper purposes during that time frame by relying on advice from its litigation counsel, Dan Johnson. However, the Court already found that Rambus acted contrary to Johnson's advice and that Johnson would never have given the advice he did had he known what Rambus was really planning to do. Finally, Rambus incorrectly suggests that a finding of bad faith requires evidence that specific adverse documents were targeted and destroyed. The correct inquiry looks instead at the intent underlying Rambus's destruction, namely whether Rambus sought to frustrate fact-finding by destroying what it believed could be harmful to its anticipated litigation.

### A.   Evidence Demonstrating Rambus's Intent In Adopting and Implementing The Policy Is Relevant And Demonstrates An Intent To Frustrate Fact Finding Regardless Of When Such Evidence Arose

Rambus first attempts to avoid a finding of bad faith by trying to limit the relevant evidence to the narrow time period between December 1998 (the date by which the Court found Rambus had a duty to preserve) and December 1999 (when Rambus claims to have instituted a litigation hold). *See, e.g.*, Rambus Br. at 3-4, 7, 9. But the intent to impair test set out by the Federal Circuit does not confine evidence of intent in this way. There is no basis in the law for Rambus's assertion that the duty to preserve must have already arisen for intent to be evaluated or that intent may not be inferred from Rambus's after-the-fact concealment. Rather, it is well-established that intent may be inferred from events occurring both before and after the improper conduct at issue. *See* Fed. R. Evid. 404(b); 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 404.02[2][a] (2d ed. 2011). In *United States v. Boul*, 57 Fed. Appx. 35, 38-39 (3d Cir. 2002), for example, the Third Circuit held that documents drafted two years before the bad act at issue were probative of Defendant's intent at the time of that bad act. Later acts also may be probative of intent at the time of a bad act such as spoliation. *See, e.g.*,

*Gutman v. Klein*, No. 03-CV-1570, 2008 WL 4682208, at *9-10 (E.D.N.Y. Oct. 15, 2008) (finding bad faith spoliation based in part on evasive testimony during later court hearing).

As the Federal Circuit recognized, the "raison d'être" for Rambus' document retention policy was to "frustrate[] the fact-finding efforts of parties adverse to Rambus." *Micron Tech., Inc. v. Rambus Inc.,* 645 F.3d at 1311, 1322 (Fed. Cir. 2011). Even if the August 1999 shred day was held "as a matter of routine" under the policy as Rambus asserts (Rambus Br. at 3-4), such a "routine" was part of a larger policy that this Court already found was adopted and implemented for the improper purpose of frustrating fact-finding. Similarly, that the written words of the policy were found to be "unexceptional" and "content neutral" (Rambus Br. at 4) in no way negates the overwhelming evidence demonstrating the motivation behind that written policy and its actual implementation.

In particular, regardless of the written words of the policy, this Court and the Federal Circuit found that the policy was "specifically" proposed and intended to be implemented "within the context" and as "an important component" of Rambus's litigation strategy. D.I. 1088 ¶¶ 10, 39(b), 50, 55; *Micron*, 645 F.3d at 1322. In fact, it was described by Rambus numerous times as a "litigation activity" or "litigation readiness" goal. D.I. 1088 at n.45 (citing MTX 434; MTX 436); *see also* MTX 276; MTX 278; MTX 802. Not only was the policy motivated by litigation, but this Court also found that it was specifically intended to get Rambus "battle ready" for the "upcoming battle" of litigation. D.I. 1088 at n.15, n.20; *see also Micron*, 645 F.3d at 1322 (describing Rambus's adoption of the document retention plan to further its litigation strategy as a "natural reading" of getting "battle ready"). Rambus acknowledges these findings (Rambus Br. at 5), yet offers no legitimate explanation as to why it would have adopted a

4

document policy for the purpose of preparing for the war of specifically foreseeable litigation other than to frustrate its opponents' abilities to discover information in such litigation.

In addition, the policy was described to the employees who implemented it in the same way, that is, for the purpose of frustrating fact finding in litigation. The Court did not find that it was described as a routine way to clean house as Rambus suggests (Rambus Br. at 3-4), but rather as a "precursor to litigation" to be implemented "BEFORE LITIGATION." D.I. 1088 at ¶ 17; *see also* MTX 333. Rambus employees testified that this meant purging what may be discoverable documents in subsequent litigations. *See, e.g.*, D.I. 1061 at 1181:19-1182:8.

Moreover, Rambus ignores the evidence demonstrating its acknowledgement of the impropriety of the policy, such as its attempt to make the August 1999 "Licensing/Litigation Readiness" "shredding party" sound innocuous by re-styling it as a "compliance event" needed for "Database Maintenance" (D.I. 1088 at n.45), and Richard Crisp's smiley face emoticon when describing a missing document as a "fallen victim" to the policy (MTX 477).

Finally, Rambus's after-the-fact concealment of the true nature and extent of its policy not only demonstrates a continuing desire to frustrate the fact finding of its opponents after litigation commenced, but also further demonstrates its bad faith in adopting the policy in the first place. Had Rambus believed the true nature of its document retention policy to be as neutral and unexceptional as it now contends, then its corporate representatives would have had no reason to conceal the timing and implementation of that policy. As the Court previously found, the record is "replete with misrepresentations on the part of Rambus" contributing to "the very integrity of the litigation process [being] impugned." D.I. 1088 at ¶¶ 39, 57. Just as in *Gutman*, such after-the-fact litigation misconduct is highly probative of a spoliator's intent in carrying out the destruction at issue. 2008 WL 4682208, at *9-10.

**B.      Rambus Adopted And Selectively Executed Its Policy Contrary To Johnson's Advice And Without Informing Johnson Of Its True Litigation Strategy**

Rambus's assertions that it merely relied on the advice of its litigation attorney, Dan Johnson, in adopting and implementing the policy are similarly flawed. Rambus Br. at 5. First, Rambus did not actually follow Johnson's advice when it implemented the policy. The Court already found that Rambus's guidance to employees regarding how to implement the policy—namely, to destroy what may be harmful while at the same time to "LOOK FOR THINGS TO KEEP" that could be helpful—was "contrary" to Johnson's advice. D.I. 1088 at n.27.

Second, Rambus kept Johnson in the dark as to Rambus's true purpose and motivation in adopting and implementing the policy. Rambus never informed Johnson of its litigation plans, particularly of its "goal" to commence litigation by the end of 1999. D.I. 1062 at 1583:19-1584:3; *see also id.* at 1591:11-1594:18; 1593:22-1594:18; D.I. 1088 at n.47. Indeed, Johnson himself conceded at trial that he was completely unaware of this goal. D.I. 1062 at 1583:19-1584:3 ("I didn't know and I don't believe that."). Nor did Johnson have any idea that Rambus intended, as early as March 1998, to propose the royalty rate that Johnson had previously described as so "ridiculous" that it would inevitably lead to litigation. D.I. 1088 at n.17; *see also* D.I. 1062 at 1557:23-1562:16 ("Counsel, I have said now three times, I had no knowledge of Mr. Tate's communication with Mr. Karp [to ask for such a royalty rate], and Mr. Tate never communicated those facts to me.").

As the Court previously found, had Johnson known that Rambus anticipated litigation, he never would have advised Rambus to adopt such a retention policy. D.I. 1088 at n.15. Moreover, Rambus never asked Johnson to provide any advice about how to implement the policy. *Id.* at n.26. In fact, after the policy had been adopted, Johnson advised Rambus only "sporadically, answering Karp's 'random' questions." *Id.*

### C. Rambus Intended To Destroy Documents That Might Be Harmful To Rambus And Retain Those It Believed Would Be Helpful

Rambus acknowledges a "worry" about the discoverability of documents in litigation, but asserts that its intent was merely to limit the volume of information that it would have to produce rather than destroy potentially harmful documents. Rambus Br. at 7-8. This assertion is directly contrary to the contemporaneous evidence regarding how employees were told to implement the policy and the Court's finding that employees were specifically directed to "expunge" harmful documents, such as "documents questioning the patentability of Rambus inventions." D.I. 1088 at n.27. The relevant inquiry is not, as Rambus contends, whether a specifically harmful document existed and was destroyed (Rambus Br. at 8), but rather whether the document retention policy was adopted and implemented with the intent to avoid having to produce documents that might be harmful. *See Anderson v. Cryovac, Inc.*, 862 F.2d 910, 925 (1st Cir. 1988); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006).

Rambus engineer Craig Hampel's testimony demonstrates that Rambus had that very intent. His testimony did not concern the "creation" of documents questioning patentability as Rambus asserts (Rambus Br. at 8), but rather whether employees should "keep [such documents] around." D.I. 1061 at 1303:21-1304:14 (cited by the Court at D.I. 1088 at n.27).

## II. MICRON HAS BEEN PREJUDICED

In its attempt to refute prejudice, Rambus ignores several of Micron's defenses, erroneously argues that the *Hynix* decision disposes of Micron's "JEDEC-related claims and defenses," and mounts a procedurally improper and meritless attack on Micron's inequitable conduct defenses. Rambus Br. at 9-25. None of Rambus's arguments alter the Federal Circuit's conclusion that "the proper resolution [of the issue of prejudice] turns largely on . . . whether the district court, on remand concludes that Rambus was a bad faith spoliator." 645 F.3d at 1328.

### A.    Rambus Ignores Several Of Micron's Defenses That Have Been Prejudiced

As a threshold matter, Rambus never even addresses several of Micron's defenses.  For example, Micron asserted lack of standing and license based on Farmwald's conception of the original Rambus application while he was an employee of MIPS.  *See* D.I. 1084 at 17, 23-24; D.I. 735-6 [3/15/2006 Micron Reply and Counterclaims] at 16, 18; Exh. 1 [11/30/2005 Micron Supplemental Interrogatory Responses] at 46.[1]  These defenses depend on information internal to Rambus, as exemplified by an email in which Farmwald admits that he "had the idea for Rambus while still at MIPS":

```
I actually had the idea for Rambus while still at MIPS in very early 1988, possibly even
1987, but keep quiet about it until I got to Univ. of Illinois (for obvious reasons).
Mike
```

MTX 136.  Indeed, the Court previously cited this very exhibit in holding that "the record demonstrates that there were documents relevant to [Micron's] defenses" that are "illuminated by evidence of a non-public nature, e.g., by internal Rambus documents."  D.I. 1088 ¶ 56 n.60.

Micron also asserted inequitable conduct based on Rambus's failure to disclose information to the patent office regarding MIPS.  *See* D.I. 1084 at 17; Exh. 1 [11/30/2005 Micron Supplemental Interrogatory Responses] at 19.  The named inventors both worked at MIPS prior to Rambus as did others substantively involved in prosecution (*see, e.g.*, MTX 009, RAMTX 209-24), and were thus aware of MIPS products material to the patentability of the patents-in-suit, including the R2000, R2010, R3000, R3010, R4000, and R6000 CPUs and FPUs, the R6020 System Bus Chip, and the RC6280 System.  *See* Exh. 1 [11/30/2005 Micron Supplemental Interrogatory Responses] at Appendix B; Exh. 2 [08/17/2001 McAlexander

---

[1] Exhibits cited herein refer to exhibits to Micron's Appendix to Micron's Response to Rambus's Opening Remand Brief.

Report, Exhibits A-H, Q18a]. But none of these MIPS products were disclosed to the PTO until well after litigation commenced and most of the patents-in-suit had issued. The close similarities between MIPS products and Rambus's patent claims, in conjunction with Farmwald's admission that he "had the idea for Rambus while still at MIPS . . . but kept quiet about it . . (for obvious reasons)" provides at least a "concrete, plausible suggestion" that Farmwald derived the idea for the original application from others at MIPS, and thus submitted a false oath claiming he was the original and true inventor. *See, e.g., PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1321-22 (Fed. Cir. 2000) (submission of false oath constitutes inequitable conduct).

Moreover, Micron asserted prosecution laches based on Rambus's unreasonable and unexplained delay of seven to eleven years in prosecuting the subject matter of the patents-in-suit.[2] *See* Exh. 1 [11/30/2005 Micron Supplemental Interrogatory Responses] at 21-22. Internal Rambus documents are indisputably relevant to this defense as well. *See, e.g., Symbol Techs., Inc. v. Lemelson Med., Edu. & Research Found., LP*, 422 F.3d 1378, 1385 (Fed. Cir. 2005) (prosecution laches requires examination of whether the delay was "unreasonable and unexplained"). Indeed, in *Symbol Technologies*, the Federal Circuit acknowledged that the "business purpose" behind filing an application can be relevant to prosecution laches, as can examination of the applicant's intent. *Id.* at 1382, 1384-86. Here, the internal Rambus documents that were not destroyed demonstrate that Rambus's business plan was to keep filing continuation applications in an effort to create a patent "minefield," even as it operated in "stealth mode" and delayed asserting patents until the industry reached "the point of no return." D.I. 1088 ¶ 4 & n.9, ¶ 22. It is at least plausible that additional documents that Rambus

---

[2] The filing dates for the patents-in-suit range from February 10, 1997 to February 27, 2001. They all claim priority to an application filed on April 18, 1990.

9

destroyed would have further demonstrated that it was Rambus's deliberate intent to delay its prosecution of the subject matter of its patents to hold up the industry.

Furthermore, Rambus glosses over the fact that several of Micron's invalidity defenses may depend on non-public information.[3]   Although the Court previously commented that "[t]he defenses that *do not seem likely* to depend from evidence internal to Rambus include those of anticipation and obviousness," (D.I. 1088 ¶ 56 n.59), Micron has provided plausible, concrete suggestions as to how its invalidity defenses may well depend on information internal to Rambus.   For example, derivation under 35 U.S.C. § 102(f) indisputably depends on non-public evidence.   *See Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1344 (Fed. Cir. 2003) (derivation requires proof of prior conception and communication to the patentee); *see also Oddzon Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1403-04 (Fed. Cir. 1997) (prior art under § 102(f) can be the basis for finding obviousness under § 103).   Because documents in the record suggest that Rambus derived its patent claims from MIPS and/or JEDEC standards, § 102(f) provides a viable defense that has been prejudiced by Rambus's spoliation.   *See, e.g.,* D.I. 1088 ¶ 4; *Micron*, 645 F.3d at 1315-16, 1323.   Moreover, the Federal Circuit has acknowledged that "testimonial evidence is frequently critical" to invalidity and unenforceability defenses.   *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1035 (Fed. Cir. 1992).

Thus, at the outset, Rambus's argument that "Micron has identified only two defenses that could theoretically have been prejudiced" by Rambus's spoliation of evidence is false. Rambus Br. at 10.   Having failed to even address several of Micron's defenses that depend on

---

[3] For example, the prior art MIPS R6000 & R6020 Bus System reference was labeled "MIPS Confidential" and accordingly would not have been widely available.   Exh. 2 [08/17/2001 McAlexander Report, Exhibits A-H, Q18a].   Evidence relevant to motivations to combine prior art and secondary indicia of nonobviousness also may be found in non-public information.

10

information internal to Rambus and having glossed over others, Rambus has failed to prove by clear and convincing evidence that Micron has not been prejudiced by Rambus's spoliation.

## B.     Micron's "JEDEC-Based Claims" Have Been Prejudiced

Besides ignoring several of Micron's defenses, Rambus also incorrectly argues that its spoliation has not prejudiced Micron's "JEDEC-based claims" because (1) the Federal Circuit's decision in *Hynix* allegedly "disposes of the entirety of Micron's JEDEC-related claims and defenses on the merits," and (2) Rambus allegedly preserved "all" of its "non-public JEDEC documents." Rambus Br. at 12-15. On both points, Rambus's arguments fail.

### 1.     Micron's Patent Misuse, Antitrust, and Unfair Competition Claims And Defenses Are Not Foreclosed By *Hynix* or *Infineon*

The Federal Circuit's decisions in *Hynix* and *Infineon* do not foreclose Micron's patent misuse, antitrust, and unfair competition claims for several reasons. To begin with, *Hynix* only addressed two "JEDEC-based" defenses—waiver and equitable estoppel.  *See Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1347 (Fed. Cir. 2011). Similarly, *Infineon* only addressed a single "JEDEC-based" defense—fraud. *See Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003). Neither *Hynix* nor *Infineon* addressed patent misuse, antitrust, unfair competition, or any other "JEDEC-based claims," and, therefore, never "disposed of" them. In fact, the Federal Circuit was well aware of *Hynix* and *Infineon* when it held *in this case* that Micron's patent misuse, antitrust, and unfair competition claims could have been prejudiced.[4] *Micron*, 645 F.3d at 1328. That ruling makes sense, because these claims and defenses do not require proof that Rambus breached a duty of disclosure to JEDEC.

---

[4] The *Micron* and *Hynix* appeals were consolidated for oral argument, the same judges decided both appeals, and the appellate decisions issued on the same day.

11

For example, monopolization and attempted monopolization require "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 307 (3d Cir. 2007). The second element may be based on any "deceptive conduct in the private standard-setting process," including "misrepresentations" or an "intentionally false promise[.]" *Id.* at 308-14. There is no requirement of a breach of a duty to disclose.

Similarly, Delaware's deceptive trade practices act prohibits conduct that "creates a likelihood of confusion or of misunderstanding." 6 *Del. C.* § 2532(a)(12); *Accenture Global Servs. GmbH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 665 (D. Del. 2008) (Robinson, J.). There is no requirement of a breach of a duty to disclose. Likewise, the California Business & Professions Code § 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. Prof. Code § 17200; *see Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539-44 (Cal. 1999) ("[T]he unfair competition law's scope is broad . . . 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."). There is no requirement of a breach of a duty to disclose.

Patent misuse "arises from the equitable doctrine of unclean hands, and relates generally to the use of patent rights to obtain or to coerce an unfair commercial advantage." *C.R. Bard, Inc. v M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998). Again, there is no requirement of a breach of a duty to disclose.

Here, Micron's claims and defenses are based on a variety of deceptive conduct by Rambus at JEDEC, including affirmative misrepresentations. *See generally* D.I. 1022 [09/05/2007 Micron 2nd Am. Compl.] at 9-24. Therefore, whether Rambus breached a duty of disclosure to JEDEC is not dispositive of Micron's patent misuse, antitrust, and unfair competition claims and defenses.

Nor do the Federal Circuit's rulings in *Infineon* and *Hynix* bind Micron here. The Federal Circuit held that Infineon failed to provide "substantial evidence" that Rambus violated a duty of disclosure to JEDEC because "Infineon did not show *any* expectation that the patents and applications identified by the district court covered the SDRAM standard." *Infineon*, 318 F.3d at 1104-1105. Among other things, Infineon did not present any expert testimony on that issue. *See generally id.* Micron is not bound by such a ruling. Furthermore, *Infineon* expressly stated that misrepresentations (which do not depend on breach of a duty to disclose) can establish fraud. *Id.* at 1096; *see also Hynix*, 645 F.3d at 1348 (equitable estoppel is based on "misleading conduct" which "may include specific statements"). As noted, Micron has viable claims for misrepresentation. Finally, Micron was not a party to the *Infineon* case or to the *Hynix* appeal.

For all of the above reasons, Rambus's argument that *Hynix* and *Infineon* foreclosed all of Micron's "JEDEC-based claims" fails. As the Federal Circuit has already concluded ***in this case,*** at a minimum "[d]ocuments relating to Rambus's conduct at JEDEC, together with documents reflecting Rambus's instructions to its patent prosecution counsel concerning its conduct at JEDEC, could have helped resolve Micron's claims relating to patent misuse, antitrust violations, and unfair competition." *Micron*, 645 F.3d at 1328.

### 2.     Rambus Did Not Preserve Its Internal JEDEC Documents

Rambus also argues that "Micron's JEDEC-related prejudice claim fails as a factual matter because the undisputed evidence is that all of Rambus's non-public JEDEC documents

13

were preserved and produced." Rambus Br. at 14. Rambus's contention is contrary to Rambus's prior admissions and the Court's previous conclusions. *See* D.I. 1088 ¶ 56 & n.60.

For example, Crisp himself admitted that "anything I had on paper I basically threw away," including "very possibl[y]" documents relating to work that he was doing with Allen Roberts and Lester Vincent to patent JEDEC standards. *See* D.I. 1060 at 802:24-804:3. Crisp also conceded that he destroyed emails. *Id.* at 817:3-10. These admissions by Crisp contradict his purportedly "unrefuted" testimony that Rambus preserved all of Crisp's JEDEC-related documents. Rambus Br. at 15. Crisp's admissions are all the more striking given Crisp's demonstrated tendency to testify falsely on Rambus's behalf. *See, e.g.*, D.I. 1088 ¶ 39(c). Moreover, Rambus does not address the destruction of the documents and e-mails of Roberts, Crisp's boss during the time he attended JEDEC meetings, or others at Rambus including CEO Geoff Tate who undeniably directed Rambus's plan to patent JEDEC standards. Micron Br. at 17. For example, a 1994 email from Tate to Roberts provides the concrete, plausible suggestion that individuals at Rambus other than Crisp generated documents relevant to Rambus's efforts to draft claims to read on the JEDEC standard:

> **Subject: sdram and most patent claims**
> **Date: Fri, 17 Jun 1994 05:19:25 -0800**
> **From: gtate@jupiter (Geoff Tate)**
> **To: roberts**
> **CC: gtate**
>
> this stuff is real critical - i'd like a list of which claims we are making
> that read directly on current/planned sdrams and on what most might be, so
> i can track progress from lester's periodic status lists. thx. geoff

MTX 93; *see also* MTX 94-002 (Tate handwritten notes from July 21, 1994 stating "SDRAM/MOST CLAIMS → Allen gave Lester a list of claims we need"); MTX 40 (1992 Tate email re: JEDEC strategy); MTX 48-0017 (Rambus 1992 Business Plan stating that "there are

14

additional claims we can file for our patents that cover features of Sync DRAMs"); RAMTX 69 (showing Rambus executives Geoff Tate, David Mooring, Mike Farmwald, Billy Garrett, Rick Barth, Fred Ware, Allen Roberts, Jeff Mitchell, and Julia Cates followed JEDEC meetings). The foregoing evidence provides at least concrete, plausible suggestions that Rambus destroyed documents relevant to Rambus's efforts to capture JEDEC standards. *Micron*, 645 F.3d at 1328.

Rambus also argues that "there is no *plausible* argument that any such [JEDEC] documents would have survived the first shred day." Rambus Br. at 15. However, the record amply demonstrates that Rambus's document destruction was not complete after the September 1998 shred day. In fact, some documents generated prior to September 1998 escaped destruction altogether, such as the email and handwritten notes by Tate from 1994 cited above. Rambus itself recognized that it could have "execute[d] the policy more effectively." MTX 581. Further, it is undisputed that "Rambus destroyed between 9,000 and 18,000 pounds of documents in 300 boxes" during its 1999 Shred Day. *Micron*, 645 F.3d at 1328; D.I. 1088 ¶ 28; *compare id.* ¶ 19 (400 boxes shredded in September 1998). Rambus does not contend that this volume of material consisted solely of documents generated between September 1998 and August 1999. Micron has thus provided concrete, plausible suggestions that Rambus's spoliation prejudiced Micron, and Rambus has failed to rebut that showing with clear and convincing evidence.

### C.    Micron's Inequitable Conduct Claims Have Been Prejudiced

Rambus further contends that Micron's inequitable conduct claims have not been prejudiced because they fail as a matter of law under *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011), and "Rambus and its counsel preserved all prior art." Rambus Br. at 15-16. Rambus's challenge is procedurally improper and fails on the merits.

### 1. Rambus's Challenge To Micron's Inequitable Conduct Claims Is Procedurally Improper

Prior to the remand, Rambus's only challenge to Micron's inequitable conduct claims was a motion to dismiss arguing lack of declaratory judgment jurisdiction, which was denied. D.I. 7 [09/18/2000 Motion to Dismiss for Lack of Subject Matter Jurisdiction]; D.I. 49 [01/01/2001 Order Denying Motions to Dismiss]. Rambus never moved for dismissal or summary judgment based on an alleged lack of merit to Micron's inequitable conduct claims. Moreover, Rambus never called Micron's experts to testify at trial and never attempted to submit the purportedly "relevant portions" of their expert reports into evidence. *See* Rambus Br. at 20, Exhs. A & B. Despite that, Rambus now makes a *de facto* motion to dismiss and motion for summary judgment for the first time after appeal based on an incomplete record. These motions are procedurally improper.

At the September 23, 2011 Status Conference, Rambus agreed with Micron that this briefing should take place on the established factual record and that no further proceedings were necessary. Exh. 3 [9/23/2011 Transcript] at 5:9-10. Additionally, as Rambus itself recently argued in the *Hynix* case, a remand should not be used to argue new theories that could have been raised in earlier proceedings, but were not. Exh. 4 [Brief In Support Of Rambus's Proposed Findings] at 22-24 ("The Federal Circuit has repeatedly invoked the mandate rule to bar litigants from raising on remand claims and theories they could have, but chose not to, pursue in prior proceedings[.])" In particular, Rambus asserted in *Hynix* that the trial record should only be opened to prevent "manifest injustice" after "at a minimum, showing that the alleged new evidence could not have been discovered previously, that exclusion of the evidence would be prejudicial to the moving party, and that the opposing party would not be prejudiced by the reopening." Exh. 4 [Brief In Support Of Rambus's Proposed Findings] at 26-27. Rambus has

not even attempted to show that any of these factors are present here. Accordingly, the Court should exercise its "substantial discretion" and rule that the trial record will not be reopened to admit this evidence. *See, e.g., Taylor Milk Co. v. Int'l Bhh. of Teamsters*, 69 Fed. Appx. 71, 74 (3d Cir. 2003). If Rambus had presented its current arguments at trial or in a properly-noticed motion, Micron would have submitted additional evidence rebutting them, such as supplements to its ten-year-old expert reports, additional relevant portions of the reports that Rambus failed to submit, and evidence regarding Rambus's knowledge of the prior art and intent to deceive.

## 2.    Rambus's Challenge To Micron's Inequitable Conduct Pleadings Is Irrelevant

Rambus argues that Micron's complaint fails to meet the new pleading standard under *Exergen*. Rambus's Br. at 16-18 (citing *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009)).[5]   Rambus alleges that Micron's pleadings fail to identify any "specific individual associated with the filing or prosecution of the application . . . who both knew of the material information and deliberately withheld or misrepresented it." Rambus Br. at 16-17. Even if true, Rambus does not argue—and cannot show—that Micron could not amend its pleading to correct any of these alleged deficiencies in light of the new standard. Indeed, Micron's current pleading cites both specific individuals and facts supporting scienter for many of the inequitable conduct references, identifying, for example, Neil Steinberg, Mark Horowitz, and Michael Farmwald. D.I. 1022 [09/05/2007 Micron 2nd Am. Compl.] ¶¶ 102, 103, 105, 106. Moreover, Rambus's argument puts the cart before the horse because the allegedly missing evidence would have been found in internal Rambus documents. *See* D.I. 1088 ¶ 56. Thus, far

---

[5] *Exergen* issued on August 4, 2009, after judgment and the notice of appeal were entered in this case. D.I. 1098 [02/10/2009 Entry of Judgment]; D.I. 1099 [03/11/2009 Notice of Appeal].

from demonstrating a lack of prejudice, Rambus's argument underscores the fact that Rambus's spoliation of internal documents has prejudiced Micron.

Rambus also contends that Micron's pleadings do not allege "which claims, and which limitation in those claims, the withheld references are relevant to, and where in those references the material information is found" or "identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record." Rambus's Br. at 17. However, as explained below, this information is available and could be pled if necessary to the extent that it has not been pled already. *E.g.*, Exh. 2 [08/17/2001 McAlexander Report, Exhibits A-H, Q18a].

### 3.   Rambus's Challenge To The Merits Of Micron's Inequitable Conduct Claims Also Fails

Rambus next argues that Micron has not proven that any of its inequitable conduct references meet the *Therasense* standard for materiality. Rambus Br. at 18-20. Materiality is an issue of fact reviewed for clear error on appeal. *See Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1314 (Fed. Cir. 2008). As such, even if Rambus's challenge to Micron's inequitable conduct claims were procedurally proper, Rambus would only be entitled to judgment as a matter of law if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[6] Rambus cannot meet that standard.

Strikingly, Rambus failed to submit the portions of the McAlexander report that would be most relevant to the *Therasense* standard for materiality. Exhibits A through H of the 2001 report provide a claim-by-claim invalidity analysis of the eight patents asserted at the time,

---

[6] No authority cited by Rambus, including *Therasense*, mandates that Micron prove materiality *before* the Court determines whether Rambus's spoliation has prejudiced Micron. *See* Rambus Br. at 20. Such a requirement would make little sense, as it would require a trial on materiality, followed by an unclean hands trial, followed (potentially) by a trial on knowledge and intent to deceive the PTO. Moreover, the Federal Circuit gave no such instruction.

including McAlexander's opinion that the SCI references and six other inequitable conduct references would invalidate one or more of the asserted claims, alone or in combination with other references.   Exh. 2.   Accordingly, the report demonstrates that Micron's inequitable conduct references meet the *Therasense* standard.[7]   Rambus provides no expert opinion rebutting this showing.   This is so even though Rambus argues that "[i]t is well-established that cases involving complex technology ***require expert testimony***." Rambus Br. at 21.

Rambus also argues that it is entitled to judgment as a matter of law because "virtually all of the SCI references were disclosed during the prosecution of" the four Rambus patents added to this case in 2005.   Rambus Br. at 22.   As for the four patents added in 2005, Rambus's argument again ignores the fact that Mr. McAlexander's report was submitted in 2001—four years before those patents were asserted.[8]   As for the originally asserted patents, Rambus offers neither legal authority nor evidence to support its assertion that a reference cannot be material if the PTO allows *a different claim in a different patent* over that same reference. *Compare* 4 Ann. Patent Digest § 27:83 ("In general, a breach of the duty to disclose material information in a Patent Office proceeding cannot be cured by submitting the withheld material or information in a subsequent proceeding."). Finally, Rambus does not address the fact that, with

---

[7] While Rambus argues that Mr. McAlexander has not expressed a sufficient opinion regarding non-cumulativeness, an invalidating reference is by definition non-cumulative under *Therasense*. 649 F.3d 1276, 1291 (stating that "if a claim is properly invalidated in district court based on the deliberately withheld reference, then that reference is necessarily material").

[8] Notably, Rambus does not dispute that several of the SCI references were still not cited in these later filed patents. Rambus Br. at 22 n.10.   Moreover, Micron has demonstrated in other proceedings that these four patents are invalid based on additional references not disclosed during the prosecution of the patents, and would be able to make the same showing here if the record were reopened. For instance, the '120 patent is invalid based on the Intel iAPX, Budde, and Yoshida references, the '916 is invalid based on the Bennett and Park references, the '020 is invalid based on the Budde, Inagaki, Deering, and Bennett references, and the '863 is invalid based on the iAPX, Budde, Lofgren, Inagaki, and iRam references. *See, e.g.*, Exh. 5 [9/15/2008 Report of J. McAlexander in *Rambus, Inc. v. Micron Technology, Inc.*, C06-00244 (N.D. Cal.)].

19

respect to the later added patents, "the taint of a finding of inequitable conduct can spread from a single patent to render unenforceable other related patents and applications in the same technology family." *Therasense*, 649 F.3d at 1288.

Rambus has thus failed to demonstrate that it is entitled to judgment as a matter of law on Micron's inequitable conduct claims. Rambus Br. at 18.

### 4. Rambus's Spoliation Of Evidence Relevant To Scienter Prevented Micron From Pleading Additional Claims Of Inequitable Conduct

Rambus focuses on Micron's SCI inequitable conduct claim, ignoring the likelihood that Rambus's spoliation prevented Micron from pleading additional claims of inequitable conduct. Rambus Br. at 21. Micron was only able to plead inequitable conduct where there was evidence of knowledge and intent to deceive the Patent Office. Accordingly, there are numerous possible inequitable conduct references that were not pleaded because Micron lacked the evidence necessary to demonstrate scienter. Because Micron's expert's report demonstrates that many such prior art references invalidate one or more claims and therefore meet the materiality standard under *Therasense* (Exh. 2 [08/17/2001 McAlexander Report, Exhibits A-H, Q18a], there is at least a concrete plausible suggestion that the evidence spoliated by Rambus would have shown that one or more of these references were withheld with deceptive intent. Rambus only addresses the claims Micron was able to make with the limited evidence available, not the additional claims that Micron could have made absent Rambus's spoliation.

### 5. Rambus Cannot Prove That All Relevant Prior Art Was Retained

Rambus argues that it has "proved that all prior art was preserved," and accordingly there could be no prejudice to Micron's inequitable conduct claims. Rambus's Br. at 24. But this Court already made the factual determination that Rambus's spoliation included documents

relevant to Micron's claim of inequitable conduct. D.I. 1088 ¶ 56. This finding was not disturbed by the Federal Circuit, and accordingly still stands.

Moreover, the testimony Rambus cites does not support a finding that all relevant prior art was preserved. First, Rambus relies on the testimony of litigation counsel Sean Cunningham, who was not present during either the first or second "shred days" organized by Joel Karp and was not told about the "shred days" until long after his document collection was completed. D.I. 1088 ¶ 38; D.I. 1060 at 961:5-23, 962:8-963:14, 969:20-970:21, 971:2-15. Furthermore, Cunningham testified that some of the prior art Rambus collected came from the Patent Office, not Rambus's files. D.I. 1060 at 1009:18-23. Rambus also relies on prosecution counsel Lester Vincent's testimony that the prior art in his files was not thrown out. Rambus Br. at 24. But even if Vincent's testimony is credible, he admitted to throwing out correspondence regarding patent prosecution and handwritten notes that may have reflected conversations regarding other prior art, some of which existed only in his files.[9] D.I. 1088 ¶ 25, n.43.

Furthermore, Vincent can only testify regarding the files he maintained. There were numerous other categories of documents destroyed that could have contained prior art or other relevant evidence. For example, there is at least a plausible concrete suggestion that documents relevant to inequitable conduct could have been among:

---

[9] Rambus's assertion that Vincent's correspondence and notes would have been privileged (Rambus Br. at 24) is inconsistent with the policy behind the duty to preserve evidence: "uncover[ing] the truth." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). By instructing Vincent to purge his files as part of Rambus's litigation strategy, Rambus eliminated Micron's ability to test any privilege claims Rambus may have asserted. Moreover, Rambus's assertion falsely assumes that these documents never would have been produced to Micron. It is Rambus's burden to demonstrate privilege. And privilege may be pierced, as occurred here.

(1) The Rambus in-house patent prosecution files which were purged by Anthony Diepenbrock (D.I. 1088 ¶ 25, n.44 ("These kinds of materials are typically sought in discovery in patent cases."));

(2) Co-inventor Dr. Horowitz's materials that were disposed of during the "cleaning" of his office (D.I. 1061 at 1233:22-1235:3); and

(3) Documents dispersed among the 300 boxes of materials destroyed on the second shred day on August 26, 1999 (D.I. 1088 ¶ 28, ¶ 56, n.58).

Rambus bears the burden of demonstrating that these sources could not have contained information relevant to Micron's inequitable conduct claims, and it has not met that burden.

## III.  A TERMINATING SANCTION IS APPROPRIATE

Rambus argues that no sanction is warranted because Micron cannot show that Rambus acted in bad faith or any basis for a finding that Micron's claims have been prejudiced. Rambus's Br. at 25-26. But Rambus ignores this Court's previous factual findings supporting a high degree of fault and prejudice. *See, e.g.*, D.I. 1088 ¶ 39 (misrepresentations), ¶ 55 (destroying evidence after a duty to preserve arose), ¶ 56 (relevant evidence was destroyed).

### A.    Rambus Bears A High Degree Of Fault For The Spoliation

Rambus attempts to mitigate its fault by arguing that any spoliation must have taken place during a "notorious grey area" when Rambus alleges "the duty to preserve [was not] clear." Rambus's Br. at 26. This is directly contradicted by the Federal Circuit upholding this Court's determination that Rambus destroyed evidence after litigation was reasonably foreseeable, and Rambus's internal documents showing a subjective expectation that litigation was inevitable.

First, the Federal Circuit affirmed this Court's finding that litigation was reasonably foreseeable at least as of Rambus's second shred day. *Micron*, 645 F.3d at 1325-26. And by the same token, the Federal Circuit rejected the *Hynix* court's finding that litigation did not become reasonably foreseeable until late 1999, noting that the *Hynix* court "was the only court to

determine that the duty to preserve [ ] did not begin until after Rambus's second shred day."
*Hynix*, 645 F.3d at 1346.

Second, Rambus's internal documents show that it believed that litigation was inevitable before the second shred day, and even before the first shed day. D.I. 1088 ¶ 10 (February 1998 meeting discussing litigation with outside counsel, including "[n]eed to litigate against someone to establish [a] royalty rate and have [a] court declare patent[s] valid."). There is no persuasive argument that Rambus's spoliation took place during an alleged "grey area."

### B.     Rambus's Bad Faith Spoliation Prejudiced Micron's Claims And Defenses

Rambus further argues that the case law only supports the sanction of dismissal involving the "deliberate destruction of unique, identifiable evidence bearing critical importance to the opposing party's case." Rambus Br. at 27.   But Rambus cites no authority for such a requirement.  In fact, the cases cited by Rambus demonstrate that courts have properly applied the sanction of dismissal where the destroyed documents were no more identifiable and less critical than what the facts demonstrate here.  For example, in *Leon*, the Ninth Circuit affirmed the district court's dismissal where "any number of the 2,200 files could have been relevant to [the defendant's] claims or defenses, *although it is impossible to identify which files and how they might have been used*." 464 F.3d at 960 (emphasis in original).  Rambus does not point to any case that applied its proposed standard with comparable facts, where the bad faith spoliation was so widespread that not even records of what was destroyed were retained.

### C.     Dismissal Is The Only Adequate Sanction

Rambus argues that either monetary sanctions or a rebuttable adverse inference would be an appropriate sanction.  But neither meets the trifold aims set forth by the Federal Circuit:  (1) deterring future spoliation of evidence; (2) protecting the injured party's interests; and (3)

remedying the prejudice suffered. *Micron*, 645 F.3d at 1329. Moreover, Rambus's consideration of the available sanctions assumes facts very different from those at hand.

First, Rambus assumes that the Court will find no "specific, tangible prejudice to particular claims and defenses," and concludes therefore that a monetary sanction would be sufficient. Rambus's Br. at 29. Rambus cites *Capellupo v. FMC Corp.* but fails to note that the court there did not make an explicit bad faith determination and contemplated "further penalties" and "further steps necessary to remedy the injustices" which were not described in the opinion. 126 F.R.D. 545, 553 (D. Minn. 1989). Similarly, Rambus cites *ACORN v. County of Nassau* but ignores that the court there also did not make a bad faith determination and further noted that the plaintiffs failed to show any prejudice at all. 2009 WL 605859, at *4, *6 (E.D.N.Y. Mar. 9, 2009) (finding the conduct was "gross negligence").

Here, in contrast, Micron demonstrated that Rambus's spoliation was in bad faith, and Micron provided "plausible, concrete suggestions" as to the relevant documents that were destroyed. Indeed, both the Federal Circuit and the cases on which Rambus relies hold that a case may be dismissed for bad faith spoliation if the spoliator fails to disprove prejudice. *See Micron*, 645 F.3d at 1328; *In re Wechsler*, 121 F. Supp. 2d 404, 423 (D. Del. 2000). Furthermore, given the magnitude of the damages to which Rambus believes it is entitled, applying a monetary sanction of "Micron's reasonable attorneys' fees associated with the spoliation issue" would not come close to deterring Rambus or other similarly situated parties from engaging in spoliation. For example, in late 1998 Rambus believed that by 2002 the market for infringing DRAM products would be $45 billion and Rambus would be entitled to an annual royalty of $375 million from these products. MTX 946 at 3; D.I. 1071 at 85:5-16, 89:21-90:5.

The inadequacy of monetary sanctions to provide deterrence and prevent "substantial unfairness" when the damages sought are so large is recognized by the case law. *See* Micron Br. at 24.

Rambus's proposal of a rebuttable adverse inference if the Court finds "both bad faith and claim-specific prejudice" also fails to meet the trifold aims. Rambus's Br. at 29. None of the case law cited by Rambus supports the adequacy of a rebuttable adverse inference in a case of widespread bad faith spoliation. In *Stevenson*, the Eighth Circuit found that the evidence of bad faith was so weak it "test[ed] the limits of what we are able to uphold as a bad faith determination." *Stevenson v. Union Pac. R.R.*, 354 F.3d 739, 747-48 (8th Cir. 2004). In *Gates*, the district court found that the claims of spoliation were "an exaggerated concern with minutiae" because the electronic files that were deleted were either "recaptured" or hard copies were provided. *Gates Rubber Co. v. Bando Chem. Indus. Ltd.*, 167 F.R.D. 90, 110, 113 (D. Col. 1996). Finally, *Montrose* is inapposite because it addresses judicial estoppel, not spoliation. *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779-800 (3d Cir. 2001).

In contrast, Micron cited numerous cases cautioning courts on the inadequacy of an adverse inference if, as here, it would not sufficiently deter bad faith conduct or would leave the victim helpless to counter the spoliator's rebuttal evidence. Micron Br. at 24-26. As the *Flury* case cited by Rambus held, an adverse inference can be so inadequate in the face of bad faith spoliation that its application instead of dismissal may amount to an abuse of discretion. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945-47 (11th Cir. 2005).

## CONCLUSION

The Federal Circuit affirmed this Court's finding of spoliation and remanded on the narrow issue of further consideration of the appropriate sanction. *Micron*, 645 F.3d at 1332. For the foregoing reasons, Micron respectfully submits that the Court should again dismiss Rambus's claims as an appropriate sanction for Rambus's bad faith spoliation of evidence.

RLF1 5692647v. 1

*Of Counsel:*
William C. Price
Robert J. Becher
QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000


Jared Bobrow
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1175
(650) 802-3000

Dated:  December 21, 2011

 /s/ Anne Shea Gaza
Frederick L Cottrell, III (#2555)
Cottrell@rlf.com
Anne Shea Gaza (#4093)
Gaza@rlf.com
RICHARDS, LAYTON & FINGER, PA
One Rodney Square
920 N King Street
Wilmington, DE 19801
(302) 651-7700

*Attorneys for Plaintiff/Counterclaim
Defendant Micron Technology, Inc. and
Counterclaim Defendant Micron
Semiconductor Products, Inc.*

26

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2011, I electronically filed the foregoing with the

Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and

which has also been served as noted:

### BY HAND & E-MAIL

Mary B. Graham, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19899-1347

I hereby certify that on December 21, 2011, the foregoing document was sent to the

following non-registered participants in the manner indicated:

### VIA E-MAIL

Gregory P. Stone, Esquire
Munger Tolles & Olson LLP
355 South Grande Avenue, 35th Floor
Los Angeles, CA  90071

Rollin A. Ransom
Michelle B. Goodman
Sidley Austin LLP
555 West Fifth Street
Los Angeles, CA  90013

Charles W. Douglas
Thomas K. Cauley, Jr.
Brian A. McAleenan
Sidley Austin LLP
One South Dearborn Street
Chicago, IL  60603

_/s/ Anne Shea Gaza_
Anne Shea Gaza (#4093)
gaza@rlf.com